UNITED STATES BANKURPTCY COURT
DISTRICT OF NEW JERSEY
*Caption in Compliance with N.J. LBR 9004-1*

Gary D. Bressler, Esq.
Virginia T. Shea, Esq.
McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962
Telephone: (973) 993-8100
Telecopy: (973) 425-0161
Email: gbressler@mdmc-law.com
vshea@mdmc-law.com

*Counsel for Creditor, West Valley National Bank*

Honorable Katheryn C. Ferguson

Chapter 11

Case No. 20-17880-KCF

In re:

**HITESHRI PATEL**

Chapter 11 Debtor and Debtor-in-Possession

## DECLARATION OF BRETT BHESANIA IN SUPPORT OF THE REPLY OF WEST VALLEY NATIONAL BANK TO NFS LEASING, INC.'S *AMENDED OBJECTION TO THE DEBTOR'S SECOND MODIFIED INDIVIDUAL DEBTOR'S CHAPTER 11 COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT* [Docket No. 194]

I, BRETT BHESANIA, of full age, hereby declare as follows:

1. I am a Senior Vice President, Credit Administrator, for West Valley National Bank (the "Bank"). As such, I am fully familiar with the facts contained in this Declaration.

2. I make this Declaration in support of the Bank's Reply to *NFS Leasing, Inc.'s Amended Objection* [Docket No. 194] *to the Debtor's Second Modified Individual Debtor's*

*Chapter 11 Combined Plan of Reorganization and Disclosure Statement* (the "Plan") [Docket No. 121][1].

3. On or about July 17, 2017, the Bank extended a loan (the "Loan") in the principal amount of $750,000.00 through the U.S. Small Business Association, to Shardanu Pizza Prs1, Inc., A California Corporation and Shardanu Pizza Prs2, Inc., A California Corporation (the "Borrowers"), which obligations were guaranteed by the Debtor and her husband and secured by four parcels of property (among other security).

4. The Borrowers and the Bank executed a Business Loan Agreement (the "Agreement") (*see* the Bank's Proof of Claim, Claim 5-1 [the "POC"], at p. 4 of 104). The Agreement provides in pertinent part that an event of default includes insolvency, including "[t]he dissolution or termination of Borrower's existence as a going business." (*See* POC at p. 8 of 104). Additionally, the Agreement provided among other obligations, that the Borrower was to maintain a minimum $50,000 liquidity, was not permitted to sell or encumber any of Borrower's assets, and was to maintain continuity of operation. (*Id.* at p. 7 of 104). "Other Defaults" included the Borrower's failure "to comply with or to perform any other term, obligation, covenant or condition contained in [the Agreement]." (*Id.* at p. 8 of 104). It is undisputed that the Borrowers' existence as a going business had been terminated prior to the Debtor filing for bankruptcy and that the Borrowers had sold its assets.

5. The Agreement also provides in pertinent part that if there is an event of default, "at Lender's option, all indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type

---

[1] Docket No. 121 is actually the First, not Second, Modified Individual Debtor's Chapter 11 Combined Plan of Reorganization and Disclosure Statement.

2

described in the 'insolvency' subsection above, such acceleration shall be automatic and not optional." (*Id.*).

6. The Borrowers executed a Note dated July 17, 2017 in the amount of $750,000 in favor of the Bank in which "Guarantor" was defined as "each person or entity that signs a guarantee of payment of this Note." (the "Note") (*See* POC at p. 13 of 104). Under the Note, a default includes Borrower's failure "to do anything required by this Note or other Loan Documents" and the Bank's rights upon default included "immediate payment of all amounts owing under this Note." (*See* POC at p. 14 of 104).

7. Here, either at the Bank's option or automatically (because of an insolvency event of default), the Borrower's indebtedness was to be accelerated.

8. The Debtor executed an Unconditional Guarantee of the "note dated 07-17-2017 in the principal amount of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00) from Borrower to [the Bank]." (*Id.* at p. 16 to 18 of 104).

9. Accordingly, under the proposed Plan [Docket No. 121], the Bank, as a Class 3 secured claimant, is impaired to the extent that it is forgoing its right to accelerate payment of the Loan, in favor of receiving full payment at a later date. (*See* Docket No. 121, Plan at pp. 8-9 of 66).

10. Effective May 27, 2021, the payoff figure for the Loan[2] will be $ 146,167.42 (Principal - $143,483.43, interest - $1,763.07; late fees $920.92).

---

[2] The payoff figure takes into account the amount of $404,970.38 received from the sale of certain property located in Oregon that served as collateral for the Loan.

11. In addition to the payoff, the Bank is owed under the Agreement and the Note, attorney's fees and expenses, which may be added to the principal balance. (*See id.* at p. 9 and 14 of 104).

12. Attorney's fees and costs through April 30, 2021 total $21,369.35,[3] and are expected to continue to accrue, along with interest.

13. The Bank voted in favor of confirmation of the Plan. The Bank asks this Court to confirm the Plan over the Objection of NFS Leasing.

I declare under penalty of perjury that this Declaration is true and correct to the best of my knowledge.

Executed on: May 25, 2021

BRETT BHESANIA
SVP Credit Administrator

---

[3] The Bank was given a courtesy discount of 5% on fees through March 31, 2021.