**MIDDLEBROOKS SHAPIRO, P.C.**
841 Mountain Avenue, First Floor
Springfield, New Jersey   07081
(973) 218-6877
Melinda D. Middlebrooks, Esq.
*middlebrooks@middlebrooksshapiro.com*
Attorneys for Chapter 11 Debtor
and Debtor-in-Possession, Hiteshri Patel

| | |
|---|---|
| In re:<br><br>**HITESHRI PATEL,**<br><br>Chapter 11 Debtor and<br>Debtor-in-Possession. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br>Honorable Kathryn C. Ferguson<br><br>Chapter 11<br><br>Case No.: 20-17880-KCF<br><br>Hearing Date: May 27, 2021 at 2:00 p.m. |

**REPLY OF HITESHRI PATEL, CHAPTER 11 DEBTOR AND DEBTOR-IN-POSSESSION, TO NFS LEASING, INC.'S AMENDED OBJECTION TO DEBTOR'S FIRST MODIFIED INDIVIDUAL CHAPTER 11 COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT**

  **HITESHRI PATEL**, the above-captioned Chapter 11 Debtor and Debtor-in-Possession (the "Debtor"), by and through her counsel, Middlebrooks Shapiro, P.C., submits this Reply (the "Reply") to NFS Leasing, Inc.'s Amended Objection to the Debtor's First Modified Individual Debtor's Chapter 11 Combined Plan of Reorganization and Disclosure Statement (the "NFS Amended Objection"), and respectfully submits the following:

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

  1.  Debtor caused her voluntary Chapter 11 Petition[1] to be filed on June 25, 2020. *See*, Docket No. 1.

---

[1] Amended from a Subchapter V to a standard Chapter 11 on July 24, 2020. *See*, Docket No. 38.

2.      On July 17, 2020 and July 20, 2020, Debtor caused the balance of her Petition, Schedules, and Statements to be filed. *See*, Docket Nos. 23 to 27.

3.      Counsel for NFS Leasing, Inc. ("NFS") filed an application on July 17, 2020 to allow attorney Joseph F. Pacelli, Esq. ("Pacelli") to appear *pro hac vice* in this proceeding. *See*, Docket No. 22. The Order allowing Pacelli to appear *pro se* was entered on July 27, 2020. *See*, Docket No. 39. Also on July 17, 2020, James N. Lawlor, Esq. filed a Notice of Appearance on behalf of NFS. *See*, Docket No. 21.

4.      NFS requested and Debtor consented to an extension of time for NFS to object to Debtor's exemptions and file a non-dischargeability action through and including September 1, 2020. *See*, Docket No. 61, Stipulation and Order Extending Time to Object to Debtor's Exemptions filed September 2, 2020. A second Stipulation and Consent Order affording NFS additional time to object to Debtor's exemptions was entered into by and between NFS and the Debtor permitting NFS another extension of time to file an objection to exemptions through and including September 28, 2020. *See*, Docket No. 75.

5.      NFS failed to file an Objection to Debtor's exemptions.

6.      On September 21, 2020, Debtor caused an amendment to Schedule D and Summary of Schedules to be filed. *See*, Docket No. 70.

7.      On October 21, 2020, counsel for NFS filed a Motion for Entry of an Order Extending the Deadline for NFS to Object to Debtor's Discharge or that NFS' Debtor Should Be Excepted from Discharge ("NFS Extension Motion"). *See*, Docket No. 82. An Objection to the NFS Extension Motion was filed on behalf of the Debtor since NFS had been afforded no less than 132 days to file an adversary complaint against the Debtor but had not done so. NFS filed an Objection to the first Motion to Quash. *See*, Docket No. 91.

A hearing was conducted on November 17, 2020 and an Order granting NFS' Extension Motion was entered. *See*, Docket No. 95.

8.      After having filed the NFS Extension Motion, NFS caused a Subpoena for Rule 2004 Examination (the "2004 Subpoena") to be served upon the Debtor. Debtor caused a Motion to Quash the 2004 Subpoena ("first Motion to Quash") to be filed on November 10, 2020 due to the overly burdensome demands made by NFS. *See*, Docket No. 89. Prior to the return date of the first Motion to Quash, NFS withdrew its 2004 Subpoena. A Status Change Form was filed on December 7, 2020 to withdraw the first Motion to Quash. *See,* Docket No. 102.

9.      On November 17, 2020, a Motion for authorization for the Debtor to file a combined Plan of Reorganization and Disclosure Statement was filed. *See*, Docket No. 93. The Order granting the Motion was filed on December 10, 2020. *See*, Docket No. 104.

10.      On November 22, 2020, NFS sued Debtor's former partner of Garden State Diagnostic Imaging, LLC ("GSDI"), Dr. Faisal Shah, for non-dischargeability. *See*, *NFS Leasing, Inc. v. Faisal Shah*, Adv. No. 20-01603-JKS ("*NFS v. Shah*"). The factual background of the alleged debt in this proceeding are identical to the alleged debt in *NFS v. Shah*.

11.      Debtor caused her original Combined Chapter 11 Plan of Reorganization and Disclosure Statement to be filed on November 20, 2020. *See*, Docket No. 100. The First Modified Plan was filed on January 11, 2021. *See*, Docket No. 108.

12.      On January 12, 2021, an Application in Lieu of Moton in Support of Entry of Stipulation and Consent Order to Extend Time for West Valley National Bank (the "Bank") was filed. *See*, Docket No. 109. Gary Bressler, Esq. filed his Certification in

3

support of entry of the Stipulation and Consent Order was also filed on January 12, 2021. *See*, Docket No. 110. NFS was afforded notice of the request for entry of the Bank's Stipulation and Consent Order. *See*, Docket No. 112. The Stipulation and Consent Order was filed on January 22, 2021. *See*, Docket No. 114. NFS did not interpose an Objection to entry of the Stipulation and Consent Order.

13.    In the interim, NFS served a second 7030 Notice to Take Oral Deposition and Produce Documents on the Debtor (the "second 7030 Subpoena"). A second Motion to Quash ("second Motion to Quash") was filed on January 22, 2021. *See*, Docket No. 115.

14.    Debtor's First Modified Plan was filed on January 28, 2021. *See*, Docket No. 121. An Amended Order Conditionally Approving Disclosure Statement, Setting Deadlines and Scheduling Confirmation Hearing was entered on February 2, 2021. *See*, Docket No. 127.

15.    NFS withdrew the second 7030 Subpoena. Because NFS voluntarily withdrew the second 7030 Subpoena prior to the return date of the second Motion to Quash, a Status Change Form was filed withdrawing the second Motion to Quash. *See*, Docket No. 130.

16.    Debtor secured a proposed sale of the Oregon property commonly known as 10535 NE Park Ridge Way, Hillsboro, Oregon (the "Oregon Property"). An Application for Retention of Tim Saeland as Realtor was filed on February 25, 2021. *See*, Docket No. 134. The Order granting the retention of Tim Saeland was entered on March 5, 2021. *See*, Docket No. 147.

17.    NFS filed its first NFS Objection to the first Modified Plan on March 2, 2021. *See*, Docket No. 140.

18.     A Motion to Sell Property Free and Clear of Liens Under Section 363(f) was filed on behalf of the Debtor to sell the Oregon Property together with the Notice of Private Sale. *See*, Docket No. 142 and 143, respectively. The Order authorizing sale of the Oregon Property was entered on March 30, 2021. *See*, Docket No. 169.

19.     NFS filed a Motion for Temporary Allowance of its Claim for Voting Purposes (the "Voting Motion") on March 15, 2021. *See*, Docket No. 152. The Voting Motion was to be heard on shortened time on March 25, 2021. *See*, Docket No. 155. The Voting Motion was amended due to a filing error and the Amended Voting Motion was filed on March 17, 2021. *See*, Docket No. 158.

20.     Also on March 15, 2021, a Motion to Quash NFS' third 7030 Subpoena was filed on behalf of the Debtor. *See*, Docket No. 154.

21.     In the interim, Mediation was scheduled and conducted with the Court-approved Mediator in the adversary matter captioned *Patel v. NFS Leasing, Inc.*, bearing Adversary Pro. No. 21-01180-KCF (the "Adversary Proceeding") was scheduled for April 21, 2021.  A request for an adjournment of upcoming hearings in this proceeding was made to allow the parties to explore settlement. The scheduled hearings on the Amended Voting Motion and the Motion to Quash NFS' third 7030 Subpoena were adjourned to May 11, 2021. *See*, Docket Entries on April 27, 2021.

22.     Mediation did not result in a settlement.

23.     At the adjourned hearings on the Amended Voting Motion and the Motion to Quash, Your Honor granted both motions on May 11, 2021. *See*, Docket No. 186 and Docket No. 181, respectively.

24.     On May 17, 2021, a Certification of Balloting was filed on behalf of the Debtor reflecting an affirmative vote by a significant impaired class, specifically, West Valley National Bank. *See*, Docket No. 189. NFS submitted a Ballot for a secured claim of $3,000.00 for voting purposes rejecting the Plan. NFS further submitted a Ballot for its voting unsecured claim amount of $1,686,263.27. NFS' general unsecured claim for voting purposes in comparison to the total of allowed general unsecured claims is equivalent to twenty-seven percent (27%) of all general unsecured claims.

25.     The Debtor's Certification Pursuant to 11 U.S.C. § 1129 in Support of Confirmation of Individual Debtor's Chapter 11 Plan of Reorganization; Disclosure of Source of Funds; and Related Issues (the "1129 Certification") was filed on May 18, 2021. *See*, Docket No. 193.

26.     NFS filed an Amended Objection to Confirmation on May 20, 2021. *See*, Docket No. 194.

## REPLY

27.     This is Debtor's Reply to NFS' Amended Objection and sets forth the reasons why NFS' Amended Objection should be overruled, and Debtor's Disclosure Statement deemed adequate, and the Plan of Reorganization confirmed.

### Debtor's Liquidation Analysis Is Appropriate

28.     Despite the hyperbolic arguments made on behalf of NFS, the liquidation analysis set forth in the Debtor's 1129 Certification filed in support of Confirmation of the Plan is appropriate and standard fare for Chapter 11 bankruptcy cases.

29.     NFS' claim is based upon the *Debtor's* guarantee of a business debt.

30.     The Debtor's *non-debtor spouse* did not guarantee the business debt. Even

if the Debtor's spouse had guaranteed the debt, the Debtor's spouse is a non-debtor. A

simple understanding of 11 U.S.C. § 541 dispels NFS's "mysterious equity" argument,

which NFS asserts to improperly try to bring a non-debtor spouse's property into this

bankruptcy estate. For this Court to reach such a legal conclusion would require a finding

that non-debtor property is somehow deemed property of a debtor's estate.

31.     As this Court is aware, Section 541 of the Bankruptcy Code provides, in

pertinent part, that:

> (a) The commencement of a case under section 301, 302, or
> 303 of this title creates an estate. Such estate is comprised of
> all the following property, wherever located and by
> whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this
> section, **all legal or equitable interests of the debtor** in
> property as of the commencement of the case.

11 U.S.C. § 541(a)(1) (emphasis added).

32.     Here, the non-debtor spouse's interest in property is not property of the

Debtor's estate under Section 541. *Id.* There is nothing nefarious about following Section

541 to properly account for the non-debtor spouse's interest in property prior to the

deduction of any outstanding mortgages. On an even more granular level, as New Jersey

is an equitable distribution state, as opposed to a "community property" state as referred to

in Section 541, there is no support for NFS's objection here. *See*, 11 U.S.C. §541(a)(2)).

33.     NFS's argument has no support under the Bankruptcy Code, and no

evidentiary support. Annexed as Exhibit D to NFS's Amended Objection are pages of what

is purported to be www.Zillow.com valuations of three (3) real properties in which the

Debtor holds a partial interest. Debtor submits that NFS' request of Your Honor to take

"judicial notice" of www.Zillow.com website printouts. Debtor submits that the documents attached to Exhibit D of NFS' Amended Objection are inadmissible pursuant to Fed. R. Evid. 401 as the documents are not relevant (*i.e.*, material and having probative value) and are outweighed by countervailing considerations (*e.g.* the evidence is confusing, a waste of time and based on hearsay).

34. To the extent this Court deems the www.Zillow.com webpage printouts relevant to this hearing, it is important to note that copies of the Debtor's actual Appraisals of these real properties were provided to NFS in advance of this hearing. Attached hereto are the following appraisals and valuations previously provided to NFS on or about April 21, 2021:

| Exh. | Property | Appraiser / Lic. or Cert No. / Appraisal Date / Sale Price | Appraised / Sale Value | NFS' Alleged Valuation (No Appraisal) | Differential |
|---|---|---|---|---|---|
| A | 164 Beach St. Jersey City, NJ | Mark Radko, Dependable Real Estate Appraisers / Cert#42RC00242300 / June 20, 2020 | $380,000.00 | $430,000.00[2] | $50,000.00 |
| B | 223 Gordons Corner Rd. Marlboro, NJ | Roger Wilson, Phoenix Appraisals / Cert#42RC00189700 / June 5, 2020 | $865,000.00 | $1,000,000.00[3] | $135,000.00 |
| C | 714 S. Halliday St. Anaheim, CA | DS Murphy Valuations, LLC / Lic.#AR017323 / May 28, 2020 | $735,000.00 | $795,000.00 | $60,000.00 |
| D | 10535 NE Park Ridge Wy. Hillsboro, OR | Filed Order Authorizing Sale of Real Property filed | $435,000.00 | Not challenged | $0.00 |

---

[2] *See*, NFS' Amended Objection at p.6.
[3] *See*, *Id.* It is noted that NFS alleges, on page 7 of the Amended Objection, that the Marlboro Property is valued at $1,115,668.00 pursuant to a www.Zillow.com but on page 6, NFS claims to have an appraisal as of June 5, 2020 that the Marlboro property is worth $1,000,000.00. Inconsistency in NFS' assertions of values to be placed on Debtor's properties based upon undisclosed appraisals and unreliable Zillow values over the professional appraisals should not be tolerated by this Court.

| | | 03/03/2021 (Docket No. 169) | | | |
|---|---|---|---|---|---|
| | | | | **Total Differential** | **$245,000.00** |

35.     NFS asserts that this Court should be persuaded by an "Order Denying Plaintiff's Motion for Attorney's Fee", entered in the United States District Court for the District of Nevada in a non-bankruptcy case captioned *HSBC Bank United States Nat'l Ass'n v. Ira*, No. 2:16-cv-01216-KJD-NJK, 2020 U.S.Dist. LEXIS 165099, at *6 (D.Nev. Sep. 9, 2020), in support of NFS's proposition that, in consideration of the reasonableness of an Offer of Judgment, www.Zillow.com website values should be admissible and given equal or greater weight than an appraisal by a licensed or certified appraiser.[4]

36.     Debtor submits that the appraisals provided to NFS' counsel in advance of the filing of its objection have greater weight than website values from www.Zillow.com.

37.     The unsigned Joint Personal Financial Statement as of **June 15, 2018** (the "Joint Financial Statement"), annexed as Exhibit C to NFS' Amended Objection, would, at best, provide a snapshot in time for the Debtor's joint assets with her non-debtor husband, as of the date of the Joint Financial Statement.

38.     NFS appears to believe and wishes the Court to accept that an individual's assets remain static. Counsel for NFS asserts that the Debtor is "attempting to retain nonexempt personal property, to which NFS has a valid lien, in the amount of $61,785."[5] It is curious that NFS' math results in the almost the exact amount that the Debtor is proposing to pay to unsecured creditors under her Plan.

---

[4] *See*, Amended Objection, p.7 at Footnote 4.
[5] *See*, *Id.* at ¶6.

39.     A Liquidation Analysis in the context of a Chapter 11 Plan is based upon a number of estimates and assumptions that are inherently subject to significant economic, business, and other contingencies beyond the control of the Debtor.  The Debtor utilized the values of appraisals conducted in close proximity to the filing of the Chapter 11 case. In preparing the Liquidation Analysis, the Debtor further utilized the Claims Register and the amounts asserted by the creditors who hold allowed claims as set forth in the Proofs of Claims. Administrative claims were estimated and subtracted from proceeds of liquidation of assets before the proceeds would be available to holders of general unsecured claims.

40.     As testified to at her 341(a) Meeting conducted on July 22, 2020, a meeting in which counsel for NFS participated, Debtor testified that due to the Covid-19 pandemic and even prior to the pandemic, the pizzerias, known as Shardanu Pizza Prs 1, Inc., Shardanu Pizza Prs 2, Inc., Shardanu Pizza Prs 3, Inc., were not generating income.  As evidenced by the Debtor's Monthly Operating Reports filed during this proceeding, zero (0) income has been generated by the pizzerias.  NFS' assertion that the value of the pizzerias would remain static, even in the midst of a global pandemic.  NFS' assertions are illogical and unfounded.

### Debtor's Plan Does Not Violate the Absolute Priority Rule

41.     NFS submits that the Debtor's Plan violates the Absolute Priority Rule.[6]

42.     Section 1129(b) provides, in pertinent part, that a Plan must be "fair and equitable" with special protection to priority claims. 11 U.S.C. §1129(b). The Bankruptcy Code essentially requires that, absent consent, a **senior class** must be paid in full before junior classes of creditors and equity holders may receive a distribution.

---

[6] *See*, *Id.* at p.8, ¶2.

43.     Debtor would propose that to resolve NFS' objection, to the extent that it has merit, by treating NFS' secured claim in the sum of $3,000.00 as allowed and pay NFS the $3,000.00 as of the Effective Date. NFS relies on Your Honor's unpublished Memorandum Opinion in *In re: Pataleo LaForgia and Anna Maria LaForgia*, bearing Case No. 17-22853-KCF ("*LaForgia*"), in support of its assertion that the Debtor's Plan violates the Absolute Priority Rule.[7]

44.     In *LaForgia*, the IRS objected to the debtors' treatment of its claim under the proposed Plan: "The IRS objects to confirmation of the Plan on several grounds, including that it violates the absolute priority rule; it does not provide for the IRS's secured claim to be paid in full within the period required by § 1129(a)(9); and it is not feasible." *See*, *LaForgia*, Memorandum Opinion dated September 3, 2019 at p.2.

45.     The debtors in *LaForgia* had asserted that the Absolute Priority Rule did not apply in individual cases.  Your Honor addressed that issue first:

> The issue presented here is whether the absolute priority rule applies in an individual chapter 11 case. The Debtors assert that the rule does not apply because § 1129(b)(2)(B)(ii) provides that despite non-acceptance by one or more unsecured creditors a plan may be found to be fair and equitable if:

> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115.

*See*, *Id.* at p.3.

---

[7] *See*, *Id.* at p.8.

46.     Your Honor's ultimate ruling was to sustain the IRS' objection as to treatment of its claim.  Debtor submits that the facts of the instant matter compared to the facts presented in the *LaForgia* case are not only distinguishable but inapposite. The Debtor's Plan treats allowed claims appropriately by their class and priority. NFS' assertion that the Debtor's Plan violates the Absolute Priority Rule is unfounded.

