**MIDDLEBROOKS SHAPIRO, P.C.**

841 Mountain Avenue, First Floor
Springfield, New Jersey 07081
(973) 218-6877
Melinda D. Middlebrooks, Esq.
*middlebrooks@middlebrooksshapiro.com*
Attorneys for Chapter 11 Debtor and
Debtor-in-Possession, Hiteshri Patel

| | |
|---|---|
| In re:<br><br>**HITESHRI PATEL**,<br><br>        Chapter 11 Debtor and<br>        Debtor-in-Possession. | UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>Chapter 11<br><br>Honorable Kathryn C. Ferguson<br><br>Case No. 20-17880-KCF<br><br>Hearing Date:  August 17, 2021 at 10:00 a.m. |

---

**AMENDED CERTIFICATION OF MELINDA D. MIDDLEBROOKS, ESQ. IN
SUPPORT OF MOTION FOR ORDER APPROVING SETTLEMENT PURSUANT TO
FED. R. BANKR. P. 9019(a) AND D.N.J. LBR 9019-3; AND FOR RELATED RELIEF**

---

**MELINDA D. MIDDLEBROOKS, ESQ.** of legal age, hereby certifies as follows:

1.    I am a Partner with the law firm of Middlebrooks Shapiro, P.C., counsel to the

above-captioned Chapter 11 Debtor and Debtor-in-Possession, Hiteshri Patel (the "Debtor").

2.    Based upon the foregoing, I am fully familiar with the facts set forth herein.

3.    I make this Amended Certification in Further Support of Debtor's Motion for Order

for Approving Settlement pursuant to Fed. R. Bankr. P. 9019(a) and D.N.J. LBR 9019-3; and for

Related Relief (the "Motion").

4.    I incorporate the representations made in my prior Certification [Docket No. 221-

2] filed on July 26, 2021 in support of the Motion as if set forth herein at length.  The reason for

the amendment to my prior Certification is to attach the final and fully executed Settlement

Agreement by and between the Debtor and NFS Leasing, Inc.

     5.     A true and correct copy of the final and fully executed Settlement Agreement and

Release (the "Proposed Settlement") by and between the Debtor and NFS Leasing, Inc. is annexed

hereto as <u>Exhibit A</u>.

     I hereby certify that the statements contained herein are true and correct to the best of my

knowledge, information and belief. If such statements made by me are willfully false, I understand

that I am subject to punishment.

          /s/  Melinda Middlebrooks
          Melinda D. Middlebrooks, Esq.

Dated:  August 16, 2021

# Exhibit

## "A"

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (this "Agreement") is made as of the 27th day of July, 2021, by and between **NFS LEASING, INC.,** a Massachusetts corporation ("NFS"), **HITESHRI PATEL** (the "Debtor"), an individual.  Each of the foregoing parties are sometimes referred to herein as a "Party" and together as the "Parties."

### – RECITALS –

WHEREAS, on or about July 30, 2018 Garden State Diagnostic Imaging, LLC, a New Jersey limited liability company ("GSDI") as lessee, and NFS as lessor, entered into that certain Master Equipment Lease Number 2018-259 (the "Master Lease"), pursuant to which GSDI agreed to the terms pursuant to which it would lease certain equipment described in the following schedules to the Master Lease: Schedule 1, Schedule 2, Schedule 3 and Schedule 4 (collectively with the Master Lease, the "Lease Agreement");

WHEREAS, on or about August 2, 2018, in consideration of and inducement to NFS entering into the Lease Agreement, the Debtor executed a Personal Guaranty and Security Agreement dated August 2, 2018 in favor of NFS (the "Guaranty") pursuant to which the Debtor unconditionally guaranteed the obligations of GSDI to NFS under the Lease Agreement and granted NFS a security interest in all of her assets;

WHEREAS, GSDI defaulted on its obligations under the Lease Agreement and Debtor defaulted on her obligations under the Guaranty, including without limitation, by failing to make payments as agreed to under the Lease Agreement and/or the Guaranty;

WHEREAS, on October 21, 2019, GSDI filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey, captioned

*In re Garden State Diagnostic Imaging, LLC*, Case No. 19-29852 (KCF) (the "GSDI Bankruptcy Case");

WHEREAS, on December 30, 2019, NFS filed a Complaint against the Debtor, amongst other defendants, in the Essex County Superior Court in the State of Massachusetts, captioned *NFS Leasing, Inc. v. J&K Radiology LLC, et al.*, Civil Action No. 1977CV017540 (the "Massachusetts Action");

WHEREAS, on January 27, 2020, the Court entered the *Stipulation and Order Modifying the Automatic Stay to Allow NFS Leasing, Inc. to Recover Possession of its Equipment and Exercise Rights and Remedies Against its Collateral*;

WHEREAS, on June 25, 2020 (the "Petition Date"), the Debtor, by and through her counsel, caused to be filed with the Clerk of the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Personal Case"), which, *inter alia*, stayed the Massachusetts Action as against the Debtor;

WHEREAS, on September 3, 2020, NFS filed a proof of claim alleging a secured claim in the amount of $1,941,690.65 [Claim No. 4-1], subsequently amended on September 14, 2020 to $2,401,373.81 [Claim No. 4-2] (the "NFS Claim");

WHEREAS, on January 11, 2021, the Debtor filed an Individual Modified Chapter 11 Combined Plan of Reorganization and Disclosure Statement [Dkt. No. 108], followed by a Second Modified Individual Debtor's Chapter 11 Combined Plan of Reorganization and Disclosure Statement filed on January 28, 2021 [Dkt. No. 121] (the "Plan");

WHEREAS, on February 2, 2021, the Court entered the Amended Order Conditionally Approving Disclosure Statement, Setting Deadlines, and Scheduling Confirmation Hearing, as later amended on February 9, 2021 [Dkt. No. 127];

2

WHEREAS, on February 20, 2021, the Debtor initiated an adversary proceeding, by way of an adversary complaint (the "Adversary Complaint"), against NFS, seeking to disallow NFS' claim [Adv. Proc. No. 21-01180, Dkt. 1] (the "Adversary Action");

WHEREAS, On March 2, 2021, NFS filed an objection to the Plan [Dkt. No. 140], as amended on May 20, 2021 [Dkt. No. 194], and supplemented on June 17, 2021 [Dkt. No. 212] (the "NFS Plan Objections");

WHEREAS, the Parties wish to settle the Adversary Action and the NFS Plan Objections; and

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Incorporation of Recitals.  Each of the recitals set forth above in this Agreement are incorporated herein and made a part hereof.  The Parties hereto acknowledge that the statements made in the recitals are true and correct to the best of each Parties' respective knowledge, information and belief as of the date hereof.

2.    Effective Date.  The effective date of this Agreement shall be when a final, non-appealable Order is entered that approves the Debtor's entry into this Agreement (the "Effective Date").

3.    Allowance of Claims.  In the Personal Case, the NFS Claim shall be deemed allowed as (i) a secured claim in the amount of $150,000 (the "Secured Amount") for participation as a secured creditor in Class 5 of the Plan as modified by the terms and conditions set forth herein, and (ii) an unsecured claim in the amount of $1,539,263.27 for participation as a general unsecured creditor in Class 4 of the Plan (the "Unsecured Claim").