**Debtor's Plan Was Proposed in Good Faith**

47.     NFS relies on *PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000), for the proposition that Debtor's Plan was not proposed in "good faith".  In the underlying Chapter 11 case, the bankruptcy court confirmed the debtors' plan; the creditor appealed; the district court affirmed; the creditor appealed; and the Third Circuit Court of Appeals affirmed the bankruptcy court and district court's decisions below having found that the debtors had met their burden under 11 U.S.C. §1129(a)(7).  *PWS Holding*, 228 F.3d at 334.

48.     In *PWS Holding*, the creditor failed to challenge the debtors' liquidation analysis. *Id*. While NFS has challenged Debtor's Liquidation Analysis, it has not only done so with unreliable Zillow appraisals of value but also claims to have "recent appraisals" (prior to May 20, 2021). Nowhere in NFS' pleadings are copies of the alleged appraisals for Your Honor's consideration.

49.     The Third Circuit in *PWS Holding* held that the courts did not commit clear error in holding that the debtors met their burden under 11 U.S.C. §1129(a)(7). *Id*.

**NFS Seeks Inclusion of Property Which Is Not Property of the Estate**

50.     NFS (which does not now and never held a personal guarantee against the Debtor's non-debtor spouse for any debt) asserts that a non-debtor's interest in property must be included in distributions to creditors in a Chapter 11 case.  NFS calls Debtor's

failure to include a non-debtor's property in her Plan distribution as "nonsensical". What

is nonsensical is NFS' argument.

51.    In support of its assertion, NFS relies on the holding in *In re American*

*Capital Equipment, LLC*, 688 F.3d 145 (3d Cir. 2012).[8]  In *American Capital*, the Third

Circuit Court of Appeals addressed an appeal by debtors (American Capital and Skinner

Engine Company) joined in the appeal (which were consolidated with other appeals) by

their insurers appealing the denial of confirmation and conversion of the cases to Chapter

7. *American Capital*, 688 F.3d at 148. The facts of the *American Capital* case and the

instant matter are distinguishable.

52.    In addressing the issue of whether a plan is "patently unconfirmable", the

Third Circuit stated that:

> A plan is patently unconfirmable where (1) confirmation
> "defects [cannot] be overcome by creditor voting results"
> and (2) those defects "concern matters upon which all
> material facts are not in dispute or have been fully developed
> at the disclosure statement hearing." *In re Monroe Well
> Serv.*, 80 B.R. at 333. If no dispute of material fact remains
> and if defects cannot be cured by creditor voting or
> otherwise, then there is "nothing in either the language or
> logic of the Code requiring the court or parties to 'grind the
> same corn a second time,' and we will not read into the Code
> the requirement of redundancy." *In re Acequia, Inc.*, 787
> F.2d at 1358–1359 (citation omitted) (noting that although
> confirmation requires an evidentiary hearing, courts need not
> ignore evidence already submitted).

Id. at 154 – 155.

53.    Skinner had proposed five (5) plans since the filing of its bankruptcy. *Id.,* at

150.

---

[8] *See*, Amended Objection, p.12-13 at ¶12 (Amended Objection has incorrect citation as *In re Am. Capital
Equipment*).

In sum, we find that the Bankruptcy Court did not err in determining based on the disclosure statement hearing that the Fifth Plan was patently unconfirmable under § 1129(a)(3) because its success is entirely contingent on speculative future litigation, and because the Plan asks third-party Asbestos Claimants, who were not a cause of the bankruptcy, to serve as the sole funding source for attorneys and other creditors, under circumstances involving an inherent conflict of interest and inequitable procedural provisions.

*Id.* at 164.

54.     The facts in the instant case are distinguishable from those in *American Capital*. This is Debtor's first scheduled hearing on the adequacy of her Disclosure Statement and confirmation of her proposed Plan. The Debtor is not requesting Your Honor "grind the same corn" an additional time. The Debtor has filed adequate proof to support of confirmation of the Debtor's plan of reorganization. Debtor respectfully requests Your Honor overrule NFS' objection and confirm her Plan.

### Significant Consenting Secured Creditor's Acceptance

55.     NFS submits that Debtor's proposed treatment of West Valley National Bank is somehow akin to the abrogation of creditor protections in Chapter 11.[9] It's argument appears to be based in West Valley National Bank's agreement to an impaired secured claim.[10]

56.     NFS correctly identifies that:

Under section 1123, a plan must "provide the same treatment for each claim or interest of a particular class, **unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest**." 11 U.S.C. §1123(a)(4).

---

[9] Amended Objection, p 13 at ¶13.
[10] *See*, *Id.*

Amended Objection at p.14 (emphasis added).

57.    West Valley National Bank has fully disclosed its agreement with the Debtor which terms were incorporated into the Plan. *See*, Docket No. 159, Reply of West Valley National Bank to NFS Leasing, Inc.'s Objection to the Debtor's Second [Sic First] Modified Individual Debtor's Chapter 11 Combined Plan of Reorganization and Disclosure Statement together with the Declaration of Brett Bhesania dated March 15, 2021. NFS' allegations of gerrymandering West Valley National Bank's vote is simply unfounded.

58.    NFS relies on the holding in *In re Abbots Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) the proposition that the Debtor "the Debtor's favorable treatment of that creditor to ostensibly induce a consenting vote in favor of the plan and at the expense of general unsecured creditors and smacks of bad faith. This does not comport with the objectives and purposes of the Bankruptcy Code and effectively disenfranchises unsecured creditors."[11]

59.    In *Abbots Dairies*, the Third Circuit addressed the issue of whether a 363 Sale had been conducted in "good faith" and whether there was any improper collusion between the purchaser (who received a lucrative offer of employment as the CEO) as part of the purchase and remanded the matter back to the lower courts for findings. *Abbots Dairies*, 788 F.2d at 151. The intimation that there was any collusion between West Valley National Bank and the Debtor in this proceeding is made up from whole cloth. There was no violation of the anti-solicitation clause of the Bankruptcy Code and the negotiation was incorporated into the First Modified Plan so that full disclosure was made.

**Debtor Proposes Payment of Her Disposable Income**

---

[11] *See*, *Id.*

60. The Debtor's Plan provides for payment of the Debtor's disposable income over a five (5) year period. NFS alleges that the Plan cannot be confirmed because "[t]he Debtor's case is nearly a year old. In that time, the Debtor has refused to negotiate with NFS, the largest creditor in the case, while proposing numerous plans that are not confirmable."[12]

61. As Your Honor is aware, it was the Debtor who initiated Mediation in the adversary proceeding for the purpose of negotiating NFS' claim. NFS failed to resolve its claim despite the efforts of the Court-approved Mediator. There are not "numerous" plans filed but rather a first and First Modified Plan before this Court. The Debtor has administered her Chapter 11 case in a timely fashion and to be at confirmation within one year is not unique but for the shortness of time. For NFS to submit these untruths and misstatements to this Court is belied by the record before this Court in the adversary proceeding and the main case and should not be tolerated.

62. NFS' references to other caselaw cited in support of its arguments are without merit and provide no support to its unfounded allegations.

## CONCLUSION

63. Based on the foregoing and based upon the Certification of Ballots; the Certification of Hireshri Patel Pursuant to 11 U.S.C. §1129; and the Reply of West Valley National Bank together with the Declaration of Brett Bhesania dated March 15, 2021; and further based upon the record in this proceeding, the Debtor respectfully requests Your Honor overrule NFS Leasing, Inc.'s Objection to the adequacy of her Disclosure Statement and confirm her Plan of Reorganization.

---

[12] *See*, *Id.*, p.15 at ¶17.

Respectfully submitted,

**MIDDLEBROOKS SHAPIRO, P.C.**
841 Mountain Avenue, First Floor
Springfield, New Jersey 07081
(973) 219-6877
Attorneys for Chapter 11 Debtor
and Debtor-in-Possession, Hiteshri Patel

/s/ Melinda D. Middlebrooks
By: Melinda D. Middlebrooks, Esq.

Dated: May 25, 2021

# Exhibit

## "A"





# APPRAISAL OF REAL PROPERTY

## LOCATED AT:

164 Beach St
Jersey City, NJ  07307
Block 4201, Lot 42

## FOR:

Hiteshri Patel
164 Beach Street
Jersey City, NJ 07307

## AS OF:

06/09/2020

## BY:

Mark Radko
163 W 57th STREET
BAYONNE, NJ 07002

DEPENDABLE REAL ESTATE APPRAISERS

Serial# A65AD64D
esign.alamode.com/verify

Dependable Real Estate Appraisers (201) 709-4445

# INVOICE

| INVOICE NUMBER |
| --- |
| PATEL06092020 |

| DATES | |
| --- | --- |
| Invoice Date: | 06/09/2020 |
| Due Date: | |

**FROM:**

Mark Radko

Dependable Real Estate Appraisers

163 W 57th St

Bayonne, NJ 07002-2211

Telephone Number:    (201) 709-4445          Fax Number:

**TO:**

Hiteshri Patel

164 Beach Street

Jersey City, NJ 07307

E-Mail:    hiteshri325@gmail.com

Telephone Number:    201-936-7020          Fax Number:

Alternate Number:

| REFERENCE | |
| --- | --- |
| Internal Order #: | |
| Lender Case #: | |
| Client File #: | |
| FHA/VA Case #: | |
| Main File # on form: | JERSEYCITY164BEACH |
| Other File # on form: | PATEL06092020 |
| Federal Tax ID: | |
| Employer ID: | |

## DESCRIPTION

| | | | |
| --- | --- | --- | --- |
| Lender: | Hiteshri Patel | Client: | Hiteshri Patel |
| Purchaser/Borrower: | N/A | | |
| Property Address: | 164 Beach St | | |
| City: | Jersey City | | |
| County: | Hudson | State: NJ | Zip: 07307 |
| Legal Description: | Block 4201, Lot 42 | | |

| FEES | AMOUNT |
| --- | --- |
| 1004UAD, 1004MC | 310.00 |
| | |
| **SUBTOTAL** | 310.00 |

| PAYMENTS | AMOUNT |
| --- | --- |
| Check #:    Date:    Description: $310 Cash Paid | 310.00 |
| Check #:    Date:    Description: | |
| Check #:    Date:    Description: | |
| **SUBTOTAL** | 310.00 |
| **TOTAL DUE**   $ | 0.00 |

Serial# A65AD64D
esign.alamode.com/verify

Uniform Residential Appraisal Report    File #    JERSEYCITY164BEACH

PATEL06092020

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | | | |
|---|---|---|---|---|
| Property Address | 164 Beach St | City Jersey City | State NJ | Zip Code 07307 |
| Borrower N/A | Owner of Public Record PATEL, HITESHRI & HIMAWSHU | | County Hudson | |
| Legal Description | Block 4201, Lot 42 | | | |
| Assessor's Parcel # | 1806-04201-0000-00042-0000 | Tax Year 2019 | R.E. Taxes $ 5,981 | |
| Neighborhood Name Heights | | Map Reference 35614 | Census Tract 0010.00 | |

Occupant ☐ Owner ☒ Tenant ☐ Vacant    Special Assessments $ 0    ☐ PUD  HOA $ 0  ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Ascertain Current Market Value

Lender/Client Hiteshri Patel    Address 164 Beach Street, Jersey City, NJ 07307

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). Hudson County MLS, online Realtor sites.

**CONTRACT**

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $    Date of Contract    Is the property seller the owner of public record?  ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | ☒ Urban ☐ Suburban ☐ Rural | | Property Values | ☒ Increasing ☐ Stable ☐ Declining | | PRICE $ (000) | AGE (yrs) | One-Unit | 20 % |
| Built-Up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply | ☐ Shortage ☒ In Balance ☐ Over Supply | | | | 2-4 Unit | 55 % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time | ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | Low 325 35 | | Multi-Family | 10 % |
| Neighborhood Boundaries | SUBJECT IS BOUND TO THE NORTH BY THE N. BERGEN & UNION CITY BORDERS, EAST BY | | | | | High 525 150 | | Commercial | 10 % |
| TONNELE AVENUE & TRAIN TRACKS, SOUTH BY ROUTE 139 (I-78 TPKE EXT); WEST BY PATERSON PLANK ROAD & HOBOKEN AVE. | | | | | | Pred. 415 95 | | Other | 5 % |

Neighborhood Description    THE NEIGHBORHOOD IS CHARACTERIZED BY MAINLY 2-4 FAMILIES, SINGLE FAMILIES & ALSO CONDOMINIUM PROJECTS, PARKS, VARYING IN SIZE, STYLE, AGE, VALUE AND AMENITIES.  COMMERCIAL USES ARE LOCATED IN THE SURROUNDING  AREA WHICH SERVICE AND EMPLOY AREA RESIDENTS.

SEE ADDITIONAL COMMENTS...

Market Conditions (including support for the above conclusions)    TYPICAL EXPOSURE TIME RANGES FROM 1 TO 3 MONTHS. MLS INDICATES A LIST TO SALES PRICE RATIO

OF APPROXIMATELY 85 - 100+%. FINANCING IS AVAILABLE THROUGH A VARIETY OF FINANCING INCLUDING  CONVENTIONAL, ARM'S, FHA AND VA LOANS...

NOTE: OTHER 5% IS PARKS, VACANT, OTHER GOV'T & PRIVATE PROPERTIES...  SEE ADDITIONAL COMMENTS...

**SITE**

| | | | | |
|---|---|---|---|---|
| Dimensions 21 x 100 | Area 2,100 sf | Shape Rectangular | View N;CtyStr; | |
| Specific Zoning Classification R-1 | | Zoning Description One and Two Family Housing | | |

Zoning Compliance ☐ Legal ☒ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) See Additional Comments...

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes ☐ No, if No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 34017C0106D   FEMA Map Date 08/16/2006

Are the utilities and off-site improvements typical for the market area?  ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  ☐ Yes ☒ No  If Yes, describe

EXTRAORDINARY ASSUMPTION TAKEN THAT THERE ARE NO APPARENT ADVERSE EASEMENT, ENCROACHMENT, ENVIRONMENTAL CONCERNS OR MATERIALS OR OTHER ADVERSE CONDITIONS NOTED.  SURVEY MAP OR TITLE REPORT AVAILABLE FOR REVIEW.  DEED RESTRICTION, EASEMENT AND FRACTIONAL INTERESTS SUBJECT TO TITLE REPORT.   See Additional Comparables #4-6, Analysis/Comments...

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description materials/condition | | Interior materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☒ Crawl Space | | Foundation Walls Concrt,CinderBlk/Avg | | Floors Hdwd,CTl,vtwc,Lmn/Av | |
| # of Stories 1.1 | | ☐ Full Basement ☒ Partial Basement | | Exterior Walls Vinyl,Aluminum/Avg | | Walls Drywl,Panel,Wllp/Avg | |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area 587 sq.ft. | | Roof Surface AsphSql/Avg+ | | Trim/Finish Wood/Avg | |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish 90 % | | Gutters & Downspouts Aluminum/Avg | | Bath Floor Ceramic Tile/Avg | |
| Design (Style) Cape Cod | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type D-H/Avg | | Bath Wainscot Cer Tile,Drywl/Avg | |
| Year Built ~1946 | | Evidence of ☐ Infestation | | Storm Sash/Insulated Yes/Avg | | Car Storage ☐ None | |
| Effective Age (Yrs) 60 | | ☐ Dampness ☐ Settlement | | Screens Yes/Avg | | ☒ Driveway # of Cars 3 | |
| Attic ☐ None | | Heating ☐ FWA ☒ HWBB ☐ Radiant | | Amenities ☐ Woodstove(s) # 0 | | Driveway Surface Concrete | |
| ☐ Drop Stair ☒ Stairs | | ☐ Other | Fuel Natural Gas | ☐ Fireplace(s) # 0 ☒ Fence Metal,Wood | | ☐ Garage # of Cars | |
| ☒ Floor ☐ Scuttle | | Cooling ☐ Central Air Conditioning | | ☒ Patio/Deck Pat/Dk ☒ Porch Porch | | ☐ Carport # of Cars | |
| ☒ Finished ☐ Heated | | ☒ Individual ☐ Other | | ☐ Pool None ☐ Other None | | ☐ Att. ☐ Det. ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:  6 Rooms  3 Bedrooms  1.8 Bath(s)  1,188 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).    THE SUBJECT CONTAINS 1 GAS BOILER (NEWER) AND 1 HOT WATER HEATER, 1 GAS METER, 1 ELECTRIC METER, THERE IS A

FINISHED, UNHEATED 3RD FLOOR ATTIC ROOM .  UTILITIES AND MECHANICALS ARE ON AND FUNCTIONAL: WATER, LIGHTS, GAS, (HEAT NOT ON DUE TO WATER DAMAGE)...

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    C4;No updates in the prior 15 years;general dated

interior, 1st floor with semi-modern to modern Kitchen with formica/linoleum/other countertops; wood cabinets; also semi-modern to modern bathroom on

2nd floor, baseboard heating system; apparent Avg+ roofing, some cracks on front porch steps, basement bathroom, water damage to ceiling, possible

leak.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes ☐ No  If No, describe

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# A65AD64D
esign.alamode.com/verify

Uniform Residential Appraisal Report

DATEL00092020

File # JERSEYCITY164BEACH

| | | | |
|---|---|---|---|
| There are | 4 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 449,000 to $ 550,000 . | |
| There are | 16 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 325,000 to $ 525,000 . | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 164 Beach St Jersey City, NJ 07307 | 115 Western Ave Jersey City, NJ 07307 | 237 Cambridge Ave Jersey City, NJ 07307 | 28 Graham St Jersey City, NJ 07307 |
| Proximity to Subject | | 0.31 miles NE | 0.91 miles NE | 0.88 miles NE |
| Sale Price | $ | $ 360,000 | $ 350,000 | $ 385,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 360.00 sq.ft. | $ 195.31 sq.ft. | $ 320.83 sq.ft. |
| Data Source(s) | | HudsonCoMLS#202001993/Clsd;DOM 14 | HudsonCoMLS#202006448/Clsd;DOM 15 | HudsonCoMLS#190003459/Clsd;DOM 41 |
| Verification Source(s) | | Njactb.org; NJtaxrecords.com | Njactb.org; NJtaxrecords.com | Njactb.org; NJtaxrecords.com |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment |
| Sales or Financing | | ArmLth 0 | ArmLth 0 | ArmLth 0 |
| Concessions | | Conv;0 0 | Cash;0 0 | Cash;0 0 |
| Date of Sale/Time | | s04/20;c02/20 0 | s06/20;c04/20 0 | s12/19;c10/19 0 |
| Location | N;Res; | N;Res; | N;Res; | N;Res; |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | FEE SIMPLE | FEE SIMPLE |
| Site | 2,100 sf | 1,875 sf 0 | 1,375 sf +3,500 | 1,618 sf +4,000 |
| View | N;CtyStr; | N;CtyStr; | N;CtyStr; | N;CtyStr; |
| Design (Style) | DT1.1;Cape Cod | DT2;2-Story 0 | DT2;2-Story S-Att 0 | DT2;2-StoryS-Att 0 |
| Quality of Construction | Q4 | Q4 | Q4 | Q4 |
| Actual Age | ~74 | 55 0 | ~110 0 | 140 0 |
| Condition | C4 | C4 | C4 | C4 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths |
| Room Count | 6 3 1.0 | 6 3 1.0 | 6 3 1.1 −4,000 | 6 4 1.1 −4,000 |
| Gross Living Area | 1,308 sq.ft. | 1,000 sq.ft. +15,500 | 1,792 sq.ft. −24,000 | 1,200 sq.ft. +5,500 |
| Basement & Finished | 587sf528sfwu | 500sf400sfwo 0 | 896sf0sfwu +8,000 | 500sf480sfwu 0 |
| Rooms Below Grade | 1rr0br1.0ba1o | 1rr0br0.0ba1o +5,000 | 0rr0br0.0ba0o +5,000 | 0rr0br0.0ba0o +5,000 |
| Functional Utility | Avg/Typical | Avg/Typical | Avg/Typical | Avg/Typical |
| Heating/Cooling | HWBB Indv | HWBB Indv | HWBB Indv | Radiators Indv 0 |
| Energy Efficient Items | STANDARD | STANDARD | STANDARD | STANDARD |
| Garage/Carport | 1dw | 1ga1dw −5,000 | None +4,000 | 1dw |
| Porch/Patio/Deck | Porch/Patio/Deck | Porch/Patio/Deck | Porch/Patio +2,000 | Porch/Patio +2,000 |
| AMENITIES | None | None | Inferior Kitchen +5,000 | Inferior Kitchen +5,000 |
| AMENITIES | Fence | None +5,500 | None +5,500 | None +5,500 |
| Net Adjustment (Total) | | ☒ + − $ 21,000 | ☒ + − $ 5,000 | ☒ + − $ 23,000 |
| Adjusted Sale Price of Comparables | | Net Adj. 5.8 % Gross Adj. 8.6 % $ 381,000 | Net Adj. 1.4 % Gross Adj. 17.4 % $ 355,000 | Net Adj. 6.0 % Gross Adj. 8.1 % $ 408,000 |

☒ I did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) HUDSON COUNTY MLS, TAX/PUBLIC RECORDS: NJACTB.ORG, NJTAXRECORDS.COM.
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) HUDSON COUNTY MLS, TAX/PUBLIC RECORDS: NJACTB.ORG, NJTAXRECORDS.COM.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | NJACTB.ORG, NJTAXRECORDS.COM | NJACTB.ORG, NJTAXRECORDS.COM | NJACTB.ORG, NJTAXRECORDS.COM | NJACTB.ORG, NJTAXRECORDS.COM |
| Effective Date of Data Source(s) | 06/16/2020 | 06/16/2020 | 06/16/2020 | 06/16/2020 |

Analysis of prior sale or transfer history of the subject property and comparable sales   NO PREVIOUS SALES/TRANSFERS WITHIN THE PAST 36 MONTHS
WERE FOUND ON THE SUBJECT.  LAST KNOWN SALE/TRANSFER OF THE SUBJECT WAS ON 07/10/1998 FOR $117,000.