3

4.    <u>Payment of Secured Amount by the Debtor</u>.  The Debtor shall pay NFS the Secured Amount as follows:

a.    <u>Deposit</u>.  Within thirty (30) days after the Effective Date (as defined herein), the payment by wire transfer of $20,000 to NFS (the "<u>Deposit</u>").

b.    <u>Promissory Note</u>.  Upon execution of this Agreement, the Debtor and her husband, Himanshu Patel ("<u>Mr. Patel</u>") shall deliver to NFS an original "wet-signature" executed Promissory Note in substantially the form annexed hereto as <u>Exhibit A</u> (the "<u>Note</u>") payable to NFS in the original principal amount of $130,000, accruing interest on the unpaid principal amount at three percent (3%) per annum, with all principal and accrued interest to be paid over a term of six (6) years in quarterly installments beginning on October 1, 2021.

c.    <u>Mortgage</u>.  The Note will be secured by a mortgage on the property identified on the annexed Schedule 1 (the "<u>Property</u>") executed by the Debtor and Mr. Patel as co-owners of such property upon execution of this Agreement, and on the further terms set forth in the forms annexed hereto as <u>Exhibit B</u> (the "<u>Mortgage</u>").  The mention of Mr. Patel in this Agreement is solely to acknowledge Mr. Patel as joint owner of the Property with the Debtor and co-obligor under the Note.  The Debtor warrants and represents that the Debtor and Mr. Patel are the only owners of the Property and that the execution of the Mortgage will grant NFS a valid and fully enforceable lien on the Property.

d.    <u>Stay Relief</u>.  The automatic stay shall be modified to permit the recordation of the Mortgage upon approval of this Agreement by the Court notwithstanding Fed. R. Bankr. P. 4001(a)(3).

4

5.     <u>Treatment of the Unsecured Claim</u>. NFS shall receive pro rata distributions as a holder of a Class 4 Claim in accordance with the Plan.

6.     <u>NFS Plan Objection; Ballots</u>.  Provided that NFS has received the fully executed Note and Mortgage and the Court has approved this Agreement, NFS shall, prior to the hearing to confirm the Plan, (i) withdraw the NFS Plan Objections and (ii) amend its Class 4 and Class 5 ballots to vote in favor of the Plan as modified by the terms and conditions set forth herein.

7.     <u>Dismissal of Adversary Action</u>.  The Debtor shall cause the Adversary Action to be dismissed with prejudice and without costs, no later than three (3) days after confirmation of the Debtor's Plan.

8.     <u>Dismissal of Massachusetts Action</u>.  Provided that NFS has received the fully executed Note and Mortgage and that the Effective Date has passed and the Debtor's Plan has been confirmed, NFS shall cause the Massachusetts Action to be dismissed without prejudice and without costs as to the Debtor, no later than three (3) days after confirmation of the Debtor's Plan or the Effective Date, whichever occurs later (the "<u>MA Dismissal</u>").  Debtor shall cooperate fully, execute any additional documents and take any additional actions as may be reasonably necessary and appropriate to effectuate the MA Dismissal.

9.     <u>Default</u>. In the event the Deposit or any payment due under the Note is not received by the due date set forth in Section 4 of this Agreement and/or under the Note, NFS shall cause a written notice of such fact (a "<u>Default Notice</u>") to be provided by e-mail to Middlebrooks Shapiro, P.C. (middlebrooks@middlebrooksshapiro.com), counsel for the Debtor.  If the delinquent payment is not received by NFS within ten (10) days of the date of a Default Notice, an "Event of Default" shall have occurred.  Upon the occurrence of any Event of Default (whether or not acceleration has occurred), interest on the outstanding principal amount under the Note shall

5

accrue at a rate of four percent (4%) above the then applicable interest rate per annum (the "Default Rate"), or the maximum rate permitted by law, whichever is less, during the period of such default. Interest at the Default Rate shall accrue until all accrued and unpaid interest as set forth herein are paid in full in cash. In addition to the foregoing, the Debtor shall be liable to NFS for all reasonable costs, expenses and attorneys' fees incurred by NFS in connection with its enforcement of any provision of this Agreement or any other amounts owed hereunder as determined by a court of competent jurisdiction. The Parties agree, however, that NFS shall not be required to issue more than two (2) Default Notices under this Section 9. Once two (2) Default Notices have been issued, an "Event of Default" shall occur, without the issuance of any further Default Notice and without any grace period whatsoever. In the event of any default under this Agreement and/or any Event of Default, NFS may, in its sole discretion, immediately pursue any and all actions and remedies provided for by this Agreement, the Note and/or the Mortgage. Any payment that is returned to NFS for insufficient funds, stop payment, or other cause shall be deemed the equivalent of a failure by the Debtor to pay such payment in accordance with this Agreement and/or the Note.

10.    Additional Default. Each and every term hereof is a material part of the consideration received by NFS for entering into this Agreement. A failure by the Debtor to observe or perform any covenant, term or provision of this Agreement shall constitute an Event of Default under this Agreement. Upon any Event of Default by the Debtor other than under the Note, Mortgage or under Section 9, NFS, at its option, may by Default Notice to the Debtor, declare all unpaid amounts under this Agreement and the Note immediately due and payable. The Debtor shall cure all such defaults identified in the Default Notice within ten (10) days after the date of the Default Notice. In the event any such Event of Default is not cured, NFS may, in its sole discretion, immediately pursue any and all actions to collect upon the Note and enforce its rights

6

under this Agreement and the Mortgage.  An Event of Default under this Agreement shall be an Event of Default under the Note and the Mortgage and an Event of Default under the Note and/or the Mortgage shall be an Event of Default under this Agreement.

      11.    <u>Method of Payment</u>.  All payments to be made to NFS under this Agreement shall be made by Automated Clearing House transfer, in accordance with the instructions attached as <u>Exhibit C</u>.

      12.    <u>Release by NFS</u>.  Provided that NFS has received the fully executed Note and Mortgage, on the Effective Date and in exchange for the consideration, releases and covenants contemplated herein, NFS, for itself and its subsidiaries, affiliates, insurers, predecessors, successors and assigns (collectively, the "<u>NFS Releasors</u>") shall release and be deemed to have released the Debtor from any and all claims, debts, demands, rights, suits, actions, causes of action, or liabilities of any kind or nature whatsoever, whether based on federal, state, foreign, statutory, or common law, whether fixed or contingent, known or unknown, asserted or unasserted, disclosed or undisclosed, matured or unmatured, perfected or not perfected, ripened or unripened, that the NFS Releasors or any of them ever had, now have, or may hereafter have against the Debtor based upon or arising out of any actions or events which occurred prior to the date of this Agreement including but not limited to, any claims that were or could have been asserted in the Personal Case, the Adversary Action and/or the Massachusetts Action, that arise out of or in any way relate to the Lease Agreement and/or the Guaranty, <u>provided</u>, that nothing in this Section 12 shall release the Debtor's obligations set forth in this Agreement, the Note, the Mortgage or any amount which NFS may be entitled to in connection with the NFS Claim.  It is specifically understood and agreed that the foregoing release is for the sole benefit of Debtor and NFS, and it will not be construed as conferring any rights to any third party, including but not limited to, third-party beneficiary rights.

7

13.    <u>Release by the Debtor</u>.  In exchange for the consideration, releases and covenants contemplated herein, Debtor and for her agents, employees, representatives and assigns (collectively, the "<u>Debtor Releasors</u>") shall release and be deemed to have released NFS and its subsidiaries, affiliates, predecessors, successors and assigns, and each of their respective present and former officers, directors, representatives, agents, employees, shareholders, attorneys and assigns (collectively, the "<u>NFS Released Parties</u>") from any and all claims, debts, demands, rights, suits, actions, causes of action, or liabilities of any kind or nature whatsoever, whether based on federal, state, foreign, statutory, or common law, whether fixed or contingent, known or unknown, asserted or unasserted, disclosed or undisclosed, matured or unmatured, perfected or not perfected, ripened or unripened, that the Debtor Releasors had, now have, or may hereafter have against any of the NFS Released Parties based on or arising out of any actions or events which occurred prior to the date of this Agreement.

14.    <u>Entire Agreement</u>.  This Agreement represents the entire understanding among the Parties with respect to the subject matter of this Agreement and merges all prior discussions, understandings, agreements and/or dealings with respect to the subject matter of this Agreement.  No change or modification shall be effective unless in writing and signed by each of the Parties.