NO KNOWN PREVIOUS SALES/TRANSFERS WITHIN THE PRIOR 12 MONTHS OF THE CLOSED SALES DATES WERE NOTED ON THE
COMPARABLES.

Summary of Sales Comparison Approach   COMPARABLES RECITED ARE CONSIDERED THE BEST INDICATORS OF VALUE, AND ARE SIMILAR IN LOCATION, AND EITHER C4 CONDITION,  SIMILAR
ROOM COUNT/ UTILITY, MARKET APPEAL, AGE OR AMENITIES.  GROSS LIVING AREA ADJUSTED AT $50 PER SQUARE FOOT ROUNDED: MARKET PERCEPTION OF EXTRA NOMINAL SF OF GLA.
BATHROOM ADJUSTMENT AT $4,000/HALF-BATH.  BASEMENT vs. UNFINISHED BASEMENT AT $15/Sq. Ft; BASEMENT FULL BATHROOM AT $5,000.  OTHER AMENITIES ADJUSTED ACCORDING TO
MARKET REACTIONS TO THE SAME.  CONDITION ADJUSTMENTS REFLECTS DIFFERENCES IN REMODELING AS COMPARED TO THE SUBJECT BASED UPON AN EXTERIOR INSPECTION, AS WELL AS A
CHECK WITH THE MLS LISTING INTERIOR PHOTOS, ie. C4 vs. C5 AT 5% OF COMPARABLES' PRICE, ie. C5 WITH MAJOR NEEDED REPAIRS, MORE DEFERRED MAINTENANCE.
SQUARE FOOTAGE OF THE COMPARABLES' ARE BASED PRIMARILY ON PUBLIC/TAX RECORDS.
See Additional Comments...

Indicated Value by Sales Comparison Approach $   380,000

| Indicated Value by: Sales Comparison Approach $ 380,000 | Cost Approach (if developed) $ | Income Approach (if developed) $ |
|---|---|---|

See Additional Comparables #4-6, Analysis/Comments...

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$   380,000 , as of   06/09/2020 , which is the date of inspection and the effective date of this appraisal.

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# A65AD64D
esign.alamode.com/verify

Uniform Residential Appraisal Report

FATEL00092020

File # JERSEYCITY164BEACH

**NEIGHBORHOOD DESCRIPTION**

GENERALLY NO UNFAVORABLE FACTORS ARE KNOWN AND NOTED WHICH WOULD ADVERSELY AFFECT THE MARKETABILITY OF THE SUBJECT PROPERTY OR THE SURROUNDING NEIGHBORHOOD. PRESENT MARKET APPEAL IS CONSIDERED TO BE NEUTRAL TO FAVORABLE AT PRESENT AND SHOULD CONTINUE AS SUCH IN THE FUTURE. NO KNOWN ENVIRONMENTAL CONCERNS STEMMING FROM NON-RESIDENTIAL USES IN THE AREA. THE NEIGHBORHOOD IS WELL MAINTAINED AND PROVIDES AN AVERAGE ENVIRONMENT FOR HOMES WITHIN THIS MARKET AREA. EMPLOYMENT IS CONSIDERED TO BE SOMEWHAT STABLE TO FAIR AND ACCESSIBLE. SCHOOLS, SHOPPING, HOSPITALS, PARKS AND OTHER SUPPORTING FACILITIES ARE LOCATED WITHIN CLOSE PROXIMITY.

**MARKET CONDITIONS (CONT'D)**

THE 1-FAMILY COMPARABLE (LOWEST-END; HIGHEST-END PROPERTIES ARE EXCLUDED) CLOSED PROPERTIES ONLY, MARKET TREND IS WEAKLY/INCONCLUSIVELY STABILIZING OVER THE LAST 12-MONTHS - MAINLY DUE TO VERY SMALL CLOSED SALES VOLUME - INSIGNIFICANT STATISTICAL DATA/ANALYSIS TO FORM A STRONG CONCLUSION OF A MARKET VALUE TREND. ALSO FLUCTUATING VALUES: LAST 4-6 MONTHS WITH GREATEST AVG/MEDIAN/HIGH-END VALUES & LAST 3 MONTHS WITH SMALLEST AVG/MEDIAN VALUES, AND LAST 7-12 MONTHS BACK WITH IN-BETWEEN VALUES; - ALL ON ONLY 16 KNOWN COMPARABLE 1-FAMILY CLOSED SALES. WITH THIS SOMEWHAT FLUCTUATING DATA, HOWEVER, ON A STATISTICALLY VERY SMALL/INCONCLUSIVE SALES VOLUME, THE APPARENT MARKET VALUE TREND FROM THE PAST 12 MONTHS GIVES A WEAKLY/INCONCLUSIVELY STABILIZING MARKET VALUE TREND. THE ACTIVE AND CURRENT CONTRACT LISTINGS SHOW AN ATYPICALLY SMALLER VOLUME vs. SALES FROM THE LAST 3 MONTHS, (INCLUDING 1 UNDER CONTRACT LISTING), ALSO A TYPICAL MUCH SMALLER AMOUNT OF LISTINGS OVER THE LAST 4 - 12 MONTHS AS WELL, WITH NEUTRAL/UNKNOWN EFFECTS UPON VALUES GOING FORWARD.

**SUMMARY OF SALES COMPARISON (CONT'D)**

ALL ADJUSTMENTS ARE CONSIDERED TO BE PRACTICAL AND MARKET BORNE. LOT SIZE ADJUSTMENTS OF A NOMINAL 1% OF COMPARABLES' PRICE FOR SOMEWHAT SMALLER, OR LARGER LOT SIZES, LESSER, OR GREATER - MARKETABLE LOT SIZES/MARKET PERCEPTION. SALES ARE UTILIZED WITH DIFFERENT STYLES, WITHOUT ANY NEGATIVE MARKET RESULTS, AS CONDITION, GLA, LOCATION AND AMENITIES ARE GIVEN AT LEAST AS MUCH IMPORTANCE IN THE MARKETPLACE. ACTIVE LISTING #1 (COMP #5) IS GIVEN SECONDARY CONSIDERATION IN THE FINAL ESTIMATE OF VALUE AS THE LIST-PRICE GENERALLY REFLECTS TYPICAL LIST-SALES RATIO. THERE ARE NO TIME ADJUSTMENTS FOR SALES WHICH WENT UNDER CONTRACT UNDER THE PREFERRED 6-MONTHS FROM THE EFFECTIVE DATE AS THE GENERAL OVERALL COMPARABLE 1-FAMILY COMPARABLE MARKET VALUE TREND IS GENERALLY WEAKLY/INCONCLUSIVELY STABILIZING OVER THE LAST 12-MONTHS BACK, MAINLY DUE TO STATISTICALLY TINY/INCONCLUSIVE CLOSED SALES VOLUMES.

**ZONING COMPLIANCE (CONT'D)**

THE SUBJECT IS ON A NON-CONFORMING, PRE-EXISTING LOT AS IT DOES NOT MEET THE WIDTH REQUIREMENT OF A MINIMUM 25' X 100' LOT SIZE IN THE R-1 ZONE.

THE FOLLOWING IS FROM THE JERSEY CITY CODE: THE ZONING OFFICER; THE OWNER OR ARCHITECT OR ENGINEER SELECTED BY THE OWNER; AND A THIRD PERSON AGREED TO BY THE ZONING OFFICER AND THE OWNER WHOSE FEE SHALL BE AGREED TO AND SHALL BE PAID IN EQUAL PORTIONS BY THE CITY AND THE OWNER. IF IN THE OPINION OF A MAJORITY OF THE ABOVE THREE PEOPLE THE DAMAGE OR CONDITION WARRANTING CONDEMNATION IS GREATER THAN FIFTY PERCENT (50%) OF THE VALUE OF REPLACING THE ENTIRE STRUCTURE, THE STRUCTURE OR USE SHALL BE CONSIDERED COMPLETELY DESTROYED AND MAY BE REBUILT TO THE ORIGINAL NON-CONFORMING STRUCTURE OR USE SPECIFICATIONS ONLY UPON APPROVAL OF A USE VARIANCE AS PROVIDED BY STATE STATUTE. ANY EXISTING LOT ON WHICH A BUILDING OR STRUCTURE IS LOCATED AND WHICH LOT DOES NOT MEET THE MINIMUM LOT SIZE, OR A STRUCTURE WHICH VIOLATES ANY YARD REQUIREMENTS, MAY HAVE ADDITIONS TO THE PRINCIPAL BUILDING AND/OR CONSTRUCT AN ACCESSORY BUILDING WITHOUT AN APPEAL TO THE BOARD OF ADJUSTMENT, PROVIDED THAT: THE TOTAL PERMITTED LOT AND BUILDING COVERAGE IS NOT EXCEEDED; THE ACCESSORY BUILDING AND/OR ANY ADDITION TO THE PRINCIPAL BUILDING DO NOT VIOLATE ANY OTHER REQUIREMENTS OF THIS CHAPTER SUCH AS, BUT NOT LIMITED TO, HEIGHT, SETBACK AND PARKING.

| COST APPROACH TO VALUE (not required by Fannie Mae) | | | | |
|---|---|---|---|---|

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)      COST APPROACH IS NOT REQUIRED AND IT IS NOT TOO CREDIBLE AN OPINION OF MARKET VALUE AS IT IS VERY DIFFICULT TO ACCURATELY ESTIMATE THE DEPRECIATION OF A ~74 YEAR OLD DWELLING AND ALL OF THE ASSOCIATED VARYING LABOR AND BUILDING MATERIAL COSTS, SOFT COSTS, AS WELL AS TO ACCURATELY ESTIMATE THE REPLACEMENT COST AND FUNCTIONAL UTILITY OF A SIMILAR DWELLING AS BUILT NEW.

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | = $ |
|---|---|---|---|
| Source of cost data | DWELLING | Sq.Ft. @ $ | = $ |
| Quality rating from cost service        Effective date of cost data | | Sq.Ft. @ $ | = $ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | |
| | Garage/Carport | Sq.Ft. @ $ | = $ |
| | Total Estimate of Cost-New | | = $ |
| | Less        Physical | Functional | External |
| | Depreciation | | = $ ( ) |
| | Depreciated Cost of Improvements | | = $ |
| | "As-is" Value of Site Improvements | | = $ |
| | | | = $ |
| Estimated Remaining Economic Life (HUD and VA only)        Years | INDICATED VALUE BY COST APPROACH | | = $ |

| INCOME APPROACH TO VALUE (not required by Fannie Mae) | | |
|---|---|---|
| Estimated Monthly Market Rent $        X Gross Rent Multiplier        = $ | | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM) | | |

| PROJECT INFORMATION FOR PUDs (if applicable) | | | | |
|---|---|---|---|---|

Is the developer/builder in control of the Homeowners' Association (HOA)?    ☐ Yes   ☐ No    Unit type(s)   ☐ Detached   ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?    ☐ Yes   ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units?    ☐ Yes   ☐ No   Data Source

Are the units, common elements, and recreation facilities complete?    ☐ Yes   ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?    ☐ Yes   ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Uniform Residential Appraisal Report

File # JERSEYCITY164BEACH

FATEL06092020

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:    The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE:    The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:    The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:    The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Serial# A65AD64D
esign.alamode.com/verify

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Uniform Residential Appraisal Report    File # JERSEYCITY164BEACH

PATEL06092020

**APPRAISER'S CERTIFICATION:**    The    Appraiser    certifies    and    agrees    that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# A65AD64D
esign.alamode.com/verify

PATEL06092020
Uniform Residential Appraisal Report
File # JERSEYCITY164BEACH

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:          The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

🔒 esign.alamode.com/verify          Serial:A65AD64D

---

**APPRAISER**

Signature _Mark Radko_

Name    Mark Radko

Company Name    Dependable Real Estate Appraisers

Company Address    163 W 57th Street

Bayonne, NJ 07002

Telephone Number    (201) 709-4445

Email Address    Mark.ar2@dependablerea.com

Date of Signature and Report    06/18/2020

Effective Date of Appraisal    06/09/2020

State Certification #    42RC00242300

or State License #

or Other (describe)                State #

State    NJ

Expiration Date of Certification or License    12/31/2021

ADDRESS OF PROPERTY APPRAISED

164 Beach St

Jersey City, NJ 07307

APPRAISED VALUE OF SUBJECT PROPERTY $    380,000

LENDER/CLIENT

Name    No AMC

Company Name    Hiteshri Patel

Company Address    164 Beach Street, Jersey City, NJ 07307

Email Address    hiteshri325@gmail.com

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature

Name

Company Name

Company Address

Telephone Number

Email Address

Date of Signature

State Certification #

or State License #

State

Expiration Date of Certification or License

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
       Date of Inspection
☐ Did inspect interior and exterior of subject property
       Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
       Date of Inspection

---

Freddie Mac Form 70 March 2005          UAD Version 9/2011          Page 6 of 6          Fannie Mae Form 1004 March 2005

Serial# A65AD64D
esign.alamode.com/verify

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Uniform Residential Appraisal Report

File # JERSEYCITY164BEACH

FATEL06090202O

## SALES COMPARISON APPROACH

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 164 Beach St Jersey City, NJ 07307 | 411 Liberty Ave Jersey City, NJ 07307 | | 64 Hopkins Ave Jersey City, NJ 07306 | | | |
| Proximity to Subject | | 0.41 miles NE | | 0.85 miles SE | | | |
| Sale Price | $ | $ 375,000 | | $ 479,000 | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 234.38 sq.ft. | | $ 360.96 sq.ft. | | $ sq.ft. | |
| Data Source(s) | | HudsonCoMLS#1900111077/Clsd;DOM 148 | | HudsonCoMLS#202007508/Clsd;DOM 43 | | | |
| Verification Source(s) | | Njactb.org; Njtaxrecords.com | | Njactb.org; Njtaxrecords.com | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | 0 | Listing | 0 | | |
| Concessions | | Cash;0 | 0 | Active;0 | -14,500 | | |
| Date of Sale/Time | | s01/20;c11/19 | 0 | Active | 0 | | |
| Location | N;Res; | N;Res; | 0 | B;Res;ClsrWlkPathTrn | -24,000 | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | | |
| Site | 2,100 sf | 1,940 sf | 0 | 1,387 sf | +5,000 | | |
| View | N;CtyStr; | N;CtyStr; | 0 | N;CtyStr; | 0 | | |
| Design (Style) | DT1.1;Cape Cod | DT2;2-Story | 0 | DT2;2-Story | 0 | | |
| Quality of Construction | Q4 | Q4 | 0 | Q4 | 0 | | |
| Actual Age | ~74 | ~115 | 0 | 135 | 0 | | |
| Condition | C4 | C5 | +19,000 | C5 | +24,000 | | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 6 | 3 | 1.0 | 5 | 2 | 1.0 | 0 | 5 | 2 | 1.1 | -4,000 | | | |
| Gross Living Area | 1,308 sq.ft. | 1,600 sq.ft. | -24,000 | 1,327 sq.ft. | 0 | sq.ft. | |
| Basement & Finished | 587sf528sfwu | 900sf540sfwu | 0 | 664sf0sfwu | +8,000 | | |
| Rooms Below Grade | 1rr0br1.0ba1o | 1rr0br0.0ba1o | +5,000 | 1rr0br0.0ba1o | +5,000 | | |
| Functional Utility | Avg/Typical | Avg/Typical | 0 | Avg/Typical | | | |
| Heating/Cooling | HWBB Indv | Radiators Indv | 0 | Radiators Indv | 0 | | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | | |
| Garage/Carport | 1dw | 1dw | 0 | None | +4,000 | | |
| Porch/Patio/Deck | Porch/Patio/Deck | Porch/Patio | +2,000 | Porch/Patio | +2,000 | | |
| AMENITIES | None | None | | None | | | |
| AMENITIES | Fence | None | +5,500 | None | +5,500 | | |
| Net Adjustment (Total) | | ☒ + ☐ - | 7,500 | ☒ + ☐ - | 11,000 | ☐ + ☐ - | |
| Adjusted Sale Price of Comparables | | Net Adj. 2.0 % Gross Adj. 14.8 % | $ 382,500 | Net Adj. 2.3 % Gross Adj. 20.0 % | $ 490,000 | Net Adj. % Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

## SALE HISTORY

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | NJACTB.ORG.NJTAXRECORDS.COM | NJACTB.ORG.NJTAXRECORDS.COM | NJACTB.ORG.NJTAXRECORDS.COM | |
| Effective Date of Data Source(s) | 06/16/2020 | 06/16/2020 | 06/16/2020 | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

**NOTE**

I HAVE NO CURRENT OR PROSPECTIVE INTEREST IN THE SUBJECT PROPERTY OR THE PARTIES INVOLVED AND NO SERVICES WERE PERFORMED BY THE APPRAISER WITHIN THE 3 YEAR PERIOD IMMEDIATELY PRECEDING ACCEPTANCE OF THIS ASSIGNMENT, AS AN APPRAISER OR IN ANY CAPACITY.