8

15.    <u>Notices</u>.  All notices given pursuant to this Agreement shall be given in writing and sent by email and a nationally recognized overnight courier (such as Federal Express) as follows:

<u>If to NFS</u>:

NFS Leasing, Inc.
900 Cummings Center, Suite 226-U
Beverly, MA 01915
Attn.:  Legal
Email: Legal@nfsleasing.com

<u>With a copy sent in the same fashion to</u>:

James N. Lawlor, Esq.
Joseph F. Pacelli, Esq.
Wollmuth, Maher & Deutsch, LLP
500 Fifth Avenue
New York, NY 10110
Email: jlawlor@wmd-law.com
Email: jpacelli@wmd-law.com

<u>If to the Debtor</u>:

Hiteshri Patel
223 Gordons Corner Road
Marlboro, NJ 07746

<u>With a copy sent in the same fashion to</u>:

Melinda Middlebrooks, Esq.
Joseph Shapiro, Esq.
Middlebrooks Shapiro, P.C.
841 Mountain Avenue, First Floor
Springfield, New Jersey 07081
Email: middlebrooks@middlebrooksshapiro.com
Email: jshapiro@middlebrooksshapiro.com

16.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey.  Any legal action brought to enforce any provision of this Agreement, the Note or the Mortgage shall be brought in any court of competent

9

jurisdiction located in (i) Essex County in the State of New Jersey or (ii) the United States District Court for the District of New Jersey.

17.    Counterparts.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all such counterparts, when taken together, shall constitute one and the same instrument.  It is not necessary that all Parties sign all or any one of the counterparts, but each Party must sign at least one counterpart for this Agreement to be effective.

18.    Time.  Time is of the essence in the performance of each and every covenant, term and provision contained herein.

19.    Binding Agreement.  This Agreement shall be a binding upon the heirs, trustees in the Personal Case, executors, administrators, personal representatives, successors and confer any right, title, benefit, cause of action or remedy upon any person or entity not a party hereto, which such party would not or did not otherwise possess.

20.    Assignment.  NFS may at any time assign this Agreement and any and all of its rights and obligations hereunder.  Debtor shall not assign this Agreement or any of her rights or obligations hereunder without the prior written consent of NFS, which consent may be withheld by NFS in its sole and absolute discretion.

21.    Headings.  The section headings are inserted for convenience of reference only and shall in no way alter, amend, define or be used in the construction or interpretation of the text of such section.

22.    No Construction against Draftsman.  The provisions of this Agreement shall be deemed to have been jointly drafted by the Parties and shall not be construed against a party because of its role in drafting this Agreement.

10

23.    <u>JURY WAIVER</u>.    EACH PARTY HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE PARTIES ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, THE NOTE AND/OR THE MORTGAGE. THIS PROVISION IS A MATERIAL INDUCEMENT TO NFS AND THE DEBTOR TO ENTER INTO THE AGREEMENT DESCRIBED HEREIN.

24.    <u>Facsimile Signatures Deemed Originals</u>. This Agreement may be executed and delivered by exchange of signed signature pages transmitted via facsimile or electronic mail by the Parties. The facsimile or .pdf attached to an electronic mail of the signed signatures shall be the same as original signatures in all respects, including, but not limited to, being admissible in evidence in any court. Notwithstanding anything contained herein to the contrary, the Debtor must deliver an original, "wet-signature" version of the Note to NFS.

25.    <u>Severability</u>. Any determination that any provision of this Agreement or any application thereof is invalid, illegal, or unenforceable in any respect in any instance shall not affect the validity, legality, or enforceability of such provision in any other instance, or the validity, legality, or enforceability of any other provision of this Agreement.

26.    <u>Opportunity to Consult Counsel</u>. Each Party to this Agreement represents and warrants to each other Party that such Party has consulted or had the opportunity to consult with counsel before execution of this Agreement.

27.    <u>Authorized Signatures</u>. Each Party to this Agreement represents and warrants to other party that such Party has full power, authority and legal right and has obtained

Document Ref: TRNKW-UDVK2-UUF5L-P5RRP

all approvals and consents necessary to execute, deliver and perform all actions under this Agreement.

       28.    <u>Waiver</u>.  Any failure of any Party to enforce any provision of this Agreement shall not (i) constitute or be construed as a waiver of such provision or otherwise prejudice the right of that Party to enforce such provision at any subsequent time; or (ii) preclude such Party from enforcing any other rights or remedies that such Party may have under this Agreement.

       29.    <u>Cooperation</u>.  Each Party agrees to cooperate fully, execute any and all additional documents and take any and all additional actions as may be reasonably necessary and appropriate to give full force and effect to this Agreement and to carry out the terms, conditions and obligations of this Agreement.

       30.    <u>Failure to Obtain Court Approval</u>.  In the event the Court does not approve this Agreement or the Order approving this Agreement does not become final and non-appealable by August 31, 2021, NFS may, in its sole discretion, deem this Agreement null and void and of no further force and effect.

*[Remainder of Page Intentionally Left Blank – Signature Pages to Follow]*

12

Document Ref: TRNKW-UDVK2-UUF5L-P5RRP

IN WITNESS WHEREOF, each of the undersigned have caused this Agreement to be executed and delivered as of the 27th day of July, 2021.

**NFS Leasing, Inc.**

By: _____
Mark Blaisdell, CFO

**Hiteshri Patel, individually**

*Hiteshri Patel*
_____

*[Signature Page – Settlement Agreement and Release]*

**Exhibit A**
(Promissory Note)

- See Attached.

## PROMISSORY NOTE

$130,000
(Original Principal Amount)

Marlboro, New Jersey
July 21, 2021

    FOR VALUE RECEIVED, the adequacy of which is hereby acknowledged and set forth in that certain Settlement Agreement and Release by and between Payee (as defined below) and Mrs. Patel (as defined below), dated even herewith (the "Settlement Agreement"), the undersigned, **HITESHRI PATEL**, an individual having an address at 223 Gordons Corner Road, Marlboro, NJ 07746 ("Mrs. Patel") and **HIMANSHU PATEL**, an individual having an address at 223 Gordons Corner Road, Marlboro, NJ 07746 ("Mr. Patel" and together with Mrs. Patel, the "Payor") hereby promises to pay to **NFS LEASING, INC.**, a Massachusetts corporation having an address at 900 Cummings Center, Suite 226-U, Beverly, MA 01915 (the "Payee") the principal sum of $130,000.

    Payments due hereunder shall be paid to the Payee via Automated Clearing House transfer in accordance with the terms of the Settlement Agreement.

    1.    Interest.

    (a)    This Promissory Note (this "Note") shall bear interest at the rate of 3% per annum beginning on the date first set forth above (the "Effective Date"). All computations of interest and fees shall be based on a 365-day year for the actual number of days elapsed.

    (b)    If any Payment (as defined below) or other amount due under this Note is not paid when due, or if there shall be any other default and/or Event of Default (as defined below), the unpaid principal of this Note and any overdue interest shall bear interest at a rate of four percent (4%) above the then applicable interest rate (or the maximum interest rate permitted by law) per annum until such overdue amount is paid in full or the default and/or Event of Default is cured, as applicable. In the event any interest rate hereunder exceeds the maximum rate permitted by New Jersey usury laws, such rates shall be automatically reduced to the maximum rate permitted thereby.

    2.    Prepayment. The Payor shall have the right at any time after the Effective Date and before the final Payment is due under Section 3 of this Note (the "Maturity Date") to repay all or any part of the principal amount of this Note without premium or penalty, provided that each prepayment shall be accompanied by accrued interest on the amount prepaid.

    3.    Mandatory Payments. Beginning October 1, 2021 and every quarter thereafter for twenty-three (23) consecutive quarterly payments (each date of payment, a "Payment Date"), the Payor shall make payments to Payee (each a "Payment" and collectively the "Payments") in accordance with the "Payment Schedule" attached hereto as Schedule 1 and all Payments shall be applied first to payment of interest, as accrued, and the balance to the payment of principal.