THIS APPRAISAL REPORT CONFORMS TO THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE (USPAP) ADOPTED BY THE APPRAISAL FOUNDATION. THE FINAL VALUE OF THE SUBJECT PROPERTY IS NOT BASED ON A MINIMUM FOR LOAN APPROVAL.

**RECONCILIATION (CONT'D)**

ALL WEIGHT GIVEN TO SALES COMPARISON ANALYSIS.  INSUFFICIENT INFO AVAILABLE TO FORMULATE A RELIABLE G.R.M. FOR THE INCOME APPROACH. COST APPROACH IS NOT REQUIRED AND NOT TOO CREDIBLE DUE TO THE DIFFICULTY IN ESTIMATING DEPRECIATION & REPLACEMENT COST AS NEW WITH SIMILAR FUNCTIONALITY FOR A ~74 YEAR OLD DWELLING. THE MARKET DATA APPROACH IS THE MOST PRACTICAL APPROACH AS IT REFLECTS THE REACTIONS OF BUYERS & SELLERS IN THE MARKETPLACE. THIS REPORT HAS BEEN PREPARED TO ASSIST THE CLIENT, IN EVALUATING THE PROPERTY FOR CURRENT MARKET VALUE/LEGAL PURPOSES ONLY.  NO VALUE GIVEN TO NON-REALTY ITEMS.  ALSO, THIS REPORT HAS BEEN SIGNED USING SECURE DIGITAL SIGNATURES.

WHILE CONSIDERATION IS GIVEN TO ALL 4 CLOSED COMPARABLES IN THE FINAL ESTIMATE OF MARKET VALUE AND AS NO CLOSED SALES FOUND ARE IDEAL, SALES #1 & 2 HOLD THE MOST WEIGHT DUE TO MAINLY SIMILAR C4 CONDITION, ALSO FOR VERY RECENT SALES, ALSO RELATIVELY SMALLER GLA ALSO SIMILAR ROOM COUNT/UTILITY, LOT SIZE AND AMENITIES, ie. ON-SITE PARKING; SALE #3 ALSO SHARES MOST OF THE SAME MARKET CHARACTERISTICS JUST MENTIONED FOR SALES #1 AND #2, ALTHOUGH IS A SOMEWHAT DATED SALE, ALSO WITH AN EXTRA .1 BATH IN GLA AND BASEMENT WITHOUT A BATH, LARGER; SALE #4 MAINLY BRACKETS AN INFERIOR C5 CONDITION SALE; OTHERWISE, CLOSE-BY LOCATION, SMALLER LOT SIZE, ALSO A DRIVEWAY, A LARGER GLA AND ONLY 2 BEDROOMS.

ALL ARE, HOWEVER, AMONG THE MOST COMPARABLE, SMALLER GLA, GENERALLY SIMILAR ROOM COUNT, CONDITION, 1-FAMILY CLOSED SALES AVAILABLE TO THE SUBJECT IN MARKET APPEAL, RECENT SALES, LOCATION AND WITH SIMILAR OVERALL MARKET APPEAL OR AMENITIES - LOCATED IN THE SUBJECT NEIGHBORHOOD AND FOUND WITHIN THE PRIOR 6+/- MONTHS FROM THE EFFECTIVE DATE AND ADJUSTED ACCORDINGLY.

**Site: Adverse Site or External Factors (Cont'd)**

The subject property may contain lead-based paint because it was built prior to 1978.  The subject property may also contain adverse "environmental substances", ie. on pipes or behind or on the ceilings or walls, due to its old age. It is noted that I am not an environmental professional/contractor.

Form 1004UAD.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# A65AD64D
esign.alamode.com/verify

**Market Conditions Addendum to the Appraisal Report**    File No. JERSEYCITY164BEACH

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 164 Beach St | City | Jersey City | State | NJ | ZIP Code | 07307 |
|---|---|---|---|---|---|---|---|
| Borrower | N/A | | | | | | |

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 7 | 4 | 5 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 1.17 | 1.33 | 1.67 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 1 | 0 | 3 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 0.9 | 0 | 1.8 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 400,000 | 486,000 | 360,000 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Median Comparable Sales Days on Market | 29 | 57 | 21 | ☒ Increasing | ☐ Stable | ☐ Increasing |
| Median Comparable List Price | 465,000 | 0 | 494,000 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 64 | 0 | 49 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Sale Price as % of List Price | 97 | 0 | 97 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☒ No | | ☐ Increasing | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.). A LARGE PORTION OF THE RESIDENTIAL PROPERTIES ARE BEING FINANCED WITH CONVENTIONAL MORTGAGES, WITH BUYDOWNS, SELLER CONCESSIONS AND GOVERNMENT FINANCING BECOMING MORE TYPICAL TO THE AREA. HOWEVER, NO EVIDENCE WAS FOUND SHOWING ANY INCREASE IN THESE TYPES OF SELLER'S CONCESSIONS. **NOTE:** ALL DATA IN THIS FORM FROM THE HUDSON COUNTY MLS REPRESENTS ALL KNOWN COMPARABLE, MAXIMUM 2 BATHROOMS, 1-FAMILY TYPICALLY AVG.  AVG- CONDITION (INCLUDES AVG OR NEWER/REMODELED PROPERTIES) CLOSED SALES, ACTIVE, UNDER CONTRACT PROPERTIES IN THE HEIGHTS SECTION - ONLY, OF JERSEY CITY.

Are foreclosure sales (REO sales) a factor in the market?  ☒ Yes  ☐ No   If yes, explain (including the trends in listings and sales of foreclosed properties).
DISTRESSED SALES ARE ONLY BARELY PRESENT IN THE COMPARABLE 1-FAMILY MARKET OF THE HUDSON COUNTY MLS, IN THE HEIGHTS SECTION.  ONLY 1 OR SO KNOWN CLOSED DISTRESSED SALE IN THE PREVIOUS 12 MONTHS: CORPORATE/BANK OWNED, SHORT SALE AND/OR DISTRESSED SALES IN THE SUBJECT'S NEIGHBORHOOD, LEADING TO THE CONCLUSION THAT DISTRESSED/CORPORATE SALES ARE BARELY OR VIRTUALLY ALMOST A NON-FACTOR IN THE MARKET.

Cite data sources for above information.  PRIMARILY HUDSON COUNTY MLS; ALSO NJTAXRECORDS.COM, NJACTB.ORG.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
THE 1-FAMILY COMPARABLE (LOWEST-END; HIGHEST-END PROPERTIES ARE EXCLUDED) CLOSED PROPERTIES ONLY, MARKET TREND IS WEAKLY/INCONCLUSIVELY STABILIZING OVER THE LAST 12-MONTHS. DUE TO VERY SMALL CLOSED SALES VOLUME - INSIGNIFICANT STATISTICAL DATA/ANALYSIS TO FORM A STRONG CONCLUSION OF A MARKET VALUE TREND. ALSO FLUCTUATING VALUES: LAST 4-6 MONTHS WITH GREATEST AVG/MEDIAN/HIGH-END VALUES & LAST 3 MONTHS WITH SMALLEST AVG/MEDIAN VALUES, AND LAST 7-12 MONTHS BACK WITH IN-BETWEEN VALUES - ALL ON ONLY 16 KNOWN COMPARABLE 1-FAMILY CLOSED SALES. WITH THIS SOMEWHAT FLUCTUATING DATA, HOWEVER, ON A STATISTICALLY VERY SMALL/INCONCLUSIVE SALES VOLUME, THE APPARENT MARKET VALUE TREND FROM THE PAST 12 MONTHS GIVES A WEAKLY/INCONCLUSIVELY STABILIZING MARKET VALUE TREND.  THE ACTIVE AND UNDER CONTRACT LISTINGS SHOW AN ATYPICALLY SMALLER VOLUME vs. SALES FROM THE LAST 3 MONTHS, (INCLUDING 1 UNDER CONTRACT LISTING). ALSO A TYPICAL MUCH SMALLER VOLUME OF LISTINGS OVER THE LAST 4 - 12 MONTHS AS WELL, WITH NEUTRAL/UNKNOWN EFFECTS UPON VALUES GOING FORWARD.

| If the subject is a unit in a condominium or cooperative project , complete the following: | | | Project Name: | | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?  ☐ Yes  ☐ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name | Mark Radko | Supervisory Appraiser Name | |
| Company Name | Dependable Real Estate Appraisers | Company Name | |
| Company Address | 163 W 57th Street, Bayonne, NJ 07002 | Company Address | |
| State License/Certification # | 42RC00242300 State NJ | State License/Certification # | State |
| Email Address | Mark.ar2@dependablerea.com | Email Address | |

Freddie Mac Form 71   March 2009       Page 1 of 1       Fannie Mae Form 1004MC   March 2009

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# A65AD64D
esign.alamode.com/verify

**Building Sketch**

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | |
| City | Jersey City | County | Hudson | State | NJ | Zip Code 07307 |
| Lender/Client | Hiteshri Patel | | | | | |



TOTAL Sketch by a la mode, inc.

**Area Calculations Summary**

| Living Area | | Calculation Details |
|---|---|---|
| First Floor | 699.64 Sq ft | 0.5 × 3.87 × 1.6 = 3.1 |
| | | 0.5 × 1.6 × 4.7 = 3.76 |
| | | 5.6 × 1.6 = 8.96 |
| | | 15.42 × 7.3 = 112.57 |
| | | 15.82 × 36.11 = 571.26 |
| Second Floor | 607.9 Sq ft | 11.2 × 7.3 = 81.76 |
| | | 15.8 × 33.3 = 526.14 |
| **Total Living Area (Rounded):** | **1308 Sq ft** | |

Serial# A65AD64D
esign.alamode.com/verify

**Location Map**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | | |
| City | Jersey City | County | Hudson | | State | NJ | Zip Code | 07307 |
| Lender/Client | Hiteshri Patel | | | | | | |



Serial# A65AD64D
esign.alamode.com/verify

Flood Map

| Borrower | N/A | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | | | |
| City | Jersey City | County | Hudson | | State | NJ | Zip Code | 07307 |
| Lender/Client | Hiteshri Patel | | | | | | | |



**MAP DATA**

FEMA Special Flood Hazard Area: **No**
Map Number: **34017C0106D**
Zone: **X**
Map Date: **August 16, 2006**
FIPS: **34017**

**MAP LEGEND**

Powered by CoreLogic®

Areas inundated by 500-year flooding
Areas inundated by 100-year flooding
Velocity Hazard
Protected Areas
Floodway
Subject Area

Aerial Map

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | | |
| City | Jersey City | County | Hudson | State | NJ | Zip Code | 07307 |
| Lender/Client | Hiteshri Patel | | | | | | |



Serial# A65AD64D
esign.alamode.com/verify

**Subject Photo Page**

| Borrower | N/A | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | | | |
| City | Jersey City | County | Hudson | | State | NJ | Zip Code | 07307 |
| Lender/Client | Hiteshri Patel | | | | | | | |



**Subject Front**

164 Beach St
Sales Price
Gross Living Area    1,308
Total Rooms          6
Total Bedrooms       3
Total Bathrooms      1.0
Location             N;Res;
View                 N;CtyStr;
Site                 2,100 sf
Quality              Q4
Age                  ~74

**Subject Rear**



**Subject Street**



Serial# A65AD64D
esign.alamode.com/verify

**Photograph Addendum**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | | |
| City | Jersey City | County | Hudson | State | NJ | Zip Code | 07307 |
| Lender/Client | Hiteshri Patel | | | | | | |



**Front: Alternative View**



**R/S**



**L/S**



**Open Lot to immediate Left of Subject**



**Front Door/Frame**

Serial# A65AD64D
esign.alamode.com/verify

Photograph Addendum

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | | |
| City | Jersey City | County | Hudson | | State | NJ | Zip Code | 07307 |
| Lender/Client | Hiteshri Patel | | | | | | |



**Rear L/S entrance**



**Backyard**



**Rear Roof View, chimney**



**View  under Deck**



**Front Foyer**



**1st floor Living room**

Serial# A65AD64D
esign.alamode.com/verify

Photograph Addendum

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | | |
| City | Jersey City | County | Hudson | State | NJ | Zip Code | 07307 |
| Lender/Client | Hiteshri Patel | | | | | | |



**1st floor Dining Room**



**Dining Room, Kitchen**



**Kitchen**



**Kitchen**



**Kitchen**



**Basement W/D**

Serial# A65AD64D
esign.alamode.com/verify

Photograph Addendum

| | |
|---|---|
| Borrower | N/A |
| Property Address | 164 Beach St |
| City | Jersey City |
| County | Hudson |
| State | NJ |
| Zip Code | 07307 |
| Lender/Client | Hiteshri Patel |



**Basement: panel box, older, mainly metal jacketed wiring**



**Basement Recreation Room**



**baseboard Heating source**



**hot water heater, boiler**



**Basement Bathroom**



**Basement Bathroom Shower**

Serial# A65AD64D
esign.alamode.com/verify

Photograph Addendum

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | | |
| City | Jersey City | County | Hudson | State | NJ | Zip Code | 07307 |
| Lender/Client | Hiteshri Patel | | | | | | |



**Basement Bathroom ceiling, water damage**



**Sink, plumbing**



**2nd floor front bedroom**



**Middle bedroom**



**Hallway/ landing, fire alarm**



**3rd Bedroom**

Serial# A65AD64D
esign.alamode.com/verify

**Photograph Addendum**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | | |
| City | Jersey City | County | Hudson | State | NJ | Zip Code | 07307 |
| Lender/Client | Hiteshri Patel | | | | | | |



**2nd floor bedroom – baseboard heat source**



**hallway bathroom**



**hallway bathroom**



**hallway bathroom ceiling**



**stairs to 3rd floor – middle bedroom**



**wall, window close-up**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | | |
| City | Jersey City | County | Hudson | State | NJ | Zip Code | 07307 |
| Lender/Client | Hiteshri Patel | | | | | | |



**3rd floor Attic – finished/unheated**



**Attic – alternative view**



**front porch with cracks**

Serial# A65AD64D
esign.alamode.com/verify

Comparable Photo Page

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 164 Beach St | | | | | | |
| City | Jersey City | County | Hudson | State | NJ | Zip Code | 07307 |
| Lender/Client | Hiteshri Patel | | | | | | |



### Comparable 1

115 Western Ave

| | |
|---|---|
| Prox. to Subject | 0.31 miles NE |
| Sale Price | 360,000 |
| Gross Living Area | 1,000 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1,875 sf |
| Quality | Q4 |
| Age | 55 |



### Comparable 2

237 Cambridge Ave

| | |
|---|---|
| Prox. to Subject | 0.91 miles NE |
| Sale Price | 350,000 |
| Gross Living Area | 1,792 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.1 |
| Location | N;Res; |
| View | N;CtyStr; |
| Site | 1,375 sf |
| Quality | Q4 |
| Age | ~110 |



### Comparable 3

28 Graham St

| | |
|---|---|
| Prox. to Subject | 0.88 miles NE |
| Sale Price | 385,000 |
| Gross Living Area | 1,200 |
| Total Rooms | 6 |
| Total Bedrooms | 4 |
| Total Bathrooms | 1.1 |
| Location | N;Res; |
| View | N;CtyStr; |
| Site | 1,618 sf |
| Quality | Q4 |
| Age | 140 |

Serial# A65AD64D
esign.alamode.com/verify

**Comparable Photo Page**

| | |
|---|---|
| Borrower | N/A |
| Property Address | 164 Beach St |
| City | Jersey City |
| County | Hudson |
| State | NJ |
| Zip Code | 07307 |
| Lender/Client | Hiteshri Patel |



### Comparable 4

411 Liberty Ave

| | |
|---|---|
| Prox. to Subject | 0.41 miles NE |
| Sales Price | 375,000 |
| Borrower/Client | 1,600 |
| Lender | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;CtyStr; |
| Site | 1,940 sf |
| Quality | Q4 |
| Age | ~115 |



### Active Listing 5

64 Hopkins Ave

| | |
|---|---|
| Prox. to Subject | 0.85 miles SE |
| Sales Price | 479,000 |
| Gross Living Area | 1,327 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.1 |
| Location | B;Res;ClsrWlkPathTrn |
| View | N;CtyStr; |
| Site | 1,387 sf |
| Quality | Q4 |
| Age | 135 |

| | |
|---|---|
| Prox. to Subject | |
| Sales Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

Serial# A65AD64D
esign.alamode.com/verify

File No.    JERSEYCITY164BEACH

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
### (Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Condition Ratings and Definitions

C1

The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

C2

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.

C3

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.

C4

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.

C5

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.

C6

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.

Quality Ratings and Definitions

Q1

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Serial# A65AD64D
esign.alamode.com/verify

Form UADDEFINE1A - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

(Source: Fannie Mae Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

Q3

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases.  Quarter baths (baths that feature only a toilet) are not included in the bathroom count.  The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

Serial# A65AD64D
esign.alamode.com/verify

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-in Garage | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sale or Financing Concessions |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid-rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

# Report Verification

This appraisal report has been electronically signed. It is as valid and legally enforceable as a wet ink signature on paper. In addition, advanced third party identify verification from Equifax has been used to ensure that the appraiser signing this report is really who they say they are. You can also verify that the salient data points of the report have not been altered in any way.

To verify the integrity of this document:

1. Visit esign.alamode.com/verify

2. Enter the Serial Number and Signer Name for this document listed below and click Verify.

3. A verification report will be generated showing the profile of the appraiser(s) who signed the report, the date and time the signature were applied, and the salient data from the report at the time of signing.

4. Verify the salient data matches the data in this report to quickly reveal if any tampering has taken place.

5. Optionally, upload the PDF version of this report to confirm it exactly matches the report when it was signed.

**The report below is an example of what you would see when verifying the report.**

| Salient Data: | | |
|---|---|---|
| Date of Sale: | Condition: | C4 |
| Borrower: N/A | Total Rooms: | 6 |
| Lender: Hiteshri Patel | Bedrooms: | 3 |
| Size (Sq.Ft): 1,308 | Baths: | 1.0 |
| Price Per Square Foot: | Appraiser: Mark Radko | |
| Location: N;Res; | Effective Date of Value ('as of'): | 06/09/2020 |
| Age: ~74 | Final Opinion of Value: | 380,000 |

Signer 1:

Mark Radko
163 W 57th Street, Bayonne, NJ 07002

Signer 2:

Signature:
Serial #: A65AD64D
Date Signed: 06/18/2020

Signature:
Serial #:
Date Signed:

Form SDVERIFY2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# A65AD64D
esign.alamode.com/verify

# Exhibit

## "B"

# APPRAISAL OF REAL PROPERTY



**LOCATED AT**

223 Gordons Corner Rd
Marlboro, NJ 07746
BLOCK: 331                    LOT: 61.01

**FOR**

**OPINION OF VALUE**

865,000

**AS OF**

06/05/2020

**BY**

RODGER WILSON
PHOENIX APPRAISALS

732-276-6621
phoenixco@optonline.net

File No. 200601

**PROXIMITY:**
DUE TO A LIMITED NUMBER OF CLOSED SALES WITHIN ONE MILE DISTANCE, THE APPRAISER UTILIZED SALES IN EXCESS OF ONE MILE, HOWEVER, COMPARABLES WERE LOCATED IN SIMILAR AND COMPETING MARKET.