    4.    Allocation. All Payments made hereunder (whether in prepayment or otherwise) shall first be applied against any interest then due hereunder and shall then be applied against principal.

5.    <u>Mortgage</u>.  This Note is secured by that certain mortgage ("<u>Mortgage</u>") of the same date as this Note, covering certain premises located at 223 Gordons Corner Road, Marlboro, New Jersey 07746, New Jersey ("<u>Mortgaged Property</u>").  Any failure by the Payor to comply with the terms, covenants, or conditions of the Mortgage or the Settlement Agreement shall automatically constitute a default and/or an Event of Default under this Note.  The Payor promises to perform all obligations under each mortgage or other agreement secured by a lien that has priority over the Mortgage securing this Note (each a "<u>Senior Mortgage</u>").

6.    <u>No Transfer</u>.  If the Payor shall, without in each instance obtaining the prior written consent of the Payee, sell, transfer, lease, or convey (all referred to in this Note as "transfer") the Mortgaged Property or any interest in it, whether voluntarily or by operation of law, then, at the option of the Payee, the Maturity Date of this Note shall be advanced to the date of the transfer, and all of the obligations of the Payor under this Note shall immediately be due and payable.

7.    <u>Events of Default</u>.  Each of the following shall constitute an event of default and/or an "<u>Event of Default</u>":

(a)    the Deposit (as defined under the Settlement Agreement), any Payment or any other amount due under this Note is not received by the due date set forth in Section 4 of the Settlement Agreement and/or under this Note within ten (10) days of the date of a written notice sent by Payee to Payor of such fact (each a "<u>Default Notice</u>" and collectively "<u>Default Notices</u>") provided by e-mail to counsel for Payor to middlebrooks@middlebrooksshapiro.com; <u>provided that</u> Payee shall not for any reason be required to issue more than two (2) Default Notices;

(b)    the default in any other term or condition under this Note which is not cured within ten (10) days of the date of a Default Notice;

(c)    written admission by the Payor of its inability to pay its debts as they become due;

(d)    an assignment by Payor for the benefit of creditors;

(e)    the institution of proceedings by the Payor under the Federal Bankruptcy Code or any state or foreign law relating to relief of debtors, or the institution of such proceedings by another party against Payor;

(f)    the seizure of substantially all of the assets of Payor;

(g)    the occurrence of any default and/or Event of Default under the terms of the Settlement Agreement and/or the Mortgage; and/or

(h)    the occurrence of any default under the terms of any Senior Mortgage.

IF A DEFAULT AND/OR AN EVENT OF DEFAULT SHOULD OCCUR, THE PAYEE, AT ITS OPTION, MAY EXERCISE ANY RIGHTS SET FORTH IN THE SETTLEMENT AGREEMENT AND/OR THE MORTGAGE AND/OR DECLARE THE OUTSTANDING PRINCIPAL BALANCE OF AND ALL ACCRUED BUT UNPAID INTEREST ON THIS

NOTE TO BE IMMEDIATELY DUE AND PAYABLE WITHOUT PRESENTMENT, DEMAND, PROTEST, OR NOTICE OF ANY KIND, ALL OF WHICH ARE HEREBY EXPRESSLY WAIVED.

Further, the Payor agrees to pay all fees, costs and expenses, including reasonable attorneys' fees and legal expenses and cost of any title search, incurred by Payee in endeavoring to collect any amounts payable hereunder which are not paid when due, whether by acceleration or otherwise. The payment of these amounts may be enforced and recovered by the entry of judgment on this Note, the issuance of execution on the judgment and/or any other remedies available to Payee. Time is of the essence.

8. <u>Consideration for Mr. Patel</u>. Mr. Patel is married to Mrs. Patel and acknowledges and agrees that: (i) as the spouse of Mrs. Patel he is benefitting from Payee's entering into the Settlement Agreement with Mrs. Patel; and (ii) he has received sufficient consideration in connection with his entering into this Note in connection with the Settlement Agreement.

9. <u>Waiver</u>. No delay or omission of the Payee in exercising any right or power hereunder or set forth in the Settlement Agreement and/or the Mortgage shall impair such right or power or be a waiver of any default and/or Event of Default or an acquiescence therein; and no single or partial exercise of any such right or power shall preclude other or further exercise thereof, or the exercise of any other right; and no waiver shall be valid unless in writing signed by the Payee, and then only to the extent specifically set forth in such writing. All remedies hereunder, set forth in the Settlement Agreement, the Mortgage, or by law or in equity afforded shall be cumulative and shall be available to the Payee until the principal amount of and all interest on this Note has been paid in full.

10. <u>Payment of Costs</u>. The Payor shall pay the cost of any revenue, tax, or other stamps required by law at any time to be affixed to this Note or the Mortgage. If any taxes are imposed with respect to debts secured by the Mortgage or with respect to notes evidencing debts so secured, the Payor agrees to pay or to reimburse the Payee, on demand, the amount of the taxes. If the Payor fails, refuses, or is not legally permitted to do so, the Payee may at its option accelerate this Note to maturity as in the case of a default and/or an Event of Default by the Payor.

11. <u>Notices</u>. All notices, requests, demands or other communications required or permitted hereunder shall be given in the same manner as set forth under the Mortgage.

12. <u>Assignment</u>. The Payee may assign this Note and its rights hereunder without the prior written consent of the Payor. The Payor may not assign any part of this Note or its obligations hereunder.

13. <u>Binding Effect</u>. The terms and provisions of this Note shall be binding upon Payor and its successors and permitted assigns, and shall inure to the benefit of Payee and its successors and assigns, and any subsequent holder of this Note.

14. <u>Governing Law</u>. This Note shall be governed by, enforceable under, and construed in accordance with the laws of the State of New Jersey without giving effect to choice or conflict of law provisions. The parties hereto consent to the exclusive jurisdiction of the

3

federal or state courts sitting in the State of New Jersey for the decision of any disputes relating to this Note, and each agrees not to assert by way of motion, as a defense or otherwise, in any such suit, action or proceeding, any claim that such party is not personally subject to the jurisdiction of such court, that the suit, action, or proceeding brought in such court is an inconvenient forum, that the venue of the suit, action, or proceeding is improper, or that this Note may not be litigated in or by such court.

15.     <u>Headings; Counterparts</u>.  The section headings contained in this Note are intended solely for convenience of reference and do not by themselves constitute a part of this Note.  This Note may be executed in more than one counterpart.

16.     <u>Severability</u>.  If any provision of this Note or the application thereof to any person or circumstance should, for any reason and to any extent, be invalid or unenforceable, the remainder of this Note and the application of such provision to other persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

17.     <u>Modification of Note</u>.  This Note shall not be modified, supplemented or altered in any respect except with the consent in writing of the Payee.

18.     <u>Waiver of Trial by Jury</u>.  THE PARTIES HERETO WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING UNDER THIS NOTE OR ANY PROCEEDING ARISING OUT OF THE TRANSACTIONS CONTEMPLATED HEREBY, REGARDLESS OF WHICH PARTY INITIATES SUCH PROCEEDING.

19.     <u>Seeking Advice of Counsel; Review of Documents</u>.  FOR PURPOSES OF THIS NOTE, EACH OF THE PARTIES HERETO ACKNOWLEDGE THAT, IN EXECUTING THIS NOTE, IT HAD THE OPPORTUNITY TO REVIEW THE MORTGAGE, SETTLEMENT AGREEMENT AND THIS NOTE AND SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND HAS READ AND UNDERSTANDS ALL OF THE TERMS AND PROVISIONS OF THIS NOTE.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Payor has executed this Note as of the date first above written.