**AGE:**
THERE ARE HOMES OF THE SAME AGE IN THE SUBJECT AREA HOWEVER, DUE TO THE LACK OF AVAILABLE COMPARABLE SALES DATA, IT WAS NECESSARY TO USE HOMES THAT ARE OLDER AND/OR SOME YOUNGER THEN THE SUBJECT.

**SIZE:**
LACK OF RESENT SALES COMPARABLE DATA EXISTS, IT WAS THERE FOR NECESSARY TO USE HOMES WITH A "GLA" THAT DIFFERS FROM THE SUBJECT. AN ADJUSTMENT OF $35.00 PER SQUARE FOOT HAS BEEN MADE TO THE COMPARABLE PROPERTIES FOR THE DIFFERENCE IN "GLA" AND LAND ADJUSTMENT OF $10,000 PER ACRE.

**DATE OF SALE FOR COMPARABLES:**
DUE TO THE LACK OF RECENT SALES DATA WITH IN THE DESIRED 90 DAY TIME FRAME, IT WAS NECESSARY TO USE HOMES SALES BEYOND THE REQUESTED TIME PERIMETERS. THE COMPARABLES SIGHTED ARE CONSIDERED THE BEST INDICATORS OF VALUE AT THE TIME OF THE EFFECTIVE DATE OF THIS APPRAISAL.

**ADDENDUM TO SALES COMPARISON COMMENTS:**
COMPARABLES RECITED ARE CONSIDERED THE BEST INDICATORS OF VALUE.  ROOM COUNT REFLECT VALUE OF $5,000.PER FULL BATH AND $2,500.PER HALF BATH.  GROSS LIVING AREA ADJUSTED AT $35.00 PER SQUARE FOOT ROUNDED.SITE ADJUSTMENT FOR SIZE WAS GIVEN $20,000 PER ACRE.  ALL ADJUSTMENTS ARE CONSIDERED TO BE PRACTICAL AND MARKET BORNE. MOST CONSIDERATION IS GIVEN TO COMPARABLE SALES APPROACH.

**PERSONAL PROPERTY:**
NON-REALITY ITEMS ARE CONSIDERED PERSONAL PROPERTY (I.E. WASHER,DRYER,REFRIGERATOR) BY THIS APPRAISER AND NOT GIVEN A VALUE IN THIS REPORT.

**COMMENTS ON SUBJECT AND COMPARABLE PHOTOS:**
COMPUTER DEVELOPED AND PRINTED PHOTOS OF THE SUBJECT AND COMPARABLES WERE USED FOR THIS REPORT. THE PHOTOS ARE COMPUTER DEVELOPED BUT NOT COMPUTER ENHANCED. BARRING THE ALTERATION OF BRIGHTNESS, CONTRAST, AND/OR SHARPNESS FOR CLEARER IMAGES (AS 35MM PHOTOS CAN BE AND OFTEN ARE SIMILARLY ADJUSTED). THE APPRAISER CERTIFIES THAT IN NO WAY WERE THESE PHOTOS ENHANCED TO DELIBERATELY MISLEAD THE READER, LENDER, UNDERWRITER OR ANY OTHER PARTY CONCERNED AS TO THE CONDITION OF THE SUBJECT OR COMPARABLES, THE AMENITIES OF THE DWELLINGS OR TO ANY OTHER AREA(S) THAT MAY OR MAY NOT AFFECT THE VALUE.

**PURPOSE OF THE APPRAISAL:**
THE PURPOSE OF THIS APPRAISAL IS TO ESTIMATE THE MARKET VALUE OF THE SUBJECT PROPERTY AS IDENTIFIED IN THE "IDENTIFICATION OF PROPERTY" SECTION OF THIS REPORT. (LEGAL DESCRIPTION)

**SCOPE OF APPRAISAL:**
IN DEVELOPING THE APPRAISAL, WE HAVE IDENTIFIED THE REAL ESTATE, IDENTIFIED THE REAL PROPERTY INTEREST, CONSIDERED THE EXTENT OF THE DATA COLLECTION PROCESS AND IDENTIFIED ANY SPECIAL LIMITING CONDITIONS AND EFFECTIVE DATE OF THE APPRAISAL. IN THE COLLECTION OF DATA, THE SUBJECT WAS PHYSICALLY INSPECTED ON THE INTERIOR AND EXTERIOR.  SALES DATA WAS COLLECTED FROM SEVERAL SOURCES, INCLUDING MUNICIPAL RECORDS, REAL ESTATE PROFESSIONALS AND THE MULTIPLE LISTING SERVICE.  THE MARSHALL SWIFT COST HANDBOOK WAS UTILIZED AS A GUIDE TO ESTIMATING REPRODUCTION COST.  THE DATA WAS ANALYZED AND RECONCILED.

**GENERAL COMMENTS:**
SIGNATURE IS COMPUTER GENERATED, HOWEVER ACTUAL SIGNATURE IS ON FILE.  THERE HAS BEEN NO ALTERATIONS.

**ADDITIONAL LIMITING CONDITIONS:**
"NEITHER ALL NOR ANY PART OF THE CONTENTS OF THIS REPORT SHALL BE CONVEYED TO ANY PERSON OR ENTITY, OTHER THAN THE APPRAISER'S OR FIRM'S CLIENT, THROUGH ADVERTISING, SOLICITATION MATERIALS, PUBLIC RELATIONS, NEWS, SALES, OR OTHER MEDIA WITHOUT THE WRITTEN CONSENT AND APPROVAL OF THE AUTHORS, PARTICULARLY AS TO VALUATION CONCLUSIONS, THE IDENTITY OF THE APPRAISERS OR THE FIRM WITH WHICH THE APPRAISER IS CONNECTED, OR ANY REFERENCE TO (AFFILIATION WITH ANY PROFESSIONAL APPRAISAL ORGANIZATION) OR (DESIGNATION).  FURTHER, THE APPRAISER OR FIRM ASSUMES NO OBLIGATION, LIABILITY, OR ACCOUNTABILITY TO ANY THIRD PARTY.  IF THIS REPORT IS PLACED IN THE HANDS OF ANYONE BUT THE CLIENT, CLIENT SHALL MAKE SUCH PARTY AWARE OF ALL THE ASSUMPTIONS AND LIMITING CONDITIONS OF THE ASSIGNMENT".

**INTENDED USER STATEMENT:**
THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT. THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR  PERSONAL USE  , SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

**APPRAISER:**
THE APPRAISER OF THIS REPORT HAS TAKEN 300 HOURS OF HOME INSPECTION CLASS IN 2004. THE STATE OF NEW JERSEY REQUIRES 180 HOURS FOR LICENSURE. ALTHOUGH THE APPRAISER OF THIS REPORT IS NOT LICENSED AS A HOME INSPECTOR, HE HAS PASSED THE NJ STATE EXAM FOR HOME INSPECTION IN 2004. AS WELL AS HAVING PRACTICE HANDS ON EXPERIENCE WITH HOME IMPROVEMENT. WITH THE KNOWLEDGE HE HAS OBTAINED, HE APPLIES IT TO THE INSPECTION OF THE HOME AS IT RELATES TO VALUE. ALTHOUGH HE IS NOT PERFORMING A HOME INSPECTION, HE MAKES NOTE OF ANYTHING THAT HE SEE'S AFFECTING THE VALUE OF THE HOME SIMILAR TO WHAT A TYPICAL HOME INSPECTOR MIGHT FIND WHEN DOING A MORE IN DEPTH INSPECTION OF THE SAME HOME. WITH THIS, IT IS BELIEVED THE VALUE IN THIS REPORT REFLECTS A MORE REALISTIC VIEW OF THE FINAL ESTIMATE OF VALUE FOR THE SUBJECT PROPERTY. ALL ADJUSTMENTS ARE BASED ON THE APPRAISERS KNOWLEDGE OF THE COMPONENTS OF A HOME, OPINION OF CONDITION AND EXPERIENCE IN THE SUBJECT AREA.

# RESTRICTED USE APPRAISAL REPORT

File No.: 200601

## SUBJECT

| | | | | |
|---|---|---|---|---|
| Property Address: 223 Gordons Corner Rd | | City: Marlboro | State: NJ | Zip Code: 07746 |
| County: OCEAN | | Legal Description: BLOCK: 331 | LOT: 61.01 | |
| | | Assessor's Parcel #: | 30-00331-0000-00061-01 | |
| Tax Year: 2020 | R.E. Taxes: $ 20,462 | Special Assessments: $ .00 | Borrower (if applicable): | N/A |

Current Owner of Record: PATEL, HITESHRI & HIMANSHU K.    Occupant: ☒ Owner  ☐ Tenant  ☐ Vacant  ☐ Manufactured Housing

Property Type: ☒ SFR  ☐ 2-4 Family    # of Units: 1    Ownership Restriction: ☒ None  ☐ PUD  ☐ Condo  ☐ Coop

Market Area Name: N/A    Map Reference: 35154    Census Tract: 8097.03    ☐ Flood Hazard

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

## ASSIGNMENT

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date)  ☐ Retrospective  ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach  ☐ Cost Approach  ☐ Income Approach  ☐ Other:

Property Rights Appraised: ☒ Fee Simple  ☐ Leasehold  ☐ Leased Fee  ☐ Other (describe)

Intended Use:  THIS APPRAISAL IS FOR PERSONAL USE AND IS NOT INTENDED FOR USE IN A FINANCIAL LENDING IN ANY OTHER SIT Under USPAP Standards Rule 2-2(c), this is a Restricted Use Appraisal Report, and is intended only for the sole use of the named client. The client must clearly understand that the appraiser's opinions and conclusions may not be understood properly without additional information in the appraiser's work file.

Client:  HITESHRI PATEL/DANIEL E.STRAFFI, JR.,ESQ.    Address:  223 GORDENS CORNER ROAD MARLBORO, NJ 07746

Appraiser:  RODGER WILSON    Address:  HOWELL, NJ 07731

## SALES COMPARISON APPROACH

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 223 Gordons Corner Rd | 280 Deerfield Rd | | 35 Old Mill Rd | | 130 Crine Rd | |
| | Marlboro, NJ 07746 | Morganville, NJ 07751 | | Marlboro, NJ 07746 | | Marlboro, NJ 07746 | |
| Proximity to Subject | | 2.06 miles NE | | 2.56 miles SE | | 2.61 miles NE | |
| Sale Price | $ 0 | | $ 817,000 | | $ 905,000 | | $ 690,000 |
| Sale Price/GLA | $ 0 /sq.ft. | $ 159.70 /sq.ft. | | $ 171.92 /sq.ft. | | $ 237.36 /sq.ft. | |
| Data Source(s) | INSPECTION | FLEXMLS#21931587 | | FLEXMLS#21933277 | | FLEXMLS#21910361 | |
| Verification Source(s) | TAX RECORD | TAX RECORD | | TAX RECORD | | TAX RECORD | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | N/A | CONVENTIONAL | | CONVENTIONAL | | CONVENTIONAL | |
| Concessions | N/A | 0 | | 0 | | 0 | |
| Date of Sale/Time | N/A | 09/27/2019 | | 01/18/2019 | | 07/15/2019 | |
| Rights Appraised | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Location | BUSY ROAD | RESIDENTIAL | -10,000 | RESIDENTIAL | -10,000 | RESIDENTIAL | -10,000 |
| Site | 2.0ac | .50ac | +15,000 | 1.43 | +5,700 | 2.02 | 0 |
| View | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Design (Style) | CONTEMPORARY | COLONIAL | | COLONIAL | | COLONIAL | |
| Quality of Construction | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Age | 32 | 14 | 0 | 19 | 0 | 18 | 0 |
| Condition | INFERIOR | AVERAGE | -70,000 | AVERAGE | -70,000 | AVERAGE | -70,000 |
| Above Grade | Total 11 | Bdrms 5 | Baths 4.2 | Total 14 | Bdrms 5 | Baths 4.1 | +2,500 | Total 14 | Bdrms 5 | Baths 4.1 | +2,500 | Total 10 | Bdrms 4 | Baths 2.1 | |
| Room Count | | | | | | | | |
| Gross Living Area | 6,506 sq.ft. | 5,116 sq.ft. | +48,700 | 5,264 sq.ft. | +43,500 | 2,907 sq.ft. | +126,000 |
| Basement & Finished | FULL BASEMENT | FULL BSMT | | FULL BSMT | | FULL BSMT | |
| Rooms Below Grade | 90% FINISHED | 0% FINISHED | +5,000 | 0% FINISHED | +5,000 | 0% FINISHED | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | HWBB/CAC | FWA/CAC | 0 | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 4 CAR GARAGE | 3 CAR GARAGE | +5,000 | 3 CAR GARAGE | +5,000 | 2 CAR GARAGE | +10,000 |
| Porch/Patio/Deck | PAT/POR/DECK/BAL | PORCH | +12,000 | DECK | +12,000 | PORCH/PATIO | +9,000 |
| FIREPLACE | 2 F/P | 1 F/P | +2,000 | 2 F/P | | 1 F/P | +2,000 |
| IN GROUND POOL | 1 POOL/W SPA | NONE | +15,000 | NONE | +15,000 | NONE | +15,000 |
| BASEMENT F/P & F BATH | 1 F/P FB | NONE | +7,000 | NONE | +7,000 | NONE | +7,000 |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ +  ☐ - $ 32,200 | | ☒ +  ☐ - $ 15,700 | | ☒ +  ☐ - $ 89,000 | |
| Adjusted Sale Price | | Net 3.9 % | | Net 1.7 % | | Net 12.9 % | |
| of Comparables | | Gross 23.5 % $ 849,200 | | Gross 19.4 % $ 920,700 | | Gross 36.1 % $ 779,000 | |

Summary of Sales Comparison Approach  ALL APPROACHES WERE CONSIDERED.  MOST CONSIDERATION GIVEN TO THE SALES COMPARISON APPROACH AS IT BEST REFLECTS THE INTERACTION OF THE INFORMED BUYERS IN TODAY'S MARKET.

GP RESTRICTED

Copyright© 2010 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRTD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    5/2010

# RESTRICTED USE APPRAISAL REPORT

File No.: 200601

## TRANSFER HISTORY

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): TAX RECORD/ FLEXMLS

1st Prior Subject Sale/Transfer
Analysis of sale/transfer history and/or any current agreement of sale/listing: THE SUBJECT HAS NOT BEEN
Date:
Price:                 PURCHASED IN 36 MONTHS , PER MLS/TAX RECORDS.
Source(s):

2nd Prior Subject Sale/Transfer
Date:
Price:
Source(s):

## MARKET

Subject Market Area and Marketability:   THE SUBJECT PROPERTY IS IN A MIXED USE AREA WHICH HAS BEEN FULLY DEVELOPED FOR QUITE SOME TIME.  THE MARKET HAS BEEN STABLE AND PROPERTY VALUES HAVE A BALANCED SUPPLY/DEMAND FACTOR FOR COMPETITIVELY PRICED SINGLE FAMILY DWELLINGS.  THE ESTIMATED EXPOSURE TIME IS APPROXIMATELY 3-6 MONTHS. CONVENTIONAL FINANCING IS READILY AVAILABLE AND MOST PREVALENT IN THIS MARKET.

## SITE

Site Area: 2.0ac    Site View: AVERAGE    Topography: LEVEL AT GRADE    Drainage: AVERAGE

Zoning Classification: R-20    Description: RESIDENTIAL

Zoning Compliance: ☒ Legal   ☐ Legal nonconforming (grandfathered)   ☐ Illegal   ☐ No zoning

Highest & Best Use: ☒ Present use, or ☐ Other use (explain)

Actual Use as of Effective Date:   SINGLE FAMILY HOME    Use as appraised in this report:   SINGLE FAMILY HOME

Opinion of Highest & Best Use:   THE SUBJECT IS BEING USED AS A SINGLE FAMILY HOME AND IS LIKELY THE HIGHEST AND BEST USE FOR THIS ZONED PROPERTY.

FEMA Spec'l Flood Hazard Area  ☐ Yes ☒ No   FEMA Flood Zone  X    FEMA Map # 34025C0135F    FEMA Map Date 9/25/2009

Site Comments:   THERE ARE NORMAL PUBLIC UTILITY EASEMENTS AND SETBACKS. NO ADVERSE CONDITIONS, EASEMENTS OR ENCROACHMENTS WERE NOTED OR OBSERVED AT TIME OF INSPECTION.

## IMPROVEMENTS

Improvements Comments:   THE SUBJECT IS IN OVER ALL AVERAGE CONDITION HOWEVER, POSSIBLE MOLD WAS FOUND IN THE BASEMENT AREA THE BASEMENT WINDOWS NEED REPLACEMENT, DEBRIS NEEDS REMOVAL IN THE FRONT YARD, SOME OF THE WOOD SIDING IS DAMAGED AND THE ENTIRE EXTERIOR NEEDS PAINTING, SOME WINDOWS HAVE BROKEN SEALS AND NEED REPLACEMENT, THREE SKYLIGHTS IN THE LIVING ROOM ARE LEAKING AND THE ROOF MAY BE THE CAUSE, THEE KITCHEN IS OUTDATED AND WOULD NEED RENOVATING TO BRING IT UP TO STANDARD FOR THE AREA.

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $   865,000

Indicated Value by: Cost Approach (if developed) $   0    Indicated Value by Income Approach (if developed) $   0

Final Reconciliation   MARKET/DATA APPROACH REFLECTS DIRECT BUYER/SELLER ACTIVITY AND IN THE OPINION OF THIS BEST INDICATOR OF VALUE.  INCOME APPROACH WAS NOT DEVELOPED,THE SUBJECT IS NOT RENTED THEREFORE INCOME & COST APPROACHES WERE NOT USED.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:   THIS APPRAISAL IS MADE "AS IS" NO CONDITIONS ARE PLACED ON THE APPRAISER, NO CONSIDERATIONS ARE GIVEN FOR PERSONAL PROPERTY.