**HITESHRI PATEL**

JASON H MITTMAN
Notary Public - State of New Jersey
My Commission Expires Apr 22, 2026

State of New Jersey        )
County of _Monmouth_    )ss.:

Before Me, a Notary Public in and for said County and State, personally appeared the above named _Hiteshri Patel_ who respectively acknowledged that he/she did sign the foregoing instrument and that the same is his/her free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official Seal on the _12_ day of _August_, 20 _21_.

Notary Public

**HIMANSHU PATEL**

JASON H MITTMAN
Notary Public - State of New Jersey
My Commission Expires Apr 22, 2026

State of New Jersey        )
County of _Monmouth_    )ss.:

Before Me, a Notary Public in and for said County and State, personally appeared the above named _Himanshu Patel_ who respectively acknowledged that he/she did sign the foregoing instrument and that the same is his/her free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official Seal on the _12_ day of _August_, 20 _21_.

Notary Public

5

## Schedule 1
### (Payment Schedule)

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Debt | 07/01/2021 | | | | 130,000.00 |
| 1 | 10/01/2021 | 5,939.02 | 975.00 | 4,964.02 | 125,035.98 |
| **2021 Totals** | | **5,939.02** | **975.00** | **4,964.02** | |
| | | | | | |
| 2 | 01/01/2022 | 5,939.02 | 937.77 | 5,001.25 | 120,034.73 |
| 3 | 04/01/2022 | 5,939.02 | 900.26 | 5,038.76 | 114,995.97 |
| 4 | 07/01/2022 | 5,939.02 | 862.47 | 5,076.55 | 109,919.42 |
| 5 | 10/01/2022 | 5,939.02 | 824.40 | 5,114.62 | 104,804.80 |
| **2022 Totals** | | **23,756.08** | **3,524.90** | **20,231.18** | |
| | | | | | |
| 6 | 01/01/2023 | 5,939.02 | 786.04 | 5,152.98 | 99,651.82 |
| 7 | 04/01/2023 | 5,939.02 | 747.39 | 5,191.63 | 94,460.19 |
| 8 | 07/01/2023 | 5,939.02 | 708.45 | 5,230.57 | 89,229.62 |
| 9 | 10/01/2023 | 5,939.02 | 669.22 | 5,269.80 | 83,959.82 |
| **2023 Totals** | | **23,756.08** | **2,911.10** | **20,844.98** | |
| | | | | | |
| 10 | 01/01/2024 | 5,939.02 | 629.70 | 5,309.32 | 78,650.50 |
| 11 | 04/01/2024 | 5,939.02 | 589.88 | 5,349.14 | 73,301.36 |
| 12 | 07/01/2024 | 5,939.02 | 549.76 | 5,389.26 | 67,912.10 |
| 13 | 10/01/2024 | 5,939.02 | 509.34 | 5,429.68 | 62,482.42 |
| **2024 Totals** | | **23,756.08** | **2,278.68** | **21,477.40** | |
| | | | | | |
| 14 | 01/01/2025 | 5,939.02 | 468.62 | 5,470.40 | 57,012.02 |
| 15 | 04/01/2025 | 5,939.02 | 427.59 | 5,511.43 | 51,500.59 |
| 16 | 07/01/2025 | 5,939.02 | 386.25 | 5,552.77 | 45,947.82 |
| 17 | 10/01/2025 | 5,939.02 | 344.61 | 5,594.41 | 40,353.41 |
| **2025 Totals** | | **23,756.08** | **1,627.07** | **22,129.01** | |
| | | | | | |
| 18 | 01/01/2026 | 5,939.02 | 302.65 | 5,636.37 | 34,717.04 |
| 19 | 04/01/2026 | 5,939.02 | 260.38 | 5,678.64 | 29,038.40 |
| 20 | 07/01/2026 | 5,939.02 | 217.79 | 5,721.23 | 23,317.17 |
| 21 | 10/01/2026 | 5,939.02 | 174.88 | 5,764.14 | 17,553.03 |
| **2026 Totals** | | **23,756.08** | **955.70** | **22,800.38** | |
| | | | | | |
| 22 | 01/01/2027 | 5,939.02 | 131.65 | 5,807.37 | 11,745.66 |
| 23 | 04/01/2027 | 5,939.02 | 88.09 | 5,850.93 | 5,894.73 |
| 24 | 07/01/2027 | 5,939.02 | 44.29 | 5,894.73 | 0.00 |
| **2027 Totals** | | **17,817.06** | **264.03** | **17,553.03** | |
| | | | | | |
| **Grand Totals** | | **142,536.48** | **12,536.48** | **130,000.00** | |

**Exhibit B**
<u>(Mortgage)</u>

- See attached.

Document Ref: TRNKW-UDVK2-UUF5L-P5RRP

## MORTGAGE

THIS MORTGAGE is made on July 21, 2021 (this "Mortgage"), between **HITESHRI PATEL**, an individual having an address at 223 Gordons Corner Road, Marlboro, NJ 07746 ("Payor"), and **HIMANSHU PATEL**, an individual having an address at 223 Gordons Corner Road, Marlboro, NJ 07746 ("Co-signer," and together with Payor, the "Mortgagor"), and **NFS LEASING, INC.**, a Massachusetts corporation having an address at 900 Cummings Center, Suite 226-U, Beverly, MA 01915 (the "Mortgagee").  Each of the foregoing parties is sometimes referred to herein as a "Party" and together as the "Parties."

## RECITALS

WHEREAS, each Mortgagor has executed and delivered to Mortgagee that certain Promissory Note (the "Note") bearing the same date as this Mortgage, in which each Mortgagor promises to pay to Mortgagee the original principal sum of $130,000, plus interest on the outstanding principal sum and any costs and fees, each at the rate and times, in the manner, and according to the terms and conditions specified in the Note.  The Note is incorporated herein by reference.

WHEREAS, the Co-signer is married to the Payor and acknowledges and agrees that:  (i) as the spouse of the Payor he is benefitting from Payor's entering into the Settlement Agreement (as defined below); and (ii) he has received sufficient consideration in connection with his entering into this Mortgage in connection with the Settlement Agreement.

NOW, THEREFORE, in consideration of the indebtedness, and as security for payment to Mortgagee of the principal with interest, and all other sums provided for in the Note, this Mortgage and the Settlement Agreement (collectively, the "Obligations") according to their respective terms and conditions, and for performance of the agreements, conditions, covenants, provisions, and stipulations contained in the Note, this Mortgage and in that certain unrecorded Settlement Agreement and Release between Payor and Mortgagee bearing the same date as this Mortgage and to be approved by the United States Bankruptcy Court District of New Jersey pursuant to Case No.:  20-17153 (JKS) (the "Settlement Agreement"),  and in any renewals, extensions, amendments, restatements and modifications of these documents, Mortgagor does hereby grant, convey, and mortgage to the Mortgagee all that certain real estate described in Exhibit A (the "Real Estate") attached to and made a part of this Mortgage,

TOGETHER WITH any and all buildings and improvements erected or hereafter erected on the Real Estate (collectively, the "Mortgaged Property"),

TO HAVE AND TO HOLD the Mortgaged Property hereby conveyed or mentioned and intended so to be, to Mortgagee, to its own use.

UNDER AND SUBJECT to the liens of (i) a certain Mortgage between Hiteshri Patel and Himanshu Patel, as mortgagor, and Hudson County Savings Bank, as mortgagee, dated July 22,

2011 recorded in the Office for the Recording of Deeds in and for Monmouth County, New Jersey; and, (ii) a certain Mortgage between Hiteshri Patel and Himanshu Patel, as mortgagor, and West Valley National Bank, as mortgagee, dated July 17, 2017 recorded in the Office for the Recording of Deeds in and for Monmouth County, New Jersey (each a "<u>Prior Mortgage</u>" and together, the "<u>Prior Mortgages</u>").

Mortgagor agrees that as long as the Mortgaged Property or any part of it is subject to any Prior Mortgage:

1.      Mortgagor will pay the principal, interest, and all other sums when due and payable under each Prior Mortgage no later than their due date, and will comply with all of the other terms, covenants, and conditions of each Prior Mortgage.