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $   865,000   , as of:   06/05/2020   , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

## ATTACHMENTS

A true and complete copy of this report contains   19   pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

☒ Scope of Work   ☒ Limiting Cond./Certifications   ☒ Narrative Addendum   ☒ Photograph Addenda   ☒ Sketch Addendum
☒ Map Addenda   ☒ Additional Sales   ☐ Cost Addendum   ☒ Flood Addendum   ☐ Manuf. House Addendum
☐ Hypothetical Conditions   ☐ Extraordinary Assumptions   ☐

Client Contact:   MIDDLEBROOKS&SHAPIRO    Client Name:   HITESHRI PATEL / hiteshri325@gmail.com

E-Mail:   middlebrooks@middlebrooksshapiro.com    Address:   223 GORDENS CORNER ROAD MARLBORO, NJ 07746

## SIGNATURES

APPRAISER                           SUPERVISORY APPRAISER (if required)
                                    or CO-APPRAISER (if applicable)

Appraiser Name:   RODGER WILSON    Supervisory or Co-Appraiser Name:
Company:   PHOENIX APPRAISALS    Company:
Phone:   732-276-6621    Fax:    Phone:    Fax:
E-Mail:   phoenixco@optonline.net    E-Mail:
Date of Report (Signature):   06/17/2020    Date of Report (Signature):
License or Certification #:   42RC00189700    State:   NJ    License or Certification #:    State:
Designation:   CERTIFIED RESIDENTIAL APPRAISER    Designation:
Expiration Date of License or Certification:   12/31/2021    Expiration Date of License or Certification:
Inspection of Subject:  ☒ Interior & Exterior  ☐ Exterior Only  ☐ None    Inspection of Subject:  ☐ Interior & Exterior  ☐ Exterior Only  ☐ None
Date of Inspection:   06/05/2020    Date of Inspection:

**Subject Photo Page**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | | |
| City | Marlboro | County | OCEAN | State | NJ | Zip Code | 07746 |
| Lender/Client | | | | | | | |

**Subject Front**

223 Gordons Corner Rd
Sales Price          0
Date of Sale         N/A
Site Area            2.0ac
Location             BUSY ROAD
FIREPLACE            2 F/P
IN GROUND POOL       1 POOL/W SPA
BASEMENT F/P & F BATH 1 F/P FB



**Subject Rear**



**Subject Street**

RIGHT, (BUSY)



# Photograph Addendum

| | |
|---|---|
| Borrower | N/A |
| Property Address | 223 Gordons Corner Rd |
| City | Marlboro | County | OCEAN | State | NJ | Zip Code | 07746 |
| Lender/Client | |



STREET, LEFT



DRIVEWAY



GARAGES

FRONT LEFT



DEBRIS



REAR RIGHT

# Photograph Addendum

| Borrower | N/A | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | | | |
| City | Marlboro | County | OCEAN | | State | NJ | Zip Code | 07746 |
| Lender/Client | | | | | | | | |



PATIO



POOL



SPA



WATER FEATURE



DECK RIGHT



BALCONY

# Photograph Addendum

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | | |
| City | Marlboro | County | OCEAN | State | NJ | Zip Code | 07746 |
| Lender/Client | | | | | | | |



CENTRAL VACUUM



UTILITIES



DECK LEFT



PUDDLING ON DECK



DAMAGE ON SIDING



POSSIBLE MOLD

# Photograph Addendum

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | | |
| City | Marlboro | County | OCEAN | State | NJ | Zip Code | 07746 |
| Lender/Client | | | | | | | |



FRONT PORCH



DAMAGE ON SIDING



REAR LEFT



DAMAGE ON SIDING



BROKEN WINDOW SEALS

# Photograph Addendum

| | |
|---|---|
| Borrower | N/A |
| Property Address | 223 Gordons Corner Rd |
| City | Marlboro |
| Lender/Client | |

| County | OCEAN | State | NJ | Zip Code | 07746 |
|---|---|---|---|---|---|



SKYLIGHT, LEAKING



SKYLIGHT, LEAKING



SKYLIGHT, LEAKING



FIREPLACE



2 SIDED FIREPLACE, SIDE A



2 SIDED FIREPLACE, SIDE B

**Photograph Addendum**

| | |
|---|---|
| Borrower | N/A |
| Property Address | 223 Gordons Corner Rd |
| City | Marlboro |
| County | OCEAN |
| State | NJ |
| Zip Code | 07746 |
| Lender/Client | |



KITCHEN



BROKEN CABINET DOOR



FAMILY ROOM



HALF BATH



MASTER FULL BATH, RIGHT

MASTER FULL BATH, LEFT

## Photograph Addendum

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | | |
| City | Marlboro | County | OCEAN | State | NJ | Zip Code | 07746 |
| Lender/Client | | | | | | | |



FULL BATH



FULL BATH



FULL BATH SECOND FLOOR,RIGHT



FULL BATH SECOND FLOOR, LEFT



MOISTURE ON BASEMENT WALL



MOISTURE ON BASEMENT WALL, POSSIBLE MOLD

# Photograph Addendum

| Borrower | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | |
| City | Marlboro | County | OCEAN | State | NJ | Zip Code   07746 |
| Lender/Client | | | | | | |



BASEMENT FIREPLACE



CENTRAL VACUUM 1



UTILITIES



BASEMENT WINDOW, LEAKING



FULL BATH, BASEMENT



FINISHED BASEMENT

Form PIC6  LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Photograph Addendum

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | | |
| City | Marlboro | County | OCEAN | State | NJ | Zip Code | 07746 |
| Lender/Client | | | | | | | |



UTILITIES



CENTRAL VACUUM 2



ANIMAL DAMAGE

Comparable Photo Page

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | | |
| City | Marlboro | County | OCEAN | State | NJ | Zip Code | 07746 |
| Lender/Client | | | | | | | |



### Comparable 1

280 Deerfield Rd

| | |
|---|---|
| Prox. to Subject | 2.06 miles NE |
| Sale Price | 817,000 |
| Gross Living Area | 5,116 |
| Total Rooms | 14 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4.1 |
| Location | RESIDENTIAL |
| View | AVERAGE |
| Site | .50ac |
| Quality | STANDARD |
| Age | 14 |



### Comparable 2

35 Old Mill Rd

| | |
|---|---|
| Prox. to Subject | 2.56 miles SE |
| Sale Price | 905,000 |
| Gross Living Area | 5,264 |
| Total Rooms | 14 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4.1 |
| Location | RESIDENTIAL |
| View | AVERAGE |
| Site | 1.43 |
| Quality | STANDARD |
| Age | 19 |



### Comparable 3

130 Crine Rd

| | |
|---|---|
| Prox. to Subject | 2.61 miles NE |
| Sale Price | 690,000 |
| Gross Living Area | 2,907 |
| Total Rooms | 10 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | RESIDENTIAL |
| View | AVERAGE |
| Site | 2.02 |
| Quality | STANDARD |
| Age | 10 |

# INVOICE

**FROM:**

PHOENIX APPRAISALS
Howell, NJ 07731-1806

Telephone Number:  (732) 276-6621          Fax Number:

| INVOICE NUMBER | |
|---|---|
| 200601 | |
| **DATES** | |
| Invoice Date: | 06/05/2020 |
| Due Date: | |

**TO:**

HITESHRI PATEL
223 GORDONS CORNER RD
MARLBORO, NJ 07746

E-Mail:
Telephone Number:          Fax Number:
Alternate Number:

| **REFERENCE** | |
|---|---|
| Internal Order #: | |
| Lender Case #: | |
| Client File #: | |
| FHA/VA Case #: | |
| Main File # on form: | 200601 |
| Other File # on form: | |
| Federal Tax ID: | |
| Employer ID: | |

## DESCRIPTION

| | | | | |
|---|---|---|---|---|
| Lender: | | Client: | HITESHRI PATEL/DANIEL E.STRAFFI, JR.,ESQ. | |
| Purchaser/Borrower: | N/A | | | |
| Property Address: | 223 Gordons Corner Rd | | | |
| City: | Marlboro | | | |
| County: | OCEAN | State: | NJ | Zip:  07746 |
| Legal Description: | BLOCK: 331 | LOT: 61.01 | | |

## FEES                                                                                                    AMOUNT

| | |
|---|---|
| RESTRICTED USE APPRAISAL REPORT | 350.00 |
| **SUBTOTAL** | 350.00 |

## PAYMENTS                                                                                          AMOUNT

| | |
|---|---|
| Check #:        Date:        Description:  CLIENT PAID | 350.00 |
| Check #:        Date:        Description: | |
| Check #:        Date:        Description: | |
| THANK YOU FOR USING PHOENIX APPRAISALS | |
| SUBTOTAL | 350.00 |
| **TOTAL DUE**        $ | 0.00 |

| Borrower | N/A | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | | | |
| City | Marlboro | County | OCEAN | | State | NJ | Zip Code | 07746 |
| Lender/Client | | | | | | | | |



FIRST FLOOR                                     SECOND FLOOR

TOTAL Sketch by a la mode, inc.

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | | |
| City | Marlboro | County | OCEAN | State | NJ | Zip Code | 07746 |
| Lender/Client | | | | | | | |

TOTAL Sketch by a la mode, inc.

**Area Calculations Summary**

| Living Area | | Calculation Details | |
|---|---|---|---|
| First Floor | 4698.2 Sq ft | 6.7 × 8.9 | = 60 |
| | | 0.5 × 11.1 × 3 | = 16.8 |
| | | 0.5 × 1 × 1.8 | = 0.9 |
| | | 0.5 × 1.8 × 1.2 | = 1.1 |
| | | 11.1 × 1.8 | = 19.9 |
| | | 0.5 × 10.7 × 8 | = 43.2 |
| | | 0.5 × 8 × 5.3 | = 21.4 |
| | | 13.3 × 8 | = 106.7 |
| | | 0.5 × 7.6 × 6.3 | = 23.8 |
| | | 0.5 × 6.3 × 4.1 | = 12.9 |
| | | 29.3 × 6.3 | = 183.5 |
| | | 0.5 × 10.6 × 0.5 | = 2.7 |
| | | 0.5 × 10.6 × 7 | = 37.1 |
| | | 10.6 × 65.1 | = 690.6 |
| | | 0.5 × 4.6 × 0.2 | = 0.5 |
| | | 0.5 × 4.6 × 0.3 | = 0.6 |
| | | 4.6 × 71.9 | = 330.8 |
| | | 0.5 × 1.6 × 3.1 | = 2.4 |
| | | 0.5 × 3.1 × 0.2 | = 0.2 |
| | | 70.4 × 3.1 | = 220.5 |
| | | 0.5 × 0.5 × 0.9 | = 0.2 |
| | | 0.5 × 0.5 × 0.9 | = 0.2 |
| | | 70 × 0.9 | = 65.1 |
| | | 0.5 × 1.6 × 3 | = 2.4 |
| | | 0.5 × 2.8 × 3 | = 4.2 |
| | | 67.7 × 3 | = 205.7 |
| | | 0.5 × 1.9 × 3.6 | = 3.5 |
| | | 0.5 × 5.5 × 3.6 | = 10 |
| | | 63.8 × 3.6 | = 231.7 |
| | | 0.5 × (3.3 + 3.6) × 35.3 | = 121.8 |
| | | 0.5 × 3.3 × 0.4 | = 0.7 |
| | | 0.5 × 21.7 × 13.8 | = 149.4 |
| | | 29.7 × 13.8 | = 409.5 |
| | | 0.5 × 15.6 × 2.1 | = 16.6 |
| | | 0.5 × 15.6 × 0.3 | = 1.8 |
| | | 45.3 × 13.5 | = 612.6 |
| | | 0.5 × 10.3 × 0.4 | = 2.3 |
| | | 35.3 × 0.4 | = 15.8 |
| | | 0.5 × 24.1 × 1.3 | = 16.2 |
| | | 11.2 × 8.9 | = 100 |
| | | 0.5 × 25 × 0.9 | = 11.2 |
| | | 11.2 × 0.9 | = 10 |
| | | 0.5 × 3.6 × 0 | = 0.1 |
| | | 36.2 × 3.6 | = 129.4 |
| | | 0.5 × 0.1 × 0 | = 0 |
| | | 0.5 × 0.1 × 4.7 | = 0.3 |
| | | 0.1 × 36.2 | = 4.8 |
| | | 0.5 × 12.4 × 0.1 | = 0.9 |
| | | 0.5 × 12.4 × 0.2 | = 1.5 |
| | | 12.4 × 40.7 | = 504.3 |
| | | 0.5 × 4.9 × 0.9 | = 2.2 |
| | | 0.5 × 0.9 × 0 | = 0 |
| | | 36 × 0.9 | = 32.2 |
| | | 0.5 × 5.8 × 0.1 | = 0.2 |
| | | 0.5 × 5.8 × 0.4 | = 1.3 |
| | | 5.8 × 36 | = 209 |
| | | 0.5 × 36.4 × 2 | = 36 |
| | | 0.5 × 6.2 × 3 | = 9.3 |
| Second Floor | 1807.5 Sq ft | 0.5 × 17.5 × 1.3 | = 11.7 |
| | | 0.5 × 0.4 × 8.9 | = 1.7 |
| | | 0.5 × 8.9 × 11.4 | = 51 |
| | | 17.5 × 8.9 | = 156.5 |
| | | 0.5 × 4 × 5.1 | = 10.3 |
| | | 53.9 × 4 | = 216.9 |
| | | 0.5 × 11.1 × 14.8 | = 81.7 |
| | | 48 × 14.8 | = 707.8 |
| | | 0.5 × 12.1 × 0.4 | = 2.7 |
| | | 4 × 0.4 | = 1.8 |
| | | 0.5 × 9.8 × 0.4 | = 2.2 |
| | | 4 × 9.8 | = 39.6 |
| | | 0.5 × 1 × 1.3 | = 0.7 |
| | | 30.9 × 1.3 | = 41.4 |
| | | 0.5 × 1.8 × 3.1 | = 2.8 |
| | | 30.9 × 1.8 | = 55.2 |
| | | 0.5 × 3.8 × 5.8 | = 10.9 |
| | | 30.2 × 5.8 | = 175.8 |
| | | 0.5 × 30.2 × 15.7 | = 236.6 |
| **Total Living Area (Rounded):** | **6506 Sq ft** | | |
| **Non-living Area** | | | |
| 2 Car Attached | 400 Sq ft | 20 × 20 | = 400 |

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | | |
| City | Marlboro | County | OCEAN | | State | NJ | Zip Code | 07746 |
| Lender/Client | | | | | | | |

TOTAL Sketch by a la mode, inc.

**Area Calculations Summary**

| Non-living Area | | |
|---|---|---|
| 2 Car Attached | 400 Sq ft | 20 × 20 = 400 |

Location Map

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 223 Gordons Corner Rd | | | | | | |
| City | Marlboro | County | OCEAN | State | NJ | Zip Code | 07746 |
| Lender/Client | | | | | | | |



# Exhibit

## "C"

FROM:

DS Murphy Valuations, LLC

D S Murphy Valuations, LLC

5400 Laurel Springs Pkwy

Suwanee, GA 30024

Telephone Number:  (678)584-5900        Fax Number:  (678)584-5334

# INVOICE

| INVOICE NUMBER |
| --- |
| 20050263V |
| DATE |
| 05/28/2020 |

| REFERENCE | |
| --- | --- |
| Internal Order #: | 20050263V |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | 20050263V |
| Other File # on form: | |
| Federal Tax ID: | |
| Employer ID: | |

TO:

Himanshu & Hiteshri Patel

,

| Telephone Number: | | Fax Number: |
| --- | --- | --- |
| Alternate Number: | | E-Mail: |

## DESCRIPTION

| | | | | |
| --- | --- | --- | --- | --- |
| Lender: | N/A | | Client: | Himanshu & Hiteshri Patel |
| Purchaser/Borrower: | Patel, Himanshu & Hiteshri | | | |
| Property Address: | 714 S Halliday St | | | |
| City: | Anaheim | | | |
| County: | Orange | | State: | CA | Zip: | 92804 |
| Legal Description: | N-Tract: 15703 Block : Lot: 62 | | | |

| FEES | AMOUNT |
| --- | --- |
| General Purpose/Consult | 425.00 |
| | |
| **SUBTOTAL** | 425.00 |

| PAYMENTS | | | | AMOUNT |
| --- | --- | --- | --- | --- |
| Check #: | Date: 6/2/2020 | Description: | Paid by credit card. | 425.00 |
| Check #: | Date: | Description: | | |
| Check #: | Date: | Description: | | |
| | | | **SUBTOTAL** | 425.00 |
| | | | **TOTAL DUE** $ | 0 |

---

Please Return This Portion With Your Payment

FROM:

Himanshu & Hiteshri Patel

,

| Telephone Number: | | Fax Number: |
| --- | --- | --- |
| Alternate Number: | | E-Mail: |

| AMOUNT DUE: | $ | 0 |
| --- | --- | --- |
| AMOUNT ENCLOSED: | $ | |

| INVOICE NUMBER |
| --- |
| 20050263V |
| DATE |
| 05/28/2020 |

| REFERENCE | |
| --- | --- |
| Internal Order #: | 20050263V |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | 20050263V |
| Other File # on form: | |
| Federal Tax ID: | |
| Employer ID: | |

TO:

DS Murphy Valuations, LLC

D S Murphy Valuations, LLC

5400 Laurel Springs Pkwy

Suwanee, GA 30024

## SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| | Subject Address | 714 S Halliday St |
| | Legal Description | N-Tract: 15703 Block : Lot: 62 |
| | City | Anaheim |
| | County | Orange |
| | State | CA |
| | Zip Code | 92804 |
| | Census Tract | 869.02 |
| | Map Reference | 1124 |

| PRICE & DATE | | |
|---|---|---|
| | Contract Price | $ N/A |
| | Date of Contract | |

| PARTIES | | |
|---|---|---|
| | Borrower/Client | Patel, Himanshu & Hiteshri |
| | Lender | N/A |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| | Size (Square Feet) | 2,591 |
| | Price per Square Foot | $ |
| | Location | Residential |
| | Age | 21 |
| | Condition | Good |
| | Total Rooms | 8 |
| | Bedrooms | 4 |
| | Baths | 2.1 |

| APPRAISER | | |
|---|---|---|
| | Appraiser | Toby Albers |
| | Effective Date of Appraisal | 05/28/2020 |

| VALUE | | |
|---|---|---|
| | Opinion of Value | $ 735,000 |

# Uniform Residential Appraisal Report

File # 20050263V

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | | | | |
|---|---|---|---|---|
| Property Address 714 S Halliday St | City Anaheim | | State CA | Zip Code 92804 |
| Borrower Patel, Himanshu & Hiteshri | Owner of Public Record Patel, Himanshu & Hiteshri | | County Orange | |

Legal Description N-Tract: 15703 Block : Lot: 62

Assessor's Parcel # 079-961-62    Tax Year 2019    R.E. Taxes $ 8,070

Neighborhood Name Twila Reid Park    Map Reference 1124    Census Tract 869.02

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ 357    ☒ PUD    HOA $ 60    ☐ per year ☒ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Ascertain Market Value

Lender/Client N/A    Address N/A

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). Crmls

## CONTRACT

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ N/A    Date of Contract    Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE | AGE | One-Unit | 70 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | $ (000) | (yrs) | 2-4 Unit | 5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | | 550 Low | 05 | Multi-Family | 15 % |
| Neighborhood Boundaries neighborhood Boundries: Lincoln-North, Brookhurst-East, Ball Road-South, | | | | | | 850 High | 55 | Commercial | 5 % |
| Beach Blvd-West. | | | | | | 750 Pred. | 35 | Other | 5 % |

Neighborhood Description The subject is located in the city of Anaheim in the county of Orange. The area consist of predominantly single family and multi family residences of generally, average to good quality and are in average to good condition. The market remains strong due to job growth and a strong demand for housing.

Market Conditions (including support for the above conclusions) the market conditions are typical in comparison to the surrounding communities in the market area. Marketing time for properties similar to the subject is approximately 0-3 months. The additional 5% land use is for parks and open space.

## SITE

| | | |
|---|---|---|
| Dimensions 50 X 84 | Area 4,230 sf | Shape Rectangular | View Residential |

Specific Zoning Classification PUD    Zoning Description Planned Urban Development

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe The current residential use is the highest and best.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No    FEMA Flood Zone X    FEMA Map # 06059C0429J    FEMA Map Date 12/09/2009

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

The subject is conforming to the area and is surrounded by similar residential properties.