2.      Mortgagor will produce to Mortgagee, on request, receipts or other evidence of payment satisfactory to the Mortgagee with respect to all sums due under each Prior Mortgage.

3.      Mortgagor will not enter into any agreement or arrangement, without the prior written consent of Mortgagee, pursuant to which Mortgagor is granted any forbearance or indulgence (as to time or amount) in the payment of any principal, interest, or other sums due under each Prior Mortgage.

Any default by Mortgagor under each Prior Mortgage, including without limitation failure to make a payment in compliance with the terms of each Prior Mortgage shall constitute a default under this Mortgage.  Any failure by Mortgagor to produce the receipts concerning any Prior Mortgage shall also constitute a default under this Mortgage.  It shall also constitute a default under this Mortgage if Mortgagor enters into an agreement contrary to the provisions hereof.  In the case of any default under this Mortgage, the Mortgagee shall have the right, at its election, to declare immediately due and payable the Obligations secured by this Mortgage with interest and all other appropriate charges.

Mortgagee, at its election, and without notice to Mortgagor, may make, but shall not be obligated to make, any payments the Mortgagor has failed to make under any Prior Mortgage. Mortgagee may add the amount of those payments to the Obligations secured by this Mortgage. Any such payment by Mortgagee shall not release Mortgagor from Mortgagor's obligations or constitute a waiver of Mortgagor's default under this Mortgage.

If and to the extent Mortgagor is required to deliver, and does deliver, tax receipts and insurance policies to the holder of any Prior Mortgage, Mortgagor shall be required to deliver only photocopies of those documents to Mortgagee within the times set forth in this Mortgage, even though this Mortgage may otherwise require delivery of original documents to Mortgagee.

PROVIDED ALWAYS, and this instrument is on the express condition that, if Mortgagor pays in full to Mortgagee all of the Obligations and all other sums payable by Mortgagor to Mortgagee that are secured by this Mortgage, in accordance with the provisions of the Note, the

2

Settlement Agreement and this Mortgage, at the times and in the manner specified, without deduction, fraud, or delay; and Mortgagor performs and complies with all the agreements, conditions, covenants, provisions, and stipulations contained in this Mortgage, the Note and the Settlement Agreement, and Mortgagor confirms the foregoing in writing, then this Mortgage and the estate hereby granted shall cease and become void.

MORTGAGOR COVENANTS with the Mortgagee that until all of the Obligations secured by this Mortgage are fully repaid:

### ARTICLE I – COVENANTS

Mortgagor covenants and agrees with Mortgagee as follows:

1.01.   Warranty of Title.  Mortgagor has good and marketable fee simple title to the Mortgaged Property, free and clear of all liens, encumbrances, charges, and all other conditions except for the Prior Mortgages.

1.02.   Payment and Performance.  Mortgagor shall pay to Mortgagee, in accordance with the terms of the Note, the Settlement Agreement, and this Mortgage, all of the Obligations, and all other sums, and shall perform and comply with all the agreements, conditions, covenants, provisions, and stipulations of the Note, this Mortgage and the Settlement Agreement.

1.03.   Maintenance of Mortgaged Property.  Mortgagor shall abstain from and shall not permit the commission of waste in or about the Mortgaged Property.  Mortgagor shall not remove or demolish, or alter the structural character of, any building erected at any time on the Mortgaged Property, without the prior written consent of Mortgagee.  Mortgagor shall not permit the Mortgaged Property to become vacant, deserted, or unguarded, and shall maintain the Mortgaged Property in good condition and repair, reasonable wear and tear excepted, making, when necessary, all repairs of every nature.

1.04.   Insurance.  Mortgagor, at its sole cost and expense, shall keep the Mortgaged Property continuously insured against such perils and hazards, and in such amounts and with such limits, as required by the Prior Mortgages or if the Prior Mortgages fail to exist, then as required by commercially reasonable standards for insurance.

1.05.   Taxes and Other Charges.  Mortgagor shall pay when due and payable, all taxes, assessments, water and sewer rents, and all other charges or claims that may be assessed, levied, or filed at any time against Mortgagor, the whole or any part of the Mortgaged Property, or against the interest of Mortgagee in the Mortgaged Property, or that, by any present or future law, may have priority over the Obligations secured by this Mortgage either in lien or in distribution out of the proceeds of any judicial sale.

1.06.   Compliance With Law and Regulations.  Mortgagor shall comply with all laws, ordinances, regulations, and orders of all federal, state, municipal, and other governmental authorities relating to the Mortgaged Property.

3

1.07.   <u>Declaration of No Set-Off</u>.  Promptly, but not later than within one week after requested to do so by Mortgagee, Mortgagor shall certify in writing to Mortgagee or to any proposed assignee of this Mortgage, in a writing duly acknowledged, the amount of the Obligations and other charges secured by this Mortgage and whether there are any claimed set-offs or defenses against it.

1.08.   <u>Defaults and Right to Remedy</u>.  In the event that Mortgagor fails to pay taxes, assessments, water and sewer charges, or other lienable claims (except in case of contest) or insurance premiums, or fails to make necessary repairs or permits waste, or otherwise fails to comply with its obligations under this Mortgage, any Prior Mortgage, the Settlement Agreement, the Note and/or any other document executed in connection with this Mortgage, then Mortgagee, at its election and without notice to Mortgagor, shall have the right, but not the obligation, to make any payment or expenditure that Mortgagor should have made, or that Mortgagee deems advisable, to protect the security of this Mortgage or the Mortgaged Property.  Any payment by the Mortgagee shall be without prejudice to any of Mortgagee's rights or remedies under this Mortgage, at law, or in equity.  All sums, as well as costs, advanced by Mortgagee pursuant to this Mortgage shall be due upon demand from Mortgagor to Mortgagee, shall be secured by this Mortgage, and shall bear interest in accordance with the Note.

**ARTICLE II – DEFAULT AND REMEDIES**

2.01.   <u>Events of Default</u>.  Any one or more of the following shall constitute a default and an "<u>Event of Default</u>:"

a.      the Deposit (as defined under the Settlement Agreement) or any payment or any other amount due under the Note is not received by the due date set forth in Section 4 of the Settlement Agreement and/or under the Note within ten (10) days of the date of a written notice sent by Mortgagee to Mortgagor of such fact (each a "<u>Default Notice</u>" and collectively, "<u>Default Notices</u>") provided by e-mail to counsel for the Mortgagor to middlebrooks@middlebrooksshapiro.com; provided that Mortgagee shall not for any reason be required to issue more than two (2) Default Notices;

b.      Mortgagor's nonperformance of or noncompliance with any of the other agreements, terms, conditions, covenants, provisions, or stipulations contained in this Mortgage which is not cured within ten (10) days of the date of a Default Notice;

c.      the occurrence of any default and/or Event of Default under the Settlement Agreement and/or the Note;

d.      the entry of a decree or order for relief by a court having jurisdiction in the Mortgaged Property in respect of any Mortgagor in an involuntary case under the federal bankruptcy laws, or any other applicable federal or state bankruptcy, insolvency, or other similar law;

4

e.    the commencement by any Mortgagor of a voluntary case under the federal bankruptcy laws or any other applicable federal or state bankruptcy, insolvency, or other similar law.

f.    the appointment of, or the consent by the Mortgagor to, a receiver, liquidator, assignee, trustee, custodian, sequestrator, or other similar official for any substantial part of any Mortgagor's property;

g.    the ordering of the winding-up or liquidation of any Mortgagor's affairs;

h.    the making by any Mortgagor of any assignment for the benefit of creditors, or the failure of any Mortgagor generally to pay its debts as they become due;

i.    the entry of a final judgment for the payment of money rendered against any Mortgagor in an amount greater than $50,000 and, within forty-five (45) days after the entry, the judgment shall not have been discharged or execution stayed pending appeal, or if, within forty-five (45) days after the expiration of any stay, the judgment shall not have been discharged.