## IMPROVEMENTS

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | Foundation Walls | Concrete:Avg | Floors | Wood/Crpt:Good |
| # of Stories 2 | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | Stucco:Good | Walls | Drywall:Good |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area 0 sq.ft. | | Roof Surface | Tile:Avg | Trim/Finish | Paint/Wood:Good |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish % | | Gutters & Downspouts | Allum:Avg | Bath Floor | Tile:Good |
| Design (Style) Contemp | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | Vynl:Good | Bath Wainscot | Tile/Fbrm:Good |
| Year Built 1999 | | Evidence of ☐ Infestation | | Storm Sash/Insulated | None/Insulated/Adq | Car Storage ☐ None | |
| Effective Age (Yrs) 20 | | ☐ Dampness ☐ Settlement | | Screens | Screen/Avg | ☐ Driveway # of Cars 2 |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities ☐ Woodstove(s) # 0 | | Driveway Surface Concrete |
| ☐ Drop Stair ☐ Stairs | | ☐ Other Fuel Gas | | ☒ Fireplace(s) # 1 ☒ Fence Lock | | ☒ Garage # of Cars 2 |
| ☒ Floor ☒ Scuttle | | Cooling ☒ Central Air Conditioning | | ☒ Patio/Deck Concre ☒ Porch Concrete | | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool None | | ☐ Att. ☐ Det. ☒ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 8 Rooms 4 Bedrooms 2.1 Bath(s) 2,591 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). None Noted.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). The subjects kitchen has been upgraded with custom cabinetry, center island, stone counter tops, custom back splash and new appliances. The subject offers wood flooring, custom paint and wood shutters. The master bathroom has been remodeled with custom tile, new fixtures and shower enclosure. The subject's upstairs bathroom has been stripped due to a water leak. The cost to cure is $10,000 and applied to the condition section of the grid.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☒ Yes ☐ No If Yes, describe

The subject offers adequate smoke detectors, a co detector and the water heater is double strapped. The upstairs bathroom is under repair.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

The subject conforms to neighborhood standards.

Form 1004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Uniform Residential Appraisal Report   File # 20050263V

| | | There are | 3 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 700,000 to $ 800,000 . |
|---|---|---|---|---|

There are 34 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 675,000 to $ 825,000 .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 714 S Halliday St Anaheim, CA 92804 | 696 S Lassen Ct Anaheim Ca 92804 | | 2773 W Rowland Ct Anaheim, CA 92804-2014 | | 3225 Donovan Ranch Rd Anaheim, CA 92804-3722 | |
| Proximity to Subject | | 0.05 miles NE | | 0.80 miles NE | | 0.45 miles SW | |
| Sale Price | $ N/A | | $ 785,000 | | $ 740,000 | | $ 788,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 301.81 sq.ft. | | $ 284.07 sq.ft. | | $ 312.08 sq.ft. | |
| Data Source(s) | | CRMLS# PW19232129, Dom#24 | | CRMLS#PW19181541, Dom#52 | | CRMLS#OC19046308;DOM 89 | |
| Verification Source(s) | | Doc#486770 | | doc#423450 | | 209277Doc# | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | VA, $17,000 | -17,000 |
| Concessions | | Conv;0 | | Conv;0 | | | |
| Date of Sale/Time | | 11/21/2019 | 0 | 10/28/2019 | 0 | 06/14/2019 | 0 |
| Location | Residential | Residential | | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 4,230 sf | 4349 sf | 0 | 5500 sf | -5,000 | 3469 sf | 0 |
| View | Residential | Residential | +10,000 | Residential | +10,000 | Residential | +10,000 |
| Design (Style) | Contemp | Contemp | | Contemp | | Mdtrn | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 21 | 20 | 0 | 50 | 0 | 8 | 0 |
| Condition | Good | Good | -10,000 | Good | -10,000 | Very Good | -25,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | -10,000 | Total Bdrms. Baths | -10,000 | Total Bdrms. Baths | |
| Room Count | 8   4   2.1 | 9   5   3.0 | -5,000 | 9   5   2.1 | | 8   4   3.0 | -5,000 |
| Gross Living Area | 2,591 sq.ft. | 2,601 sq.ft. | 0 | 2,605 sq.ft. | 0 | 2,525 sq.ft. | 0 |
| Basement & Finished | 0 | 0 | | 0 | | 0 | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | Patio/Porch | Patio/Porch | | Patio/Porch | | Patio/Porch | |
| Fireplace | 1 Fireplace | 1 Fireplace | | 1 Fireplace | | 1 Fireplace | |
| Additional Features | Fenced | Fenced | | Pool/Spa | -25,000 | Fenced | |
| Net Adjustment (Total) | | [ ] + [X] - $ | -15,000 | [ ] + [X] - $ | -40,000 | [ ] + [X] - $ | -37,000 |
| Adjusted Sale Price | | Net Adj. 1.9 % | | Net Adj. 5.4 % | | Net Adj. 4.7 % | |
| of Comparables | | Gross Adj. 4.5 % $ | 770,000 | Gross Adj. 8.1 % $ | 700,000 | Gross Adj. 7.2 % $ | 751,000 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) Realist/Corelogic/Mls
My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) Realist/Corelogic/Mls
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Realist | Realist | Realist | Realist |
| Effective Date of Data Source(s) | 05/28/2020 | 05/28/2020 | 05/28/2020 | 05/28/2020 |

Analysis of prior sale or transfer history of the subject property and comparable sales   The subject property has not sold or transferred in the past 36 months.
The subject has not been listed in the past 12 months.  Comp #2 had a grant deed for a trust recorded 10/28/2019 with doc#423449 for $0.
Comp #6 had a prior sale 1/08/2020 for $530,000 with doc#8429.  The home was in need of repair and was an as-is sale.  The home had zero
days on the market exposure time.  The home was upgraded and placed back on the market for $759,000.

Summary of Sales Comparison Approach   An investigation of the market indicated the comparables utilized to be the most recent, similar and proximate
to the subject property.  Data was collected from a variety of sources including but not limited to, multiple listing systems, tax assessors records,
local real estate brokers and various public records. All sales comparables are considered the best possible similar sales in the neighborhood.
The subject is bracketed by size, sales price and adjusted sales price.

Indicated Value by Sales Comparison Approach $ 735,000

Indicated Value by: Sales Comparison Approach $ 735,000   Cost Approach (if developed) $   Income Approach (if developed) $

The direct sales comparison approach best reflects the actions of buyers/sellers, and is most relied upon. A majority of the homes in this
neighborhood are owner occupied. Income approach and the cost approach offer less data and are deemed less reliable for the purpose of this
appraisal.
This appraisal is made [X] "as is",  [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,  [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  This is an as-is appraisal.  This
appraisal is signed with a digital signature that is protected by software password.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 735,000 , as of 05/28/2020 , which is the date of inspection and the effective date of this appraisal.

Form 1004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 20050263V

**ADDITIONAL COMMENTS**

Additional comments:

This appraisal is not a home inspection report and should not be relied upon to report the condition of the subject property being appraised. The subjects electrical, plumbing, roof and foundation were not inspected and the appraiser offers no opinion of their condition. The appraiser is not an expert in these fields. It is assumed there is no structural defects hidden by the floor or walls or any other hidden or unapparent condition of the property. It is also assumed that all mechanical equipment, appliances, and electrical components are in average to good working order. If the client has any questions regarding these items it is the clients responsibility to order the appropriate inspection. The appraiser does not have the skill or expertise to conduct such inspections and assumes no responsibility for these items.

The subject soil and landscaping was not inspected by the appraiser for potential dangers such as hazardous material of landslide/slippage potential. The appraiser is not an expert in this field and offers no opinion. It is the clients responsibility to order the appropriate inspection for these items.

The appraiser has not previously inspected or evaluated the subject property.

No service in the past 36 months.

The appraisal is not to be used by any party for insurance purposes.

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    The cost approach is not a part of this appraisal report.

**COST APPROACH**

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | ................ =$ |
|---|---|---|---|
| Source of cost data | DWELLING | Sq.Ft. @ $ | ........ =$ |
| Quality rating from cost service          Effective date of cost data | | Sq.Ft. @ $ | ........ =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | ........ =$ |
| | Garage/Carport | Sq.Ft. @ $ | ........ =$ |
| | Total Estimate of Cost-New | | ........ =$ |
| | Less          Physical | Functional | External |
| | Depreciation | | =$( ) |
| | Depreciated Cost of Improvements | | ........................... =$ |
| | "As-is" Value of Site Improvements | | ........................... =$ |
| Estimated Remaining Economic Life (HUD and VA only)          Years | **INDICATED VALUE BY COST APPROACH** | | ........................... = $ |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

**INCOME**

| Estimated Monthly Market Rent $ | X  Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|
| Summary of Income Approach (including support for market rent and GRM) | | | |

## PROJECT INFORMATION FOR PUDs (if applicable)

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)?    ☐ Yes    ☐ No    Unit type(s)    ☒ Detached    ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?    ☐ Yes    ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?    ☐ Yes    ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?    ☐ Yes    ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?    ☐ Yes    ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE:  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:  The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Uniform Residential Appraisal Report

File # 20050263V

APPRAISER'S CERTIFICATION:    The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 20050263V

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Toby Albers | Name |
| Company Name  D.S. Murphy Valuations LLC | Company Name |
| Company Address  22 Maple Dr, Aliso Viejo, CA 92656 | Company Address |
| Telephone Number  (949) 200-7543 | Telephone Number |
| Email Address  talbers@dsmurphy.com | Email Address |
| Date of Signature and Report  06/02/2020 | Date of Signature |
| Effective Date of Appraisal  05/28/2020 | State Certification # |
| State Certification #  AR017323 | or State License # |
| or State License # | State |
| or Other (describe)        State # | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License  05/15/2021 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED

714 S Halliday St

Anaheim, CA 92804

APPRAISED VALUE OF SUBJECT PROPERTY $        735,000

LENDER/CLIENT

| Name | |
| Company Name  N/A | |
| Company Address  N/A | |
| Email Address  None@none | |

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection
☐ Did inspect interior and exterior of subject property
    Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection

Uniform Residential Appraisal Report

File # 20050263V

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 714 S Halliday St Anaheim, CA 92804 | 3145 W Stonybrook Dr Anaheim, CA 92804-3107 | | 722 S Halliday St Anaheim, CA 92804-3129 | | 3140 W Westhaven Dr Anaheim, CA 92804-3111 | |
| Proximity to Subject | | 0.22 miles W | | 0.01 miles S | | 0.24 miles NW | |
| Sale Price | $ N/A | | $ 740,000 | | $ 725,000 | | $ 759,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 360.62 sq.ft. | | $ 294.48 sq.ft. | | $ 339.14 sq.ft. | |
| Data Source(s) | | CRMLS# PW19232129; Dom#39 | | CRMLS#PW20064524;DOM 66 | | CRMLS#DW20093393, Dom#4 | |
| Verification Source(s) | | Doc#145870 | | Realist | | Realist | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | Listing | | Listing | |
| Concessions | | Conv;0 | | | | | |
| Date of Sale/Time | | 03/02/2020 | | Active | -14,500 | Pending | 0 |
| Location | Residential | Residential | | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 4,230 sf | 5000 sf | 0 | 4207 sf | 0 | 5150 sf | -5,000 |
| View | Residential | Residential | +10,000 | Park | | Residential | +10,000 |
| Design (Style) | Contemp | Contemp | | Contemp | | Contemp | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 21 | 48 | 0 | 21 | 0 | 48 | 0 |
| Condition | Good | Good | -10,000 | Average+ | +5,000 | Good | -10,000 |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 8 / 4 / 2.1 | 8 / 4 / 3.0 | -5,000 | 8 / 4 / 2.1 | | 8 / 4 / 3.1 | -10,000 |
| Gross Living Area | 2,591 sq.ft. | 2,052 sq.ft. | +54,000 | 2,462 sq.ft. | +13,000 | 2,238 sq.ft. | +35,500 |
| Basement & Finished | 0 | 0 | | 0 | | 0 | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | Patio/Porch | Deck | -2,500 | Patio/Porch | | Patio/Porch | |
| Fireplace | 1 Fireplace | 1 Fireplace | | 1 Fireplace | | 1 Fireplace | |
| Additional Features | Fenced | Fenced | | Fenced | | Fenced | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 46,500 | ☒ + ☐ - | $ 3,500 | ☒ + ☐ - | $ 20,500 |
| Adjusted Sale Price | | Net Adj. 6.3 % | | Net Adj. 0.5 % | | Net Adj. 2.7 % | |
| of Comparables | | Gross Adj. 11.0 % | $ 786,500 | Gross Adj. 4.5 % | $ 728,500 | Gross Adj. 9.3 % | $ 779,500 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | 01/08/2020 |
| Price of Prior Sale/Transfer | | | | 530,000 |
| Data Source(s) | Realist | Realist | Realist | Doc#8429 |
| Effective Date of Data Source(s) | 05/28/2020 | 05/28/2020 | 05/28/2020 | 05/28/2020 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Market Conditions Addendum to the Appraisal Report

File No. 20050263V

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

Property Address **714 S Halliday St**   City **Anaheim**   State **CA**   ZIP Code **92804**

Borrower **Patel, Himanshu & Hiteshri**

**Instructions:** The appraiser must use the information provided on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

**MARKET RESEARCH & ANALYSIS**

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 20 | 7 | 7 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Absorption Rate (Total Sales/Months) | 3.33 | 2.33 | 2.33 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Total # of Comparable Active Listings | 0 | 1 | 2 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | | 0.4 | 0.9 | ☐ Declining | ☐ Stable | ☒ Increasing |

| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Median Comparable Sale Price | 732,193 | 707,657 | 715,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 50 | 54 | 12 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Comparable List Price | | 775,000 | 694,081 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | | 91 | 29 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | | 91 | 103 | ☐ Increasing | ☒ Stable | ☐ Declining |

Seller-(developer, builder, etc.)paid financial assistance prevalent?   ☐ Yes   ☒ No

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).   Seller concessions have been consistent for the past 12 months. The typical seller is contributing from 0-3% for non reoccurring closing cost.

Are foreclosure sales (REO sales) a factor in the market?   ☐ Yes   ☒ No   If yes, explain (including the trends in listings and sales of foreclosed properties).

The data used in the grid indicated one REO/Short sales or other distressed properties associated with the reported transactions. However, this is not a mandatory reporting field for agents and there may be some distressed sales that were not reported. It is beyond the scope of this assignment to confirm each sale used in the Market Conditions Report.

Cite data sources for above information.   The CRMLS MLS was the data source used to complete the Market Conditions Addendum.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.

Based on current median prices for properties in the subjects market area, values appear to be stable over the past 12 months.  A date of sale adjustment is not warranted

Search perimeters consist of single family residences, between 2000 and 3000 sq ft,  from the subjects zip code.

**CONDO/CO-OP PROJECTS**

If the subject is a unit in a condominium or cooperative project , complete the following:   Project Name:

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?   ☐ Yes   ☐ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

**APPRAISER**

Signature

Appraiser Name **Toby Albers**

Company Name **D.S. Murphy Valuations LLC**

Company Address **22 Maple Dr, Aliso Viejo, CA 92656**

State License/Certification # **AR017323**   State **CA**

Email Address **talbers@dsmurphy.com**

Signature

Supervisory Appraiser Name

Company Name

Company Address

State License/Certification #   State

Email Address

Freddie Mac Form 71   March 2009   Page 1 of 1   Fannie Mae Form 1004MC   March 2009

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Supplemental Addendum

File No. 20050263V

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | | | |
| City | Anaheim | County | Orange | | State | CA | Zip Code | 92804 |
| Lender | N/A | | | | | | |

Purpose and function:  The purpose of the appraisal is to estimate the market value of the subject property as defined hear in.  The function of the appraisal is to assist an institutional lender in evaluating the subject property as security for lending purposes in a mortgage transaction.

Definition Of Market Value:
The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale a of specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market: (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable there to; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.
The Dictionary of Real Estate Appraisal: *Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those cost which are normally paid by sellers as a result of tradition or law in a market area; these cost are readily identifiable since the seller pays these cost in virtually all sales transactions.  Special or creative financing adjustments can be made to the comparables property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market reaction to the financing or concessions based on the appraisers judgment.

Personal Property:
Personal property is identifiable, portable, and tangible objects which are considered by the general public as being personal (i.e. all property that is not classified as real estate).  Any personal property involved in the transaction has been excluded from the valuation of the real property.  Fixtures or intangible items are not included n the appraisal or estimate of market value; therefore, these items do not affect the market value of the real property.

Approaches To Value:
Three approaches to value that are typically considered in the appraisal of real property are the Cost, Sales Comparison and Income Approach.

The Cost Approach is generally viable for single family residential valuation when properly used, and lends secondary support in the appraisal process.  A major contribution of the Cost Approach is a supported land value for the subject and comparables sites.  This value can also be established by market analysis, extraction or allocation by abstraction, for estimating the subject and comparables site values.  An estimate of site value has been provided within the cost section of the repost.
The replacement cost new of the improvements and depreciated using one or more of the following sources: Marshall & Swift Residential Cost Handbook, local contractors bids, depreciation tables, age to life depreciation techniques or modifications there of, and/or market extracted depreciation rates.  The cost approach is NOT included in this valuation.

### REPORT TYPE
This real property appraisal report has been prepared under the Uniform Standards of Professional Appraisal Practice option entitled "Appraisal Report".

### SCOPE OF WORK

Subject Property Identification:
The appraiser has viewed all readily accessible areas of the dwelling (and any other building structure located on the property).  This complete visual inspection is not intended to be the same depth or for the same purpose as a home inspection.  The appraiser has viewed the property solely for valuation purposes and to observe property characteristics that a typical purchaser would consider in their decision making process, as well as those items outlined in the assumptions and limited conditions and certification to this appraisal.  Personal property was not included in the appraised value.

Sources of Information:
The appraisal is based on the information gathered from public records; viewing of the subject property, neighborhood and comparable properties; and other sources specifically identified in this report.  When conflicting information has been discovered, the sources deemed most reliable have been used.

 The appraiser attempted to obtain an adequate amount of information in the normal course of business regarding the subject and comparable properties.  Some of the standardized responses, especially those in which the appraiser has not had the opportunity to verify personally or measure, could mistakenly imply greater precision and reliability in the data than is factually correct or typical in the normal course of business.  Examples include condition and quality ratings as well as comparable sales and listing data.  Not every element of the subject property was viewable and comparable property data was generally obtained from third-party sources.  Consequently, this information should be considered an "estimate" unless otherwise noted by the appraiser.

Additional Appraiser Certification
I have performed NO services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

### INTENDED USERS and INTENDED USE
The Intended User of this appraisal report is the Client.  The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value.  No additional Intended Users are identified by the appraiser.

### SUBJECT SECTION

Special Assessments
-The subject has a Special Assessment of $357.16.  This is a yearly assessment that covers: Ocsd Sewer Use Fee, Mwd Water Stdby Chg, Mosquito/Fire And Assent, and a Vector Control Charge. This information is found in the subjects property tax bill.

## Supplemental Addendum

File No. 20050263V

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | | |
| City | Anaheim | County | Orange | State | CA | Zip Code | 92804 |
| Lender | N/A | | | | | |

Legal Description
-The legal description as shown on pg. 1 of the report is the complete description as found in Realist.