Whenever a state of facts exists that, on delivery of notice to any Mortgagor and/or expiration of any applicable cure period, constitutes a default and/or an Event of Default under this Mortgage or a default and/or an Event of Default under the Note, the Settlement Agreement or any other document executed in connection with the Obligations secured by this Mortgage, notice to any Mortgagor of such state of facts under any of such documents shall constitute notice under this Mortgage and all such documents, and the cure periods, if any, afforded to any Mortgagor under this Mortgage and all such documents with respect to such state of facts shall run concurrently, not consecutively.

2.02.    Remedies.

a.    Upon the occurrence of any default and/or Event of Default, the balance of the Obligations and all other sums secured by this Mortgage shall become immediately due and payable, at the option of Mortgagee, without further notice or demand.

b.    When the balance of the Obligations and all other sums secured by this Mortgage becomes due and payable, either because of maturity or because of the occurrence of any default and/or Event of Default, or otherwise, then:

i.    Foreclosure: Mortgagee may institute an action of mortgage foreclosure, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security, as the law may allow, and may proceed to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the rate or rates stipulated in the Note, together with all other Obligations and sums due by Mortgagor in accordance with the provisions of the Note, the Settlement Agreement, and this Mortgage, including all Obligations and sums that may have been loaned or otherwise credited by Mortgagee to Mortgagor after the date of this Mortgage, and all Obligations and sums that may

have been advanced by Mortgagee for taxes, water or sewer rents, other lienable charges or claims, insurance, repairs, or maintenance, and all costs of suit. Mortgagor authorizes Mortgagee at its option to foreclose this Mortgage subject to the rights of any tenants of the Mortgaged Property, and the failure to make any tenants parties defendant to any foreclosure proceedings and to foreclose their rights will not be asserted by Mortgagor as a defense to any proceedings instituted by Mortgagee to recover the Obligations secured by this Mortgage or any deficiency remaining unpaid after the foreclosure sale of the Mortgaged Property. Nothing contained in this Mortgage shall prevent Mortgagor from asserting in any proceedings disputing the amount of the deficiency or the sufficiency of any bid at the foreclosure sale that any tenants adversely affect the value of the Mortgaged Property.

        ii.    <u>Possession</u>: Mortgagee may enter into possession of the Mortgaged Property, with or without legal action, and by force if necessary. In the alternative, Mortgagee shall be entitled to appointment of a receiver without regard to the solvency of any Mortgagor or any other person liable for the debt secured by this Mortgage, and regardless of whether Mortgagee has an adequate remedy at law. Either Mortgagee or a receiver, as the case may be, may rent all or any part of the Mortgaged Property for any period and on any terms and conditions that Mortgagee or receiver may see fit, collect all rentals, and, after deducting all costs of collection and administration expense, apply the net rentals to the payment of taxes, water and sewer rents, other lienable charges and claims, insurance premiums, and all other carrying charges, and to the maintenance, repair, or restoration of the Mortgaged Property, or in reduction of the Obligations, principal or interest, or both, in such order and amounts as Mortgagee or the receiver may elect. For that purpose, Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any existing or future lease or rights to use and occupation of the Mortgaged Property, as well as all rights and remedies provided in the lease or at law or in equity for the collection of the rentals. Any lease or leases entered into by Mortgagee or the receiver pursuant to this paragraph shall survive foreclosure of the Mortgage and repayment of the debt, except to the extent any applicable lease may provide otherwise.

        c.    For the purpose of obtaining possession of the Mortgaged Property in the event of any default and/or Event of Default under this Mortgage, the Settlement Agreement or the Note, Mortgagor hereby authorizes and empowers any attorney of any court of record in the State of New Jersey or elsewhere, as attorney for Mortgagor and all persons claiming under or through Mortgagor, to sign an agreement for entering in any competent court an amicable action in ejectment for possession of the Mortgaged Property and to appear for and confess judgment against Mortgagor, and against all persons claiming under or through Mortgagor, in favor of Mortgagee, for recovery by Mortgagee of possession. This Mortgage, or a copy of this Mortgage verified by affidavit, shall be a sufficient warrant. After confession of judgment, a writ of possession may immediately issue for possession of the Mortgaged Property, without any prior writ or proceeding and without any stay of execution. If for any reason after the action has been commenced it shall be discontinued, or possession of the Mortgaged Property shall remain in or be restored to Mortgagor, Mortgagee shall have the right for the same default or any subsequent default to bring one or more further amicable actions to recover possession of the Mortgaged

Property.  Mortgagee may bring an amicable action in ejectment and confess judgment before or after the institution of proceedings to foreclose this Mortgage or to enforce the Note, or after entry of judgment therein or on the Note, or after a sheriff's sale of the Mortgaged Property in which Mortgagee is the successful bidder.  The authorization to pursue proceedings for obtaining possession and for confession of judgment is an essential part of the remedies for enforcement of the Mortgage and the Note, and shall survive any execution sale to Mortgagee.

d.    Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this Mortgage, as they become due, without regard to whether or not the Obligations or any other sums secured by the Note, the Settlement Agreement and/or this Mortgage shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action to foreclose this Mortgage or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

e.    Any real estate sold to satisfy the mortgage debt may be sold in one parcel, as an entirety, or in such parcels and in such manner or order as Mortgagee, in its sole discretion, may elect.

f.    Neither the Mortgagor nor any other person obligated for payment of all or any part of the sums now or hereafter secured by this Mortgage shall be relieved of the obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person to take action to foreclose on this Mortgage or otherwise enforce any provisions of the Mortgage, the Settlement Agreement or the Note, or by reason of the release, regardless of consideration, of all or any part of the security held for the Obligations secured by this Mortgage, or by reason of any agreement or stipulation between any subsequent owner of the Mortgaged Property and Mortgagee extending the time of payment or modifying the terms of the Mortgage, the Settlement Agreement or the Note without first having obtained the consent of Mortgagor or other person.  In the latter event the Mortgagor and all such other persons shall continue to be liable to make payments according to the terms of any extension or modification agreement, unless expressly released and discharged in writing by Mortgagee.  No release of all or any part of the security shall in any way impair or affect the lien of this Mortgage or its priority over any subordinate lien.

2.03.    Attorneys' Fees. If Mortgagee becomes a party to any suit or proceeding affecting the Mortgaged Property, the lien created by this Mortgage, or Mortgagee's interest in the Mortgaged Property (including any proceeding in the nature of eminent domain), or if Mortgagee engages counsel to collect any of the Obligations or to enforce performance of the agreements, conditions, covenants, provisions, or stipulations of this Mortgage, the Settlement Agreement or the Note, Mortgagee's costs, expenses, and reasonable attorneys' fees, whether or not suit is instituted, shall be paid to Mortgagee by Mortgagor, on demand, with interest at the rate provided in the Note. Until paid, they shall be deemed to be part of the Obligations evidenced by the Note and/or the Settlement Agreement and secured by this Mortgage.

## ARTICLE III – ADDITIONAL PROVISIONS

3.01. <u>Notices</u>.  Except as otherwise provided in this Mortgage or the Settlement Agreement, all notices permitted or required under this Mortgage or the Note shall be in writing, and shall be sent by registered or certified mail, postage prepaid, addressed to the addressee at the address set forth in this Mortgage and/or in the Note, or at such other address as the addressee may designate in writing from time to time.

3.02. <u>Amendment</u>.  This Mortgage cannot be changed or amended except by agreement in writing signed by the Mortgagee and Mortgagor.

3.03. <u>Parties Bound</u>.  This Mortgage shall be binding on and inure to the benefit of the parties and their respective heirs, personal representatives, successors, and assigns.  For purposes of this Mortgage, the neuter shall include the masculine and the feminine and the singular shall include the plural and the plural the singular, as the context may require.