Occupancy/Utilities
-At the time of inspection the subject property was occupied and all utilities were on and functioning.

Subject Address
-Please note that the subject address utilized in this report is acceptable per the USPS.  The formatting of the subject address
complies with UAD specifications.

**NEIGHBORHOOD - MARKET CONDITIONS**
Based on current median prices for properties in the subjects market area, values appear to be increasing over the past 12
months.  Sales prices are not back to the high water mark of 2006-2007.    Additional information found on the 1004MC form..

Predominant Price
-The subject's estimated market value is NOT noted to vary by a difference of 20% or more from that of the neighborhood
predominant price. The subject is not felt to be an over Improvement for the market.

**EXPOSURE TIME**
- A reasonable exposure time for the subject property at the opinion of value indicated is estimated to be the same as the
marketing time reported in the neighborhood section on page one of this report.

**SITE SECTION**

Site Dimensions
-The subject's actual dimensions are available in the normal course of business. A plat map has been included as supplement
in this report.

Site / Accessibility
-The Subject property is accessible year round in all types of weather conditions.
The street is public and maintained by the city.

Private Well/Septic
The subject does NOT has a private well or septic system. The subject is on the public sewer and water system.  This is typical
for the area. The subject does have access to public utilities.

**ZONING COMPLIANCE**

Legal Conforming
The subject property is located within a zoning for which it is considered legal. If the subject were to be destroyed, it could be
rebuilt.

**HIGHEST AND BEST USE**
The appraiser has concluded the highest and best use of the property, as improved, to be its current use. This opinion is
supported by the fact that the improved property is physically possible (see improvements description and pictures), is a
legal use (see site section/zoning), is financially feasible (see sales comparison approach for sales of similar properties) and
is considered to be the maximally productive use (improvements contribute positively to the site and it would not be feasible
to change them to a more productive use without substantial capital improvement).

**IMPROVEMENTS - ADDITIONAL FEATURES**

Gross Living Area (GLA)
-The subject's GLA per tax records is 2,600  square feet, the appraiser measured the subject at 2,591 square feet with a 3%.

**PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS**
The subject did not appear to have any physical deficiencies or adverse conditions.  The water heater is double strapped.  The
subject offers adequate smoke detectors and a CO detector.

**SUMMARY OF SALES COMPARISON APPROACH**

Comparable Search Parameters
-In my research for comparables, I used the following parameters 12 months from the appraisal date, with a distance of one mile
of similar single family residences within 25% of the subject gross living area.  The appraiser located 4 similar closed sales, an
active listing and a pending sales.

Industry Guidelines
-Industry guidelines suggest comparable sales be within six months, one mile, and have gross adjustments less than 25%, net
adjustments less than 15%, and individual adjustments not exceeding 10%. In this appraisal, these guidelines were  NOT met,
the appraiser went back twelve months to find similar sales comparables.

Comparable Selection / Distance
-The appraiser through research found it NOT necessary to utilize comparables which are outside of the subject's market area.

Bracket Actual Sales Prices
-The appraiser was able to bracket the final opinion of value with the actual sales prices of the comparable sales.

Quality Adjustments
-Quality adjustments were NOT applied.

Bedroom Adjustments
-It is noted that one of the comparables differ from the subject property in bedroom count.
Differences in bedroom count adjusted at $10,000.

**Supplemental Addendum**

File No. 20050263V

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | | | |
| City | Anaheim | County | Orange | | State | CA | Zip Code | 92804 |
| Lender | N/A | | | | | | |

Basement Adjustments
The subject and the provided comparables do not have basements.

GLA Adjustments
-Adjustments for GLA were made at $100.00 per square foot and were rounded to the nearest $1000.  Adjustments were not made for differences of less than 100 square feet.

Comparable Selection / Date of Sale / 3 Closed Sales Within 6 Months
-The appraiser was able to include 1 closed sales within 90 days.

Sales Price to list Price Adjustments / Actives & Pending
-Active Listings have been adjusted 2% for negotiation and possible closing cost to reflect the typical sales price to list price ratio for the subject's market.  The sales to listing price averages 97% of the asking price.

Days on Market Subject and Comparables
-The marketing time noted on page 1 of this report is an average.  Some sales will sell in less than average time, while some will take longer.  Each sale was researched and while exposed for less time than average for the market was found to meet the definition of Market Value as evidenced by having sales prices similar to those comparables utilized with marketing times within the range on page 1.

Comparable Selection / Design (Style)
-It was necessary to utilize comparables which differ in design from the subject.

**RECONCILIATION AND FINAL VALUE CONCLUSION**

The sales range prior to adjustment is $725,000 to $788,000, within 15% range, and the adjusted value range is $700,000 to $786,500, within 15% range.

Comp #1 is a similar sized home one block from the subject.  This five bedroom home is in similar condition with similar upgrades, but a function bathroom.  This requires a $10,000 adjustment for homes that other wise are in similar condition.
Comp #2 is a similar sized home eight blocks from the subject.  This five bedroom home is in similar condition, but with fully functioning bathrooms.
Comp #3 is a similar sized home four blocks from the subject.  this similar four bedroom home s in similar condition with similar upgrades.  This is a recent sale requiring a $17,000 concessions adjustment.
Comp #4 is a smaller home two blocks from the subject.  This similar four bedroom home is in similar condition with a similar lot size.
Comp #5 is an active listing next door to the subject.  This similar four bedroom home does not offer the upgrades found in the subject, but brackets the subjects location and v view.
Comp #6 is a pending sale two blocks from the subject. this similar four bedroom home is in similar condition, less the bathroom repairs.

-While all comparables share many meaningful attributes with the subject property and support the appraised value, Comparables, 1-2 & listing 5 were given the most weight in the value conclusion, as similar home from the subject neighborhood..

**APPROACH(ES) TO VALUE**

Cost & Income Approaches NOT COMPLETED
The appraiser has determined that the sales comparison approach is the most relevant analysis in this assignment and that there is sufficient information to develop a credible opinion of value by this approach alone. Development of the cost and income approaches was not part of the scope of work for this assignment, nor were they necessary to develop a credible opinion of value.

**EXTRA COMMENTS:**
**As noted on page #1 of the 1004, the subjects upstairs bathroom has been removed down to the studs due to a water leak.  See interior photos.  The fixtures, electrical and plumbing were not intact at the time of the inspection.  An adjustment of $10,000 applies to home that are otherwise in similar condition.  If the home offers a different condition rating than the subjects C3 condition, a $10,000 contribution is included in this adjustment.**
**The cost to cure for the bathroom, is not included as a separate line item adjustment.**

## General Purpose Appraisal Report Forms (GPAR)

The appraiser has been engaged to form an opinion of value. If subsequent developments or disagreements should arise, users of this appraisal agree that the appraiser may not be held liable for damages in excess of the amount he/she was paid for doing the appraisal.

Acceptance of, and/or use of, this appraisal report constitutes acceptance of the above conditions.

Subject Aerial Photo
-An aerial photo of the subject has been provided in this report.

-There IS NOT any non-residential land usage or potential external influences near the subject property.

AIR Compliance Statement

**Supplemental Addendum**                                                    File No. 20050263V

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | |
|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | |
| City | Anaheim | County | Orange | State CA | Zip Code 92804 |
| Lender | N/A | | | | |

-No employee, director, officer, or agent of the lender, or any other third party acting as joint venture partner, independent contractor, appraisal management company, or partner on behalf of the lender, shall influence or attempt to influence the development, reporting, result, or review of an appraisal through coercion, extortion, collusion, compensation, instruction, inducement, intimidation, bribery, or in any other manner...

I have not been contacted by anyone other than the intended user (lender/client as identified on the first page of the report), borrower, or designated contact to make an appointment to enter the property. I agree to immediately report any unauthorized contacts either personally by phone or electronically to the client.

### Appraiser Independence Compliance Certification

Certifies that the appraisal for the above subject property is assigned
to the most qualified appraiser, regarding the appraisers experience in the market area and the facts in the appraisal report are accurate and true. The lender is unaware of the appraiser's identity until the final copy of the report is delivered to the lender. The appraisal report is completed and delivered in compliance to the Dodd-Frank Financial reform/Appraiser Independence law and total appraiser independence.
The lender named on the report, submitted the appraisal request through our secure appraisal management platform; the request does not contain, provide or communicate a loan amount, target value, estimated value, pre-qualification value or desired value to the appraiser. If the transaction is a purchase.  Regarding a purchase; the purchase contract is provided to the appraiser for review which contains the purchase price and any concessions.
The appraiser has total independence of obtaining an estimated opinion of value.
communicates with the lender/client regarding the appraisal report and any material questions about the appraisal report. The appraiser does not communicate with the client/lender nor is the appraiser provided by the lender or management company the identity of the loan officer, processor, loan production staff or any persons that have interest in the closing of the subject loan.

FHA appraisals will be assigned in compliance with the requirements of the U.S. Department of Housing and Urban Development's HUD Mortgage letter 2009-28.
The secure system prevents knowledge of and communication with the appraiser and documents all lenders' communications to promote compliance and appraiser independence.
certifies that a compliance review is made on the above subject appraisal report and a review by the management company verifies that the policies and procedure for compliance to the appraiser's independence were followed.

Appraisal Management Company (AMC) further represents and warrants that the employees of the AMC tasked with selecting appraisers for employment with the AMC are appropriately trained and qualified regarding the appraiser's independence.

This appraisal report is prepared and completed in compliance with USPAP standards and FNMA/FHLMC guidelines.

COVID-19: As of the effective date, the short and long term impact on the market from the COVID-19 virus is unknown; however, it is reasonable to assume that current restrictions in market activity due to the virus will extend marketing times at least 60 days beyond the current levels. This assumption has been taken into consideration with regards to the estimated of reasonable exposure time. At this time, the appraiser assumes that the delay in market activity, but no a significant long-term shift in demand or supply which would result in a change in market prices. These are considered to be extra-ordinary assumptions which, if proven false should impact the opinions and conclusions expressed herein

RealQuest.com ® - Report

### Owner Information

| | |
|---|---|
| Owner Name: | PATEL HIMANSHU/PATEL HITESHRI |
| Mailing Address: | 223 GORDONS CORNER RD, MARLBORO NJ 07746-1257 C001 |
| Vesting Codes: | / / |

### Location Information

| | | | |
|---|---|---|---|
| Legal Description: | N-TRACT: 16703 BLOCK: LOT: 62 | | |
| County: | ORANGE, CA | APN: | 079-961-62 |
| Census Tract / Block: | 869.02 / 3 | Alternate APN: | |
| Township-Range-Sect: | | Subdivision: | |
| Legal Book/Page: | | Map Reference: | / |
| Legal Lot: | 62 | Tract #: | 16703 |
| Legal Block: | | School District: | ANAHEIM UN |
| Market Area: | 79 | School District Name: | ANAHEIM UN |
| Neighbor Code: | | Munic/Township: | |

### Owner Transfer Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | / | Deed Type: | |
| Sale Price: | | 1st Mtg Document #: | |
| Document #: | | | |

### Last Market Sale Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | 09/03/2015 / 07/31/2015 | 1st Mtg Amount/Type: | $480,000 / CONV |
| Sale Price: | $644,000 | 1st Mtg Int. Rate/Type: | / |
| Sale Type: | FULL | 1st Mtg Document #: | 458460 |
| Document #: | 458459 | 2nd Mtg Amount/Type: | / |
| Deed Type: | GRANT DEED | 2nd Mtg Int. Rate/Type: | / |
| Transfer Document #: | | Price Per SqFt: | $247.69 |
| New Construction: | | Multi/Split Sale: | |
| Title Company: | CHICAGO TITLE CO | | |
| Lender: | QUICKEN LNS INC | | |
| Seller Name: | CHRISTENSEN CHAD D & JESSICA A | | |

### Prior Sale Information

| | | | |
|---|---|---|---|
| Prior Rec/Sale Date: | 08/22/2012 / 07/11/2012 | Prior Lender: | GREENPATH FNDG LLC |
| Prior Sale Price: | $507,500 | Prior 1st Mtg Amt/Type: | $402,777 / FHA |
| Prior Doc Number: | 484705 | Prior 1st Mtg Rate/Type: | / |
| Prior Deed Type: | GRANT DEED | | |

### Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Gross Area: | 2,600 | Parking Type: | GARAGE | Construction: | |
| Living Area: | 2,600 | Garage Area: | 522 | Heat Type: | |
| Tot Adj Area: | | Garage Capacity: | | Exterior wall: | |
| Above Grade: | | Parking Spaces: | | Porch Type: | |
| Total Rooms: | | Basement Area: | | Patio Type: | |
| Bedrooms: | 4 | Finish Bsmnt Area: | | Pool: | |
| Bath(F/H): | 2 / 1 | Basement Type: | | Air Cond: | |
| Year Built / Eff: | / 1999 | Roof Type: | | Style: | |
| Fireplace: | / | Foundation: | | Quality: | |
| # of Stories: | | Roof Material: | | Condition: | |
| Other Improvements: | Building Permit | | | | |

### Site Information

| | | | | | |
|---|---|---|---|---|---|
| Zoning: | | Acres: | 0.10 | County Use: | SINGLE FAM RESIDENCE (1) |
| Lot Area: | 4,207 | Lot Width/Depth: | x | State Use: | |
| Land Use: | SFR | Res/Comm Units: | / | Water Type: | |
| Site Influence: | | | | Sewer Type: | |

### Tax Information

| | | | | | |
|---|---|---|---|---|---|
| Total Value: | $683,417 | Assessed Year: | 2019 | Property Tax: | $8,070.12 |
| Land Value: | $382,105 | Improved %: | 44% | Tax Area: | 01232 |
| Improvement Value: | $301,312 | Tax Year: | 2019 | Tax Exemption: | |
| Total Taxable Value: | $683,417 | | | | |

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE



**Subject Photo Page**

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | | | |
| City | Anaheim | County | Orange | State | CA | Zip Code | 92804 |
| Lender | N/A | | | | | | |



**Subject Front**

714 S Halliday St

| | |
|---|---|
| Sales Price | N/A |
| G.L.A. | 2,591 |
| Tot. Rooms | 8 |
| Tot. Bedrms. | 4 |
| Tot. Bathrms. | 2.1 |
| Location | Residential |
| View | Residential |
| Site | 4,230 sf |
| Quality | Average |
| Age | 21 |



**Subject Rear**



**Subject Street**

**Interior Photos**

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | | |
| City | Anaheim | County | Orange | State | CA | Zip Code 92804 |
| Lender | N/A | | | | | |



**Subject Kitchen**



**Subject Bedroom**



**Subject Bedroom**



**Subject Bedroom**



**Subject Bedroom**



**Subject Interior**

**Interior Photos**

| | |
|---|---|
| Borrower/Client | Patel, Himanshu & Hiteshri |
| Property Address | 714 S Halliday St |
| City | Anaheim | County | Orange | State | CA | Zip Code | 92804 |
| Lender | N/A |



**Subject Bathroom**



**Subject Half Bath**



**Subject Bathroom**



**Subject Smoke & CO Detector**



**Subject Water Heater**



**Subject Street Alt**

**Photograph Addendum**

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | | |
| City | Anaheim | County | Orange | State | CA | Zip Code 92804 |
| Lender | N/A | | | | | |




**Subjects Rear Yard**                    **Subject North Side**




**Subject South Side**                    **Subject Laundry Room**




**Subject View**                    **Subject View**

Comparable Photo Page

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | | |
| City | Anaheim | County | Orange | State | CA | Zip Code | 92804 |
| Lender | N/A | | | | | |



**Comparable 1**

696 S Lassen Ct

| | |
|---|---|
| Prox. to Subject | 0.05 miles NE |
| Sale Price | 785,000 |
| Gross Living Area | 2,601 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 3.0 |
| Location | Residential |
| View | Residential |
| Site | 4349 sf |
| Quality | Average |
| Age | 20 |



**Comparable 2**

2773 W Rowland Cir

| | |
|---|---|
| Prox. to Subject | 0.80 miles NE |
| Sale Price | 740,000 |
| Gross Living Area | 2,605 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Residential |
| Site | 5500 sf |
| Quality | Average |
| Age | 50 |



**Comparable 3**

3225 Donovan Ranch Rd

| | |
|---|---|
| Prox. to Subject | 0.45 miles SW |
| Sale Price | 788,000 |
| Gross Living Area | 2,525 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | Residential |
| View | Residential |
| Site | 3469 sf |
| Quality | Average |
| Age | 8 |

Comparable Photo Page

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | | | |
| City | Anaheim | County | Orange | State | CA | Zip Code | 92804 |
| Lender | N/A | | | | | | |



### Comparable 4

3145 W Stonybrook Dr
| | |
|---|---|
| Prox. to Subject | 0.22 miles W |
| Sale Price | 740,000 |
| Gross Living Area | 2,052 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | Residential |
| View | Residential |
| Site | 5000 sf |
| Quality | Average |
| Age | 48 |



### Comparable 5

722 S Halliday St
| | |
|---|---|
| Prox. to Subject | 0.01 miles S |
| Sale Price | 725,000 |
| Gross Living Area | 2,462 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Park |
| Site | 4207 sf |
| Quality | Average |
| Age | 21 |



### Comparable 6

3140 W Westhaven Dr
| | |
|---|---|
| Prox. to Subject | 0.24 miles NW |
| Sale Price | 759,000 |
| Gross Living Area | 2,238 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.1 |
| Location | Residential |
| View | Residential |
| Site | 5150 sf |
| Quality | Average |
| Age | 48 |



| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | | |
| Property Address | 714 S Halliday St | | | | | | |
| City | Anaheim | County | Orange | State | CA | Zip Code | 92804 |
| Lender | N/A | | | | | | |

**Area Calculations Summary**

| Living Area | | Calculation Details | |
|---|---|---|---|
| First Floor | 1110.5 Sq ft | 15 × 13.5 | = 202.5 |
| | | 26.5 × 20 | = 530 |
| | | 16 × 20.5 | = 328 |
| | | 4 × 12.5 | = 50 |
| **Total Living Area (Rounded):** | **1111 Sq ft** | | |
| Non-living Area | | | |
| 2 Car Attached | 557.9 Sq ft | 24 × 20.5 | = 492 |
| | | 13.5 × 5 | = 67.5 |
| | | Negative Arc | = 1.6 |

TOTAL Sketch by a la mode, inc.

Form SKT.BLDSKI - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | | | |
| City | Anaheim | County | Orange | State | CA | Zip Code | 92804 |
| Lender | N/A | | | | | | |



TOTAL Sketch by a la mode, inc.

**Area Calculations Summary**

| Living Area | | Calculation Details | |
|---|---|---|---|
| Second Floor | 1480 Sq ft | 15 × 12 = 180 | |
| | | 38 × 30 = 1140 | |
| | | 10 × 16 = 160 | |
| **Total Living Area (Rounded):** | **1480 Sq ft** | | |

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | | | |
| City | Anaheim | County | Orange | State | CA | Zip Code | 92804 |
| Lender | N/A | | | | | | |



Location Map

Location Map

| Borrower/Client | Patel, Himanshu & Hiteshri | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 714 S Halliday St | | | | | |
| City | Anaheim | County | Orange | State | CA | Zip Code | 92804 |
| Lender | N/A | | | | | |