3.04. <u>Assignment</u>.  Mortgagee may at any time assign this Mortgage and any and all of its rights and obligations hereunder.  Mortgagor shall not assign this Mortgage or any of their rights or obligations hereunder.

3.05. <u>Joint and Several Liability</u>.  All agreements, conditions, covenants, provisions, stipulations, warrants of attorney, authorizations, waivers, releases, options, undertakings, rights, and benefits made or given by Mortgagor, with respect to this Mortgage, shall be joint and several, and shall bind and affect all persons who are defined as "Mortgagor" as fully as though all of them were specifically named wherever the word "Mortgagor" is used.

3.06. <u>Interest Rate</u>.  Notwithstanding any provision contained in this Mortgage, the Settlement Agreement or in the Note, Mortgagor's liability for interest shall not exceed the limits now imposed by the applicable usury law.  If any clause in the Note, the Settlement Agreement or this Mortgage requires interest payments in excess of the highest rate permitted by the applicable usury law, the clause in question shall be deemed to require payment at the highest interest rate allowed by the applicable usury law.

3.07. <u>Captions</u>.  The captions preceding the text of the paragraphs or subparagraphs of this Mortgage are inserted only for convenience of reference and shall not constitute a part of this Mortgage, nor shall they in any way affect its meaning, construction, or effect.

3.08. <u>Other Financing</u>.  Mortgagor will not create or permit to exist any other lien on, or security interest in, any portion of the Mortgaged Property except the Prior Mortgages.

3.09. <u>Due-on-Sale</u>.  Without the prior written consent of Mortgagee, Mortgagor will abstain from and will not cause or permit any sale, exchange, transfer, lease, or conveyance (herein all called "transfer") of all or any part of the Mortgaged Property, or any interest in it, voluntarily or by operation of law.

3.10.  Severability.  Any provision of this Mortgage which is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability but shall not invalidate or render unenforceable any other provision in this document and the remaining provisions shall stay in full force and effect.

3.11.  Seeking Advice of Counsel; Review of Documents.  FOR PURPOSES OF THIS MORTGAGE, EACH OF THE PARTIES HERETO ACKNOWLEDGE THAT, IN EXECUTING MORTGAGE, IT HAD THE OPPORTUNITY TO REVIEW THIS MORTGAGE, THE SETTLEMENT AGREEMENT AND THE NOTE AND SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND HAS READ AND UNDERSTANDS ALL OF THE TERMS AND PROVISIONS OF THIS MORTGAGE.

[SIGNATURE PAGE FOLLOWS]

**EXECUTED** effective as of the date first set forth above.

JASON H MITTMAN
Notary Public - State of New Jersey
My Commission Expires Apr 22, 2026

**HITESHRI PATEL**

By: _HPatel_

State of New Jersey        )
County of _Monmouth_    )ss.:

Before Me, a Notary Public in and for said County and State, personally appeared the above named _Hiteshri Patel_ who respectively acknowledged that he/she did sign the foregoing instrument and that the same is his/her free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official Seal on the _12_ day of _August_, 20 _21_.

_____
Notary Public

JASON H MITTMAN
Notary Public - State of New Jersey
My Commission Expires Apr 22, 2026

**HIMANSHU PATEL**

By: _Hmshs_

State of New Jersey        )
County of _Monmouth_    )ss.:

Before Me, a Notary Public in and for said County and State, personally appeared the above named _Himanshu Patel_ who respectively acknowledged that he/she did sign the foregoing instrument and that the same is his/her free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official Seal on the _12_ day of _August_, 20 _21_.

_____
Notary Public

10

**Exhibit A**
<u>(Real Estate)</u>

The land referred to herein below is situated in THE Township of Marlboro, County of Monmouth, AND State of New Jersey, and is described as follows:

BEGINNING at a point on the southerly line of Gordons Corner Road, said beginning point being located the following courses from the intersection of the southerly line of Gordons Corner Road with the westerly line of Robertsville Road;

1. South 60 degrees 51 minutes 42 seconds West, along southerly line of Gordons Corner Road, a distance of 332.52 feet from the intersection of the southerly line of Gordons Corner Road with the westerly line of Robertsville Road;

2. South 54 degrees 16 minutes 42 seconds West, still along the southerly line of Gordons Corner Road, a distance of 292.22 feet to the beginning point of said tract; thence

(1) South 35 degrees 43 minutes 18 seconds East, a distance of 200.00 feet; thence

(2) North 54 degrees 16 minutes 42 seconds East, a distance of 138.00 feet; thence

(3) South 35 degrees 43 minutes 18 seconds East, a distance of 39.37 feet; thence

(4) South 03 degrees 04 minutes 41 seconds East, a distance of 317.18 feet; thence

(5) South 71 degrees 53 minutes 19 seconds West, a distance of 255.98 feet; thence

(6) North 14 degrees 08 minutes 18 seconds West, a distance of 460.28 feet to the southerly line of Gordons Corner Road; thence

(7) North 54 degrees 16 minutes 42 seconds East, along the southerly line of Gordons Corner Road, a distance of 107.78 feet to the point or place of beginning.


BEING ALSO KNOWN AS (REPORTED FOR INFORMATIONAL PURPOSES ONLY):

Block 331, Lot 61.01 on the official tax map of the Township of Marlboro, County of Monmouth, State of New Jersey

**Exhibit C**
(ACH Instructions)

- See attached.

# NFS Leasing

*Please Print Clearly*
## BILLING AND ACH INFORMATION
TO SETTLEMENT AGREEMENT AND RELEASE DATED _____

**ADDRESS FOR BILLING**

COMPANY NAME: Hiteshri Patel

ADDRESS: 223 Gordons Corner Rd, Marlboro NJ 07746

CITY, STATE, ZIP: Marlboro, NJ 07746

ATTENTION: _____

TELEPHONE: 201-936-

FAX: _____

BILLING EMAIL: _____ @ gmail.com

**CORPORATE INFORMATION**

ORGANIZATION TYPE: _____

FEDERAL TAX ID# _____

STATE OF ORGANIZATION: _____

STATE ID#: _____

**ACH TRANSFER AUTHORIZATION**

By signing below you authorize NFS Leasing, Inc. and its assigns to initiate withdrawals from the account for amounts due under the Settlement Agreement and Release. If the below account is closed or becomes invalid, you agree to provide valid account information at all times during the term of the Settlement Agreement and Release. A Returned ACH Fee of $35.00 will apply to all returned ACHs. Please be advised that a penny test will be performed on your account once this form is received by us.

Bank Name: Amboy Bank

Bank Address: 285 Gordons Corner Rd
Manalapan, NJ. 07726

Account Name: Hiteshri Patel

Address: 223 Gordons Corner Rd
Marlboro, NJ 07746

> Please attach copy of voided check.

Account #: _____

ABA Routing #: _____

Authorized Signature: H Patel

Name & Title: Hiteshri Patel

1

HITESHRI PATEL
DEBTOR IN POSSESSION
223 GORDONS CORNER ROAD
MARLBORO, NJ 07746

24
55-441/

Date

CHECK

Pay to the
Order of _____     $ _____

_____     Dollars

**AMBOY** GORDON'S CORNER OFFICE 24
Bank   MANALAPAN, NJ 07726
www.amboybank.com

For _____    _____

**Schedule 1**
<u>(Property)</u>

- 223 Gordons Corner Road, Marlboro, New Jersey 07746

# Signature Certificate

Document Ref.: TRNKW-UDVK2-UUF5L-P5RRP

Document signed by:



**Hiteshri Patel**

E-mail:
hiteshri325@gmail.com

Signed via link

IP: 69.112.178.31    Date: 11 Aug 2021 12:47:53 UTC



Document completed by all parties on:
11 Aug 2021 12:47:53 UTC

Page 1 of 1



Signed with **PandaDoc.com**

PandaDoc is a document workflow and certified eSignature
solution trusted by 25,000+ companies worldwide.

